Gary Jay Kaufman, Esq. (*Admitted Pro Hac Vice*)
gary@kaufmanlawgroupla.com
Colin Hardacre, Esq.     (*Admitted Pro Hac Vice*)
colin@kaufmanlawgroupla.com
THE KAUFMAN LAW GROUP
1901 Avenue of the Stars, Suite 1010
Los Angeles, California 90067
Telephone:  (310) 286-2202
Facsimile:   (310) 712-0023

Chad Bowers (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys for Defendant,
SBR Marketing, Ltd.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEVO DESIGN, INC., a Florida corporation; STEVEN BUDIN, an individual; and ALAN ROLLI, an individual,<br><br>Plaintiffs,<br>v.<br><br>SBR MARKETING LTD., a foreign corporation; and BRIAN DANIELE, an individual,<br><br>Defendants. | Case No. 2:11-cv-00304<br><br>**SBR MARKETING, LTD.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Stevo Design, Inc. ("Stevo") attempts to shift the focus away from its blatant attempt to manufacture standing and subject matter jurisdiction, and to minimize the arguments presented in Defendant SBR Marketing, Ltd.'s ("SBR") motion to dismiss the First Amended Complaint ("FAC"). However, no amount of misdirection will alter the fact that the FAC is fatally deficient on its face.

### II.   ARGUMENT

#### A.   Stevo Lacks Standing And Subject Matter Jurisdiction To Pursue Claims Of Copyright Infringement Because Plaintiffs' Own Pleadings And Documents Establish That The Copyrights Allegedly Infringed Belonged To An Entity Other Than Stevo At The Time Of The Alleged Infringement.

Stevo argues in vain that a single phrase in the FAC gives rise to standing and provides this Court with subject matter jurisdiction over all copyright claims asserted against SBR. Stevo cites paragraph 25 of the FAC, which alleges, "Stevo sells licenses to access the Handicapper Reports through *a number of websites* reposed at various Internet domains *owned by Stevo*. . . ." (Emphasis applied by Stevo in its Opposition, p. 8). This allegation, even if true, does not cure the lack of standing demonstrated by Stevo's own allegations and documents identifying another entity as owner of the copyrights.

As detailed more fully in SBR's Motion to Dismiss, the "Buyers (sic) Agreement" attached and incorporated into the FAC, expressly states that the individual websites owned the copyright – ***not*** Stevo. In the example attached to Stevo's Florida Complaint, the copyright owner is identified as www.whowillcover.com, Inc. (See Exhibit 9 to Exhibit A to SBR's Request for Judicial Notice, the Florida Circuit Complaint.)

Stevo attempts to sidestep this critical defect by characterizing its own Buyer's Agreement as "inartfully-drafted." The Buyer's Agreement is not inartful; it is well written and organized and is very specific with respect to the ownership of any copyrightable material contained in the betting report – and the owner is not identified as Stevo. It is ironic that Stevo suggests that the Buyer's Agreement be interpreted, and essentially amended, to indicate that Stevo owns the copyright, when

/ / /

the very agreement upon which Stevo relies specifically indicates that no amendment can be made without the consent of both the website and the purchaser:

> These terms and conditions may not be altered or amended except by a written instrument signed by both parties (with any such amendments or changes to be effective only after signed by both parties).   (Buyer's Agreement, ¶ 14.)

Finally, it must be stressed that the issue of the ownership of the copyright is not merely a question of fact to be resolved during discovery or at trial.  The issue of copyright ownership is a preliminary matter affecting the right to file suit in the first instance.  "[O]nly the owner of an exclusive right under the copyright act is entitled to sue for infringement." *Silvers v. Sony Pictures Entm't Inc*., 402 F.3d 881, 889 (9th Cir. 2005).  Stevo has the burden of establishing, through adequate pleadings, that this case is properly before this Court.  *See McCauley v. Ford Motor Co*., 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 189 (1936)); *Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 932 (9th Cir. 1994)*.  Stevo has failed to carry its burden and this Court should dismiss Stevo's copyright claims.

### B.      Extrajurisdictional Application Of U.S. Intellectual Property Laws.

Stevo mischaracterizes SBR's argument to divert discussion away from the heart of the issue.  Stevo's Opposition focuses on personal jurisdiction and ignores the central argument that subject matter jurisdiction is lacking for claims of copyright and trademark infringement based upon the allegations contained in Stevo's FAC.  Significantly, the FAC is completely devoid of any allegation that a trademark violation committed by SBR or its users originated in the United States.

SBR Marketing is a foreign corporation that maintains its principle place of business in Costa Rica, from which it operates a website, www.sbrforum.com ("SBR Forum").  (FAC, ¶¶ 5, 33).  Accordingly, to the extent SBR is considered the publisher of any content – thereby giving rise to the alleged ***direct*** copyright and trademark infringements claimed by Plaintiffs – such publication occurred, originated and arose at its principle place of business in Costa Rica.  As noted in SBR's Motion to Dismiss, the Copyright and Lanham Acts do not apply to infringements occurring outside the U.S.  *See Subafilms, Ltd. v. MGMPathe Communications Co.*, 24 F.3d 1088, 1096-98 (9th Cir. 1994); *The Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1101 (2d Cir. 1976) ("Copyright

1  laws do not have extraterritorial operation."); *Ocean Garden, Inc. v. Markettrade Co*., 953 F.2d 500

2  (9th Cir. 1991).  Contrary to Stevo's contention, the Court's decision in *MGM  Studios Inc. v.*

3  *Grokster, Ltd.,* 243 F.Supp.2d 1073 (C.D. Cal. 2003) does alter the law on this point.

4      In *Grokster,*[1]  the defendants were foreign makers and distributors of peer-to-peer file sharing

5  software.  One issue at the trial court level was whether the defendants could be liable for inducing

6  copyright infringement for acts taken in the course of marketing the software in the United States.  In

7  discussing the issue of subject matter jurisdiction, the Court noted authority standing for the

8  proposition that subject matter jurisdiction under the Copyright Act can be obtained over a foreign

9  defendant whose extraterritorial acts aid, induce or contribute to copyright infringement by another

10  within the United States.  243 F.Supp.2d at 1097.  However, the application of such jurisdiction is still

11  dependent upon allegations and proof of *direct acts of infringement that occurred in the United States*.

12  *See Id*.  In *Grokster*, the basis upon which the Court found subject matter jurisdiction appropriate under

13  the Copyright Act  were allegations that the defendants' were vicariously liable for trademark

14  infringement committed by users of the defendants' software in the United States.   The same can not

15  be said in the instant case.

16      While Plaintiffs' FAC alleges that SBR is vicariously liable for infringements by its users, the

17  FAC does not contain a single allegation that SBR or the users of its bulletin board service committed

18  any act of infringement within the United States.  Not a single user that is identified in the FAC is

19  alleged to have been located in the United States when the alleged infringement occured.  As aptly

20  pointed out by Stevo's Opposition, the FAC focuses on the supposed *effects* of the alleged

21  infringement in the United States.  Such allegations are insufficient to confer subject matter

22  jurisdiction for any of Stevo's claims, be they allegations of direct, or vicarious, trademark or

23  copyright infringement.

24  / / /

25  / / /

26

27

28  [1] The case was ultimately appealed to the U.S. Supreme Court, on grounds other than subject matter jurisdiction.  *MGM Studios, Inc. v. Grokster, Ltd*. 545 U.S. 913 (2005).

**C.     Nominative Fair Use**

### 1. Dismissal of trademark claims on the basis of Nominative Fair Use is appropriate on a motion to dismiss.

Stevo cites extra-jurisdictional authority for the proposition that the nominative fair use doctrine is an affirmative defense and that dismissal of an action based upon the doctrine is inappropriate at the pleading stage.  The Ninth Circuit, however, does not regard it as an affirmative defense to otherwise infringing acts, and dismissal is appropriate on a motion to dismiss.  *See*, *United States: Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809 (S.D. Cal. Apr. 28, 2011);  *In re Dual-Deck Video Cassette Recorder Antitrust Lit.*, 11 F.3d 1460, 1466-67 (9th Cir. 1993). Furthermore, SBR relies upon Section 1125(c)(4) of the Lanham Act which expressly states that claims for dilution by blurring and tarnishment "shall not be actionable" in situations comprising of nominative fair use.  The fact that the statute specifically states that such claims are not actionable certainly permits, if not requires, determination and dismissal at the pleading stage.

### 2. Initial interest confusion does not defeat dismissal on the basis of Nominative Fair Use.

Stevo argues that SBR is not entitled to invoke the nominative fair use doctrine because the First Amended Complaint ("FAC") alleges "initial interest confusion."  There are several problems with this argument.  First, the FAC does not include such allegations.  Second, Stevo provides no authority indicating the applicability of initial interest confusion in the circumstances of this case. Claims for initial interest confusion arise, for example, in the context of competitors and internet search engines that employ the use of metatags and keyword advertising.  *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011).  In this instance, Stevo and SBR are not competitors.  SBR does not compete with Stevo in the creation or sale of betting reports, nor does the FAC contain any such allegation.  As alleged in the FAC, SBR generates its revenue by advertising and referrals. (FAC, ¶ 44).  Each alleged instance of trademark infringement arises from user generated content that contains a nominative reference to one or more of Stevo's service marks. In this respect, the FAC is conspicuously devoid of any allegation that any of Plaintiffs' registered trade names are being used by SBR as a source identifier for SBR's own goods and/or services.

Stevo's sole argument for the application of the initial interest confusion doctrine consists of citations to portions of the FAC asserting that a Google search of a handicapper name, plus the word "picks," results in search results that are undesirable to Plaintiffs. Even assuming this to be true, Stevo has no rights in the word "picks" and cannot maintain an action for initial interest confusion based on the use of the word. The prioritization of search engine results is outside SBR's control and, absent some allegation of the improper manipulation of search engine results, any claim of initial interest confusion by Stevo fails as a matter of law. Plaintiff has not cited any authority permitting application of the initial interest confusion analysis and to permit suits based solely on internet search engine results arising from the combination of a trademark and generic, unprotected words would be improper and against judicial policy.

### D. Applicability Of The First Sale Doctrine Is Not Defeated By Initial Interest Confusion.

Stevo's Opposition correctly acknowledges that, under the first sale doctrine, "[r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian Int'l, Inc. v.Longs Drug Stores Corp.,* 53 F.3d 1073, 1074 (9th Cir. 1995). Stevo attempts to avoid this clear statement of the law by arguing that the first sale doctrine is inappropriate because "SBR Marketing has cultivated initial interest confusion among Internet users searching for 'picks' by Stevo handicappers." (Response, p. 16, lines 12-13.) The problem, of course, is that the FAC does not allege initial interest confusion. As discussed above, initial interest confusion does not apply in the instant case because SBR is not a competitor and Stevo has no rights in the word "picks," or internet search results arising from the use of the word. Absent an allegation and proof of the external and improper manipulation of search engine results by SBR, any claim of initial interest confusion must fail.

### E. The Communications Decency Act Preempts Stevo's State Law Claims.

Stevo argues that SBR is not entitled to the board grant of immunity under the Communications Decency Act ("CDA") because, based upon *Fair Housing Council v Roomates.com*, 521 F.3d 1157 (2008), SBR is not just an "interactive computer service," but also a "information content

/ / /

1 provider." Stevo's reliance on the decision in *Roomates.com* is not surprising because it represents the
2 outermost boundary of CDA immunity.  This reliance is, nevertheless, unfounded.

3 In *Roomates.com,* the defendant operated a website designed to match people renting spare
4 rooms with people looking for places to live.  521 F. 3d at 1161.  In order to subscribe to the service,
5 individuals created profiles in an online interview process that *required* and *forced* them to answer a
6 series of questions including their sex, sexual orientation, and whether they would bring children into
7 the household.  *Id*.  The website also encouraged subscribers to provide "Additional Comments" to
8 describe themselves and their desired roommate.  *Id*.

9 The defendant claimed immunity under the CDA, arguing that it was merely an "interactive
10 computer service" and that that any discriminatory content was generated by its subscribers.  *Id*.  Upon
11 considering the issue, the Court found that the defendant's actions in *requiring* and *forcing* subscribers
12 to divulge protected characteristics and discriminatory preferences during the subscription process
13 deprived it of CDA immunity:

> Here, the part of the profile that is alleged to offend the Fair Housing Act and state housing discrimination laws-the information about sex, family status and sexual orientation- is provided by subscribers in response to Roommate's questions, which they cannot refuse to answer if they want to use defendant's services. By requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information. And section 230 provides immunity only if the interactive computer service does not "creat[e] or develop[ ]" the information "in whole or in part." *Id*. at 1166 *(citing* 47 U.S.C. § 230(f)(3)).

The same cannot be said of SBR's operation of its bulletin board service.  SBR does
not, and is not alleged to require or force contributions to its website, let alone force or require
users to engage in infringement of another's intellectual property.  It is not alleged anywhere in
the FAC that SBR promotes or encourages copyright or trademark infringement.  It is also true
that SBR does not encourage or reward copyright or trademark infringement at SBRForum.  As
acknowledged in the FAC, SBR rewards ***any*** contribution (even merely logging-on) to its
website by an award of loyalty points.  (FAC, ¶ 37.)  While well reasoned and articulate posts
may garner a larger award of loyalty points, such awards are reserved for the "***original***

1   *content*" of the user.  (FAC, ¶ 54.)  SBR awards loyalty points to encourage participation,

2   expand user involvement and, as a result, increase traffic to its website – thereby increasing

3   advertising and referral revenue.  There is nothing illegal or nefarious about websites

4   employing this business model, which include some of the largest and busiest websites on the

5   internet – for example, www.facebook.com, www.yahoo.com, and www.google.com.  In fact,

6   there can be little dispute that a website's ability to attract users and encourage user interaction

7   is the driving source behind the current boom in social media websites such as Facebook.

8       Finally, it is also important to note that the Court in *Roomates.com* specifically declined to

9   remove CDA immunity for allegedly discriminatory statements contained in the "Additional

10  Comments" section of a subscriber's profile page; some of which were quite offensive.  *Id*. at 1174.

11  The Court reasoned that the simple fact that the defendant encouraged subscribers to provide and post

12  information did not make it a "developer" of information under the meaning of the statute.  *Id*.  The

13  Court concluded by noting that CDA immunity should be broadly applied:

14  
15  > Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that something the website operator did encouraged the illegality. Such close cases, we believe, must be resolved in favor of immunity, lest we
16  > cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged-or at least tacitly assented
17  > to-the illegality of third parties.  *Id*.

18      The same reasoning applies here, and there is nothing in the FAC that removes the immunity

19  granted to SBR under the CDA.

20       **G.    Inapplicability Of Florida Common Law And Statutes.**

21      Stevo puts up little resistance to the inapplicability of Florida common law and statutory

22  claims.  In fact, Stevo's argument that the situs of online tortious activity is the intellectual property

23  owner's principal place of business underscores the inappropriate nature of Stevo's conduct in this

24  matter.  Stevo is a Florida corporation, with its principal place of business located in Florida.  As more

25  fully set forth in SBR's Motion, Stevo, being faced with dismissal of its claims in Florida Circuit

26  Court, filed a voluntary dismissal of its prior Florida action, manufactured baseless copyright claims,

27  and filed suit here in the District of Nevada where the only connection with this forum is the location

28  of its new attorney's office.  To the extent Stevo sought remedies provided under Florida law, it should

have remained in Florida. Stevo's forum shopping is particularly offensive where it not only seeks to select a forum with no connection to the parties, but also to enforce the law of a forum it abandoned.

### H. All Factual, Non-Conclusory Allegations Concerning Alleged Infringement By Defendant Daniele Are Limited To Alleged Postings On A Website Other Than SBR Forum.

As pointed out in SBR's Motion to Dismiss, *all* factual, non-conclusory allegations regarding the posting and publication of copyrighted material by Defendant Daniele involve postings on a third-party website, on the RXForum. (FAC, ¶¶ 231- 236). The fact that Stevo later, in its claims for relief, makes conclusory, unsupported and inconsistent allegations that Defendant Daniele posted content on SBR's website is immaterial. Stevo fails to state a claim for relief in the absence of allegations setting forth specifics of the alleged infringement committed on SBR's websites. *See* Order dated October 28, 2010, *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No. 10-cv-00484 (D. Nev.) (A valid cause of action for copyright infringement was stated where allegations included "what acts and during what time the defendant infringed the copyright." citing *Home & Nature Inc. v.Sherman Specialty Company, Inc.*, 344 F. Supp. 2d 260, 265 (E.D.N.Y. 2004)).

### III. CONCLUSION

For the reasons set forth above, and those more fully set forth in SBR's Motion to Dismiss, SBR respectfully requests that this Court dismiss the FAC, pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6).

Respectfully submitted,

DATED: September 19, 2011          THE KAUFMAN LAW GROUP


By:_____/s/_____
 Gary Jay Kaufman
Attorneys for Defendant
SBR Marketing, Ltd.

**CERTICATE OF SERVICE**

Pursuant to Local Rule 5-1 of this Court, I hereby certify that on September 19, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Brian Daniele
7002 Braddock Mews Place
Springfield, Virginia 22151

                                                    s/Colin Hardacre