1  STEVEN A. GIBSON
   Nevada Bar No. 6656
2  sgibson@dickinsonwright.com
   JODI DONETTA LOWRY
3  Nevada Bar No. 7798
   jdlowry@dickinsonwright.com
4

5         DICKINSON WRIGHT PLLC
              City Center West
6     7201 West Lake Mead Boulevard, Suite 503
           Las Vegas, Nevada 89128
7          Telephone 702.541.7888
           Facsimile 702.541.7899
8
   *Attorneys for Plaintiffs*
9
            UNITED STATES DISTRICT COURT
10
               DISTRICT OF NEVADA
11

12 STEVO DESIGN, INC., a Florida corporation;
   STEVEN BUDIN, an individual; and ALAN
13 ROLLI, an individual,                          Case No.: 2:11-cv-00304

14              Plaintiffs,                        **SECOND AMENDED COMPLAINT**
            v.
15                                                 **(Jury Trial Demanded)**
   SBR MARKETING LTD., a foreign
16 corporation; and BRIAN DANIELE, an
   individual,
17
                Defendants.
18

19        Plaintiffs Stevo Design, Inc. ("Stevo"), Steven Budin ("Mr. Budin") and Alan Rolli ("Mr.

20 Rolli") (collectively "Plaintiffs"), by and through their counsel, Dickinson Wright PLLC,

21 complain and allege as follows against Defendants SBR Marketing Ltd. ("SBR Marketing") and

22 Brian Daniele ("Mr. Daniele") (collectively "Defendants"), on information and belief, that the

23 following were and had been true at all relevant times, unless otherwise indicated specifically to

24 the contrary:

25

26

27

28

**NATURE OF ACTION**

1.      This is an action for service mark infringement under § 32 of the Lanham Trademark Act of 1946 (the "Lanham Act") (15 U.S.C. § 1114); contributory service mark infringement under § 32 of the Lanham Act and federal common law; false designation of origin under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); contributory false designation of origin under § 43(a) of the Lanham Act and federal common law; mark dilution under § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)) by blurring and by tarnishment; contributory mark dilution under § 43(c) of the Lanham Act and federal common law by blurring and by tarnishment; copyright infringement under 17 U.S.C. § 501; vicarious copyright infringement under 17 U.S.C. § 501 and federal common law; contributory copyright infringement under 17 U.S.C. § 501 and federal common law; misappropriation of trade secrets under Fla. Stat. 688.001 *et seq.* (2010); direct and contributory misappropriation of licensable commercial property under Florida common law; defamation under Nevada common law; and business disparagement under Nevada common law.

**PARTIES**

2.      Stevo is, and has been at all times relevant to this lawsuit, a Florida corporation with its principal place of business in Florida.

3.      Mr. Budin is, and has been at all times relevant to this lawsuit, a Florida resident and the Chief Executive Officer of Stevo.

4.      Mr. Rolli is, and has been at all times relevant to this lawsuit, a Pennsylvania resident and the General Manager of Stevo.

5.      SBR Marketing is, and has been at all times relevant to this lawsuit, a foreign corporation whose country of incorporation is unknown, and whose principal places of business are in the nations of Curaçao and Costa Rica.

6.      Mr. Daniele is, and has been at all times relevant to this lawsuit, a Virginia resident.

## JURISDICTION

7.      This Court has original jurisdiction over Stevo's First through Eighth Causes of Action (inclusive) pursuant to § 39 of the Lanham Act (15 U.S.C. § 1121) and 28 U.S.C. § 1338(a) because Plaintiffs' First through Eighth Causes of Action (inclusive) arise under the Lanham Act and relate to trademarks.

8.      This Court has original jurisdiction, to the exclusion of state courts, over Plaintiffs' Ninth through Fiftieth (inclusive) Causes of Action pursuant to 28 U.S.C. § 1338(a) because Plaintiffs' Ninth through Fiftieth (inclusive) Causes of Action relate to copyrights.

9.      This Court has supplemental jurisdiction over Plaintiffs' Fifty-First through Fifty-Fifth (inclusive) Causes of Action pursuant to 28 U.S.C. § 1367 because Stevo's Fifty-First through Fifty-Fifth (inclusive) Causes of Action are so related to Plaintiffs' First through Fiftieth (inclusive) Causes of Action that Plaintiffs' Fifty-First through Fifty-Fifth (inclusive) Causes of Action form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has original jurisdiction over this entire action pursuant to 28 U.S.C. §1332 because this is a civil action between parties with complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

11.     Personal jurisdiction over SBR Marketing is proper because SBR Marketing, a foreign corporation, directs a significant portion of SBR Marketing's marketing efforts to the United States.

12.     Personal jurisdiction over SBR Marketing is proper because SBR Marketing, a foreign corporation, derives a significant portion of SBR Marketing's revenue from revenue-generating activities in the United States.

13.     Personal jurisdiction over SBR Marketing is proper because SBR Marketing, a foreign corporation, offers United States residents the opportunity to earn money through SBR Marketing's sites on the Internet.

14.     Personal jurisdiction over SBR Marketing is proper because SBR Marketing, a foreign corporation, pays United States residents for republishing intellectual property created in the United States and concerning sporting events in the United States.

15.     Personal jurisdiction over SBR Marketing is proper because SBR Marketing, a foreign corporation, is not subject to jurisdiction in any United States state's courts of general jurisdiction.

16.     Personal jurisdiction over Mr. Daniele is proper because SBR Marketing has engaged Mr. Daniele to make contributions of content to the website reposed at the domain sbrforum.com (the "SBR Website") and effectuated compensation to Mr. Daniele for those contributions, thereby creating privity of business relationship between SBR Marketing and Mr. Daniele.

17.     Personal jurisdiction over Mr. Daniele is proper because SBR Marketing had a business relationship with Mr. Daniele whereby Mr. Daniele was a contributor of content to SBR Marketing on a compensated basis.

18.     Personal jurisdiction over Mr. Daniele is proper because Mr. Daniele's business relationship with SBR Marketing made Mr. Daniele more than a mere passive poster of content at the SBR Website.

19.     Personal jurisdiction over Mr. Daniele is proper because SBR's engagement through business relationships of Mr. Daniele, and others like Mr. Daniele, constituted more than mere solicitation of passive viewers or passive posters of content at the SBR Website, and was in fact of a direct and active enterprise to employ content contributors such as Mr. Daniele.

20.     Personal jurisdiction over Mr. Daniele is proper because SBR's engagement through business relationships of Mr. Daniele, and others like Mr. Daniele, had a direct material advantageous effect on SBR Marketing's ability to generate revenues from the SBR Website.

21.     Personal jurisdiction over Mr. Daniele is proper because SBR Marketing had full knowledge of the nature, dimension, and unlawfulness of Mr. Daniele's contributions of content to the SBR Website that SBR Marketing engaged Mr. Daniele to provide to SBR Marketing.

22.     Personal jurisdiction over Mr. Daniele is proper because SBR Marketing engaged Mr. Daniele to contribute content to the SBR Website on an ongoing basis as part of SBR Marketing's structure of creating ongoing agency relationships with content contributors.

23.     Personal jurisdiction over Mr. Daniele is proper because SBR Marketing has engaged Mr. Daniele to make contributions of infringing and defamatory content to the website reposed at the SBR Website and effectuated compensation to Mr. Daniele for such contributions, thereby creating an agency relationship between SBR Marketing and Mr. Daniele.

24.     Personal jurisdiction over Mr. Daniele is proper because, in the course of SBR Marketing's business model of knowingly soliciting infringed and misappropriated intellectual property and effectuating compensation to SBR Marketing's agents for engaging in such infringements and misappropriations, Mr. Daniele has been compensated by SBR Marketing for effectuating from the United States the misappropriation, infringement, and unauthorized republication of intellectual property created in the United States and concerning sporting events in the United States.

25.     Personal jurisdiction over Mr. Daniele is proper because Mr. Daniele engaged in the wrongful acts complained of herein, including, without limitation, copyright infringement, tortious interference with business relations, defamation, and business disparagement, within the scope of Mr. Daniele's agency with SBR Marketing.

26.     Personal jurisdiction over Mr. Daniele is proper because Mr. Daniele is the agent of SBR Marketing, a foreign corporation that is subject to jurisdiction in the United States generally but not in any individual state's courts of general jurisdiction, with respect to all of the wrongful acts complained of herein, including, without limitation, copyright infringement, tortious interference with business relations, defamation, and business disparagement.

27.     Personal jurisdiction over Mr. Daniele is proper because Mr. Daniele was, or reasonably should have been, aware that Mr. Daniele's principal SBR Marketing is a foreign corporation that is subject to jurisdiction in the United States but not in any individual state's courts of general jurisdiction.

28.     Personal jurisdiction over Mr. Daniele is proper because Mr. Daniele's unlawful conduct relates specifically to the sports wagering and handicapping industry and, therefore, Mr. Daniele's unlawful conduct has its most direct impact in the State of Nevada, the only State in which sports wagering is legal.

29.     Personal jurisdiction over Mr. Daniele is proper because Mr. Daniele has purposefully directed his activities toward the State of Nevada, including, but not limited to, publishing information on websites which are accessible via the Internet throughout the State of Nevada.

## **VENUE**

30.     SBR Marketing is an alien, and this action is thus appropriately venued in the District of Nevada pursuant to 28 U.S.C. § 1391(d).

31.     This action is appropriately venued in the District of Nevada pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events or omissions giving rise to claims herein occurred in the State of Nevada.

## **FACTS**

### *I.  STEVO'S HANDICAPPER REPORTS*

32.     Stevo is in the business of selling, on pay-per-view and subscription bases, limited, non-exclusive licenses to access electronically-distributed reports setting forth sports handicapping information and analysis regarding selected sporting events determined by the authors of those reports to be of particular interest to readers (the "Handicapper Reports").

33.     Stevo is the owner of the following service marks registered with the United States Patent and Trademark Office (the "USPTO") (collectively, the "Registered Marks"):

     a.     AL DEMARCO, registration number 3844682, registered September 7, 2010, in International Class 41 for handicapping for sporting events (the "DeMarco Mark");

     b.     BRANDON LANG, registration number 3447313, registered June 17, 2008, in International Class 41 for handicapping for sporting and other entertainment events (the "Lang Mark");

c.     JEFF BENTON, registration number 3849982, registered September 21, 2010, in International Class 41 for handicapping for sporting events (the "Benton Mark");

d.     MATT RIVERS, registration number 3849850, registered September 21, 2010, in International Class 41 for handicapping for sporting events (the "Rivers Mark"); and

e.     STEVE BUDIN, registration number 3847503, registered September 14, 2010, in International Class 41 for handicapping for sporting events (the "Budin Mark").

34.     Stevo also provides services in the nature of handicapping for sporting events under, at a minimum, the following service marks that have not yet achieved registration with the USPTO (collectively with the Registered Marks, the "Marks"):

a.     ANDY FANELLI (the "Fanelli Mark");

b.     ANTHONY REDD (the "Redd Mark");

c.     BOB VALENTINO (the "Valentino Mark");

d.     BOBBY MAXWELL (the "Maxwell Mark");

e.     BRETT ATKINS (the "Atkins Mark");

f.     CHRIS JORDAN (the "Jordan Mark");

g.     CHUCK O'BRIEN (the "O'Brien Mark");

h.     CRAIG DAVIS (the "Davis Mark");

i.     DEREK MANCINI (the "Mancini Mark");

j.     JAY MCNEIL (the "McNeil Mark");

k.     JOEL TYSON (the "Tyson Mark");

l.     KARL GARRETT (the "Garrett Mark");

m.     MICHAEL CANNON (the "Cannon Mark");

n.     SCOTT DELANEY (the "Delaney Mark");

o.     SEAN MICHAELS (the "Michaels Mark");

p.     STEPHEN NOVER (the "Nover Mark"); and

1         q.     TRACE ADAMS (the "Adams Mark").

2      35.    With the exception of the Budin Mark, each of the Marks constitutes a

3  pseudonym.

4      36.    The Marks denote Stevo as the source of the Handicapper Reports.

5      37.    The Marks are the source identifiers associated with, but separate from, the

6  individual works of authorship constituting the Handicapper Reports.

7      38.    By virtue of Stevo's long-standing use of the Marks, extensively advertised

8  throughout the United States, the Marks have each gained secondary meaning primarily denoting

9  Stevo as each Mark's respective source of origin.

10      39.    Stevo sells licenses to access the Handicapper Reports through a number of

11  websites reposed at various Internet domains, under the names of which websites Stevo does

12  business, including, without limitation, ATSadvantage.com; ATSadvice.com; ATSdoctor.com;

13  ATSedge.com; BetBrandonLang.com; BetDeMarco.com; Bigdogpicks.com; BrandonLang.com;

14  BrandonLangExperts.com; BrandonLangPicks.com; BrandonLangWins.com;

15  ChrisJordanSports.com; DeMarcoExperts.com; DeMarcoSports.com; DeMarcoWins.com;

16  Famouscappers.com; Gamedaycappers.com; Gameseven.com; Gametimeadvice.com;

17  Gametimeadvisors.com; Gametimeedge.com; Gametimepicks.com; Gametimeplays.com;

18  Gametimereport.com; PickNation.com; PickReport.com; PicksForTheMoney.com;

19  Primetimecappers.com; Scoresoddsandinfo.com; Sportsadvisors.com; Sportscapper.com;

20  Sportsinfo.com; StephenNover.com; Theplatinumsheet.com; Thesportsadvisors.com;

21  Vegasadvisors.com; WhoWillCover.com; and winners.com (the "Stevo Websites").

22      40.    The Stevo Websites are not independent entities or subsidiaries of Stevo.

23      41.    Stevo owns all copyrights to all Handicapper Reports.

24      42.    Each of the Stevo Websites displays terms of use (the "User Contract," an

25  exemplar of which is attached hereto as Exhibit 1), which may be viewed by anyone accessing

26  any of the Stevo Websites irrespective of purchase of a license to view any of the Handicapper

27  Reports.

28

43.     Before a user of any of the Stevo Websites can complete a purchase of a license to view any of the Handicapper Reports, that user must scroll all the way through the User Contract, then deliberately click on a "button" to indicate that such user agrees to enter into the User Contract as a condition of viewing any of the Handicapper Reports.  If the user does not scroll all the way through the User Contract, and thereby, at a minimum, obtain the opportunity to read the entire User Contract, that user cannot complete that user's purchase of a license to view any of the Handicapper Reports.

44.     By entering into the User Contract, a purchaser of a license to view any of the Handicapper Reports expressly represents and warrants that such licensee "will not reproduce, republish, rebroadcast, retransmit, recast or in any way distribute the information that [the purchaser] will receive from this website (regardless of whether [the purchaser] receive[s] such information directly, from this website or from any affiliated website) **anywhere**, including without limitation on the Internet (e.g. on other websites, blogs, newsgroups, chat rooms, discussion forums, message boards and social media services such as Twitter, Facebook and MySpace), via instant or text messaging services (whether Internet- or phone-based), in podcasts, or in any other printed or electronic form, including without limitation radio and television" (emphasis in original).

45.     By entering into the User Contract, a purchaser of a license to view any of the Handicapper Reports expressly represents and warrants that such licensee "will not provide or otherwise convey the information that [the licensee] receive[s] from this website (regardless of whether [the licensee] receive[s] such information directly, from this website or from any affiliated website) to any third parties."

46.     By entering into the User Contract, a purchaser of a license to view any of the Handicapper Reports expressly acknowledges that all the information that user receives from Stevo is confidential, to be held in strict confidence, not to be disclosed to any third party, and not to be used "for any purpose other than as expressly permitted" by Stevo.

47.     By entering into the User Contract, a purchaser of a license to view any of the Handicapper Reports expressly acknowledges that the trademarks and service marks appearing

on any of the Stevo Websites are not that licensee's property and that nothing in the User

Contract confers on that licensee any license or other grant of rights to use those marks.

48.     By entering into the User Contract, a purchaser of a license to view any of the

Handicapper Reports expressly represents that such licensee has read and understood the User

Contract and agrees to be bound by the User Contract.

## II.     SBR MARKETING, THE SBR WEBSITE, AND THE SERVICE PLAYS SECTION

49.     SBR Marketing procures and publishes content related to sports betting and

handicapping at the website reposed at the domain sbrforum.com (the "SBR Website"), soliciting

members of the public to contribute content for compensation and publication by SBR Marketing

regarding topics related to, at a minimum, sports wagering and handicapping.

50.     The content procured and published by SBR Marketing through the SBR Website

is available to and used by individuals throughout the United States, including, without

limitation, individuals in Nevada.

51.     SBR Marketing receives revenue from advertisers who pay SBR Marketing for

customers and/or revenue gained by those advertisers when those customers click through

advertisements appearing on the SBR Website and thereby reach the advertisers' own websites.

52.     The more SBR Website readers that click through advertisements to advertisers'

websites, the more revenue SBR Marketing gains from those advertisers.

53.     SBR Marketing awards loyalty points, which SBR Marketing describes as "our

*currency* here" (emphasis in original) (the "SBR Currency"), to registered users of the SBR

Website ("SBR Marketing Contributor-Agents") whenever those SBR Marketing Contributor-

Agents engage in certain activities on the SBR Website, including merely logging on to the SBR

Website, contributing content to the SBR Website, or reporting other users' infractions of the

SBR Website's terms of use to SBR Marketing.

54.     SBR Marketing's solicitation of and payment for content from SBR Marketing

Contributor-Agents by means including, without limitation, payment of SBR Currency to SBR

Marketing Contributor-Agents creates privity of business relationships between SBR Marketing

and each so-compensated SBR Marketing Contributor-Agent.

55.     SBR Marketing Contributor-Agents' business relationships with SBR Marketing make SBR Marketing Contributor-Agents more than mere passive posters of content at the SBR Website.

56.     SBR Marketing's engagement through business relationships of SBR Marketing Contributor-Agents constitutes more than mere solicitation of passive viewers or passive posters of content at the SBR Website.

57.     SBR Marketing's engagement through business relationships of SBR Marketing Contributor-Agents has a direct material advantageous effect on SBR Marketing's ability to generate revenues from the SBR Website.

58.     SBR Marketing has full knowledge of the nature, dimension, and unlawfulness of SBR Marketing Contributor-Agents' contributions of content to the SBR Website that SBR Marketing has engaged SBR Marketing Contributor-Agents to provide to SBR Marketing.

59.     SBR Marketing's solicitation of and payment for contributions from SBR Marketing Contributor-Agents, by means including, without limitation, payment of SBR Currency to SBR Marketing Contributor-Agents, creates an agency relationship between SBR Marketing and each so-compensated SBR Marketing Contributor-Agent.

60.     SBR Marketing Contributor-Agents may transfer SBR Currency from themselves to other SBR Marketing Contributor-Agents to further compensate those SBR Marketing Contributor-Agents for continuing to provide useful or entertaining content to the SBR Website.

61.     SBR Marketing Contributor-Agents may "gamble" SBR Currency in wagering and other contests offered by SBR Marketing, and, if successful, win additional SBR Currency.

62.     SBR Marketing Contributor-Agents may spend accrued SBR Currency on, without limitation, merchandise such as T-shirts and shot glasses; gift cards from national chain restaurants and stores; and credits at offshore online sports books that advertise on the SBR Website.  For example, as of January 31, 2011, any SBR Marketing Contributor-Agent could exchange 825 SBR Currency units for $50 credit at the bodog.com offshore online sports book. If that user bet via bodog.com the $50 bodog.com credit that SBR Marketing Contributor-Agent received from the SBR Website in exchange for 825 SBR Currency units, and won the bet, that

SBR Marketing Contributor-Agent would be able to recoup from bodog.com the full monetary amount of that SBR Marketing Contributor-Agent's winnings (minus fees charged by bodog.com) irrespective of the fact that the credit used for the bet came from SBR Website in exchange for SBR Currency, and not from actual funds provided by the SBR Marketing Contributor-Agent.

63. When SBR Marketing Contributor-Agents visit offshore online sports books that advertise on the SBR Website after exchanging SBR Currency for credit at those offshore online sports books, if those SBR Marketing Contributor-Agents bet any amount of those SBR Marketing Contributor-Agents' own funds beyond the credits received in exchange for SBR Currency, SBR Marketing gains revenue from those advertisers as a result of those transactions.

64. An SBR Marketing Contributor-Agent who demonstrates to SBR Marketing that such SBR Marketing Contributor-Agent has a balance of at least $200 of that SBR Marketing Contributor-Agent's own funds in that SBR Marketing Contributor-Agent's account with one of the offshore online sports books advertising on SBR Marketing can become an "SBR PRO," and thereby earn double SBR Currency for SBR Website publishing activity, obtain additional opportunities to wager SBR Currency on SBR Marketing-sponsored contests, and enjoy a reduction of the amount of SBR Currency that must be spent in order to receive merchandise from SBR Marketing.

65. SBR Marketing's business model is based in significant part on the revenue SBR Marketing receives from offshore online sports books that advertise on SBR Website as a result of SBR Marketing Contributor-Agents and other readers of the SBR Website clicking directly through those offshore online sports books' advertisements on the SBR Website to the offshore online sports books' own websites. SBR Marketing boasts in SBR Marketing's communications to potential advertisers that "[m]ore players join the top sportsbooks via [the SBR Website] than all other watchdog and rating sites combined."

66. SBR Marketing developed and implemented the SBR Website "to meet the demand for handicapping stat[istic]s and sports handicapping information."

67.     One subdivision of the SBR Website is titled "Service Plays" (the "Service Plays Section").

68.     The content of the Service Plays Section is specifically related to analysis—"plays"—provided by handicapping "services" such as Stevo whose business models consist of publication and licensing of access to such "service plays" for fees and/or other consideration.

69.     SBR Marketing conceived of, developed, and implemented the Service Plays Section with the intent of soliciting SBR Marketing Contributor-Agents to effectuate republication of paid content such as the Handicapper Reports on a free-of-charge forum, and compensating SBR Marketing Contributor-Agents for such effectuation of republication of paid content, thereby, without limitation, driving traffic to the SBR Website and increasing SBR Marketing's revenues therefrom.

70.     As of February 23, 2011, no fewer than seven individuals, plus "SBRForumStaff" and "SBR.tv,"  were identified as "moderators" of the Service Plays Section.

71.     Moderators of the Service Plays Section are conferred by SBR Marketing with the authority and ability to edit and/or delete any content submitted by any SBR Marketing Contributor-Agents in the Service Plays Section.

72.     SBR Marketing retains, pursuant to the SBR Website's terms of use, the right to edit and/or delete any content submitted by any SBR Marketing Contributor-Agent, including, without limitation, an SBR Marketing Contributor-Agent who has submitted content in the Service Plays Section.

73.     Daily or almost daily, SBR Marketing Contributor-Agents effectuate publication of misappropriated and infringed Handicapper Reports, or portions thereof, in the Service Plays Section, as well as solicitations from SBR Marketing Contributor-Agents to one another to submit content from other Handicapper Reports for publication in the Service Plays Section.

74.     An SBR Marketing Contributor-Agent who submits for publication in the Service Plays Section all or a portion of a Handicapping Report automatically receives at least six units of SBR Currency—two for logging in to the SBR Website, and four for contributing content to the SBR Website.

75.     SBR Marketing recognizes that at least a subset of content published on the SBR Website constitutes republications of content not personally authored by the SBR Marketing Contributor-Agents submitting that material for publication by SBR Marketing, because SBR Marketing specifies that SBR Marketing will pay more than four units of SBR Currency to an SBR Marketing Contributor-Agent "contributing a well[-]thought[-]out pick write[-]up or handicapping[-]oriented post in any sports subforum," and that "[o]nly original content will be eligible for this reward."

76.     Daily or almost daily, SBR Marketing Contributor-Agents who submit all or a portion of a Handicapping Report for publication in the Service Plays Section request and receive additional units of SBR Currency as rewards from other SBR Marketing Contributor-Agents.

77.     Daily or almost daily, SBR Marketing Contributor-Agents who submit only a portion of a Handicapping Report for publication in the Service Plays Section offer to provide the remainder of the Handicapping Report via "PM," or private message, to other SBR Marketing Contributor-Agents, in exchange for SBR Currency from those SBR Marketing Contributor-Agents.

78.     SBR Marketing recognizes that at least a subset of content published on the SBR Website constitutes republications of content not personally authored by the SBR Marketing Contributor-Agents submitting that material for publication by SBR Marketing, because SBR Marketing specifies that SBR Marketing will pay more than four units of SBR Currency to an SBR Marketing Contributor-Agent "contributing a well[-]thought[-]out pick write[-]up or handicapping[-]oriented post in any sports subforum," and that "[o]nly original content will be eligible for this reward."

79.     SBR Marketing has promoted the SBR Website by advertising that readers of the Service Plays Section, including, without limitation, SBR Marketing Contributor-Agents, can obtain "service plays," *i.e.* pay-per-view sports Handicapper Reports such as Stevo's Handicapper Reports, free of charge.

80.     On or about June 3, 2010, Stevo sued SBR Marketing in Florida state court for, without limitation, misappropriation of trade secrets and tortious interference with contractual relations, based on SBR Marketing Contributor-Agents' activity as alleged herein, incorporating by reference as part of Stevo's Complaint the terms of the User Contract, as a result of which SBR Marketing had notice of the terms of the User Contract and of Stevo's intellectual property rights in Stevo's Handicapper Reports.

81.     On or about June 10, 2010, an individual with the username "Lou" and the e-mail address of help@sportsbookreview.com published a message to SBR Marketing Contributor-Agents in the Service Plays Section stating, "Hi guys, For legal reasons must update our forum policy for Service Plays. **What is allowed:** [Capper Name] + play & odds. **What is not allowed.** *amount, write ups [*sic*], $ amount, unit amount etc. You can rank the plays, or say so and so really likes this play or that play, but please do not repost copyrighted written material" (emphasis in original) (the "Service Plays Warning").

82.     Although agents and/or representatives of SBR Marketing, including, without limitation, the moderators of the Service Plays Section ("SBR Marketing Moderator-Agents"), have sporadically deleted since June 10, 2010 certain elements of illegitimately republished Handicapper Reports—specifically, the relative strengths of odds in different sporting events as analyzed by particular handicappers—SBR Marketing continues to solicit republication from SBR Marketing Contributor-Agents and facilitate such republication, on a daily basis, of Handicapper Reports.

83.     Although SBR Marketing Moderator-Agents, including, without limitation, the moderators of the Service Plays Section, have sporadically deleted since June 10, 2010 certain elements of illegitimately republished Handicapper Reports, SBR Marketing Moderator-Agents knowingly do not effectuate such deletions, in many instances, until after the sporting events discussed in those illegitimately republished Handicapper Reports have concluded, thereby attempting to maximize the economic benefit to SBR Marketing of SBR's republication of those Handicapper Reports.

### III.    MISAPPROPRIATIONS OF STEVO'S INTELLECTUAL PROPERTY

84.    SBR Marketing has engaged in hundreds, if not thousands, of misappropriations of Stevo's intellectual property, not all of which are specifically addressed in this Amended Complaint.  Plaintiffs reserve the right to amend this Amended Complaint to pray for relief with respect to further misappropriations by SBR Marketing of Stevo's intellectual property.

85.    On or about March 5, 2010, John Ruffino ("Mr. Ruffino") purchased a month-long subscription granting Mr. Ruffino a limited, non-exclusive license to view Handicapper Reports published and licensed by Stevo under marks including CRAIG DAVIS ("Mr. Ruffino's Subscription").

86.    In order to purchase Mr. Ruffino's Subscription, Mr. Ruffino had to scroll through and affirmatively indicate Mr. Ruffino's entry into a User Contract (the "Ruffino User Contract").

87.    On or about March 29, 2010, Stevo published, and furnished to Mr. Ruffino under the terms of Mr. Ruffino's Subscription, a Handicapping Report (the "3-29-2010 Ruffino Report").

88.    On or about March 29, 2010, Mr. Ruffino caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "goldengreek" (the "Goldengreek Contributor-Agent"), a nearly verbatim copy of the entire 3-29-2010 Davis Report (the "3-29-2010 Davis Infringement").

89.    The Goldengreek Contributor-Agent submitted and published the 3-29-2010 Davis Infringement in response to a request from another SBR Marketing Contributor-Agent who offered to give SBR Currency to any other SBR Marketing Contributor-Agent who submitted the 3-29-2010 Davis Report for publication in the Service Plays Section, and SBR Marketing Contributor-Agents rewarded the Goldengreek Contributor-Agent with a total of 25 units of SBR Currency for submitting for republication in the Service Plays Section the 3-29-2010 Davis Infringement.

90.    On or about May 1, 2010, Fernando Hernandez ("Mr. Hernandez") purchased a seven-day subscription granting Mr. Hernandez a limited, non-exclusive license to view

Handicapper Reports published and licensed by Stevo under the mark STEPHEN NOVER ("Mr. Hernandez's Subscription").

91.     In order to purchase Mr. Hernandez's Subscription, Mr. Hernandez had to scroll through and affirmatively indicate Mr. Hernandez's entry into a User Contract (the "Hernandez User Contract").

92.     On or about May 2, 2010, Stevo published, and furnished to Mr. Hernandez under the terms of Mr. Hernandez's Subscription, a Handicapping Report (the "5-2-2010 Nover Report").

93.     On or about May 2, 2010, Mr. Hernandez caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "Calvary" (the "Calvary Contributor-Agent"), a verbatim copy of the first four sentences of the 5-2-2010 Nover Report, which sentences summarize and disclose the betting recommendations set forth in the 5-2-2010 Nover Report (the "5-2-2010 Nover Infringement").

94.     SBR Marketing published the 5-2-2010 Nover Infringement with the subject line "Stephen Nover 50 Dime 5/2 Sunday Play."

95.     On or about May 3, 2010, Stevo published, and furnished to Mr. Hernandez under the terms of Mr. Hernandez's Subscription, a Handicapping Report (the "5-3-2010 Nover Report").

96.     On or about May 3, 2010, Mr. Hernandez caused to be published in the Service Plays Section, by the Calvary Contributor-Agent, a verbatim copy of the first four sentences of the 5-3-2010 Nover Report, which sentences summarize and disclose the betting recommendations set forth in the 5-3-2010 Nover Report (the "5-3-2010 Nover Infringement").

97.     SBR Marketing published the 5-3-2010 Nover Infringement with the subject line "Stephen Nover 2 Plays 5/3 Monday 20 Dimer and 15 Dimer Plays."

98.     The Calvary Contributor-Agent expressly requested SBR Currency from other SBR Marketing Contributor-Agents as a reward for the Calvary Contributor-Agent's submission for republication in the Service Plays Section of the 5-3-2010 Nover Report, and received five

1  units of SBR Currency from another SBR Marketing Contributor-Agent as a reward for the

2  Calvary Contributor-Agent's effectuation of publication of the 5-3-2010 Nover Infringement.

3       99.    On or about May 17, 2010, Mark Sher ("Mr. Sher") purchased a limited non-

4  exclusive license to view, and received electronic copies of, Handicapper Reports published and

5  licensed by Stevo under the marks AL DEMARCO (the "5-17-2010 DeMarco Report"),

6  ANTHONY REDD (the "5-17-2010 Redd Report"), BOBBY MAXWELL (the "5-17-2010

7  Maxwell Report"), CHRIS JORDAN (the "5-17-2010 Jordan Report"), CHUCK O'BRIEN (the

8  "5-17-2010 O'Brien Report"), CRAIG DAVIS (the "5-17-2010 Davis Report"), DEREK

9  MANCINI (the "5-17-2010 Mancini Report"), JOEL TYSON (the "5-17-2010 Tyson Report"),

10  KARL GARRETT (the "5-17-2010 Garrett Report"), MICHAEL CANNON (the "5-17-2010

11  Cannon Report"), SCOTT DELANEY (the "5-17-2010 Delaney Report"), and STEPHEN

12  NOVER (the "5-17-2010 Nover Report"; collectively with the 5-17-2010 DeMarco Report, the

13  5-17-2010 Redd Report, the 5-17-2010 Maxwell Report, the 5-17-2010 Jordan Report, the 5-17-

14  2010 O'Brien Report, the 5-17-2010 Jordan Report, the 5-17-2010 O'Brien Report, the 5-17-

15  2010 Jordan Report, the 5-17-2010 O'Brien Report, the 5-17-2010 Davis Report, the 5-17-2010

16  Mancini Report, the 5-17-2010 Tyson Report, the 5-17-2010 Garrett Report, the 5-17-2010

17  Cannon Report, and the 5-17-2010 Delaney Report, the "5-17-2010 Stevo Reports") ("Mr.

18  Sher's Purchase").

19       100.   In order to make Mr. Sher's Purchase, Mr. Sher had to scroll through and

20  affirmatively indicate Mr. Sher's entry into a User Contract (the "Sher User Contract").

21       101.   On or about May 17, 2010, Mr. Sher caused to be submitted and published in the

22  Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "Pin Fish"

23  (the "Pin Fish Contributor-Agent"), verbatim copies of the 5-17-2010 DeMarco Report (the "5-

24  17-2010 DeMarco Infringement"), the 5-17-2010 Redd Report (the "5-17-2010 Redd

25  Infringement"), the 5-17-2010 Maxwell Report (the "5-17-2010 Maxwell Infringement"), the 5-

26  17-2010 Jordan Report (the "5-17-2010 Jordan Infringement"), the 5-17-2010 Mancini Report

27  (the "5-17-2010 Mancini Infringement"), the 5-17-2010 Garrett Report (the "5-17-2010 Garrett

28  Infringement"), the 5-17-2010 Cannon Report (the "5-17-2010 Cannon Infringement"), the 5-17-

2010 O'Brien Report (the "5-17-2010 O'Brien Infringement"), and the 5-17-2010 Nover Report (the "5-17-2010 Nover Infringement") (collectively the "5-17-2010 Sher Infringements'").

102.    The Pin Fish Contributor-Agent effectuated the publication of the 5-17-2010 Sher Infringements in response to another SBR Marketing Contributor-Agent's request for republication on the Service Plays Forum of Handicapper Reports originally published that day by Stevo under the ANTHONY REDD, CHRIS JORDAN, STEPHEN NOVER, CHUCK O'BRIEN, and DEREK MANCINI marks.

103.    SBR Marketing published the 5-17-2010 Sher Infringements under the subject line "redd, jordan, davis, nover, o'brien, mancini???"

104.    SBR Marketing Contributor-Agents rewarded the Pin Fish Contributor-Agent with a total of 55 units of SBR Currency for effectuating the publication of the 5-17-2010 Sher Infringements.

105.    On or about September 4, 2010, Christopher Miller ("Mr. Miller") purchased a limited, non-exclusive license to view, and received an electronic copy of, a Handicapping Report published and licensed by Stevo under the mark ANTHONY REDD (the "9-4-2010 Redd Report") ("Mr. Miller's Subscription").

106.    The full text of the 9-4-2010 Redd Report is:

        50 Dime Release on Wisconsin as a road favorite at UNLV.  As

        this play is [released] at 1:30 AM Pacific time, the Badgers are

        priced around -20 1/2 points.

        15 Dime play on Texas as a road chalk against Rice.  The

        Longhorns are [currently] a 31-point favorite in this contest.

        15 Dime Play on Colorado over Colorado State in a game played

        in Denver.  The Buffalos are anywhere from an 11 to 12 point

        favorite [depending] on where you shop with 11 1/2 the most

        dominant number at this time.

107.    In order to purchase Mr. Miller's Subscription, Mr. Miller had to scroll through and affirmatively indicate Mr. Miller's entry into a User Contract (the "Miller User Contract").

108.    On or about September 4, 2010, Mr. Miller caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "gsad" (the "Gsad Contributor-Agent"), a near-verbatim copy of the 9-4-2010 Redd Report (the "9-4-2010 Redd Infringement"), with the following text:

> play on Wisconsin as a road favorite at UNLV.  As this play is releasid [*sic*] at 1:30 AM Pacific time, the Badgers are priced around -20 1/2 points.
>
> play on Texas as a road chalk against Rice.  The Longhorns are currentnly [*sic*] a 31-point favorite in this contest.
>
> Play on Colorado over Colorado State in a game played in Denver. The Buffalos are anywhere from an 11 to 12 point favorite depending on where you shop with 11 1/2 the most dominant number at this time.

109.    SBR Marketing published the 9-4-2010 Redd Infringement with the subject line "Aredd."

110.    The Gsad Contributor-Agent requested SBR Currency as a reward for effectuating the publication of the 9-4-2010 Redd Infringement, specifying that the Gsad Contributor-Agent sought such rewards "for dishing for the plays," *i.e.,* for paying to purchase the 9-4-2010 Redd Report from Stevo.

111.    The Gsad Contributor-Agent submitted and published the 9-4-2010 Redd Infringement in response to a request from another SBR Marketing Contributor-Agent who offered to give SBR Currency to any other SBR Marketing Contributor-Agent who submitted for republication in the Service Plays Section the 9-4-2010 Redd Report, and SBR Marketing Contributor-Agents rewarded the Gsad Contributor-Agent with 26 units of SBR Currency for effectuating the publication of the 9-4-2010 Redd Infringement.

112.    The Gsad Contributor-Agent offered to provide other SBR Marketing Contributor-Agents the language in the 9-4-2010 Redd Report that the Gsad Contributor-Agent omitted from the 9-4-2010 Redd Infringement upon request.

113.    On or about September 9, 2010, Jeff Fraelich ("Mr. Fraelich") purchased a seven-day subscription granting Mr. Fraelich a limited, non-exclusive license to view Handicapper Reports published and licensed by Stevo under marks including MICHAEL CANNON, CRAIG DAVIS, and STEPHEN NOVER ("Mr. Fraelich's Subscription").

114.    In order to purchase Mr. Fraelich's Subscription, Mr. Fraelich had to scroll through and affirmatively indicate Mr. Fraelich's entry into a User Contract (the "Fraelich User Contract").

115.    On or about September 11, 2010, Stevo published, and furnished to Mr. Fraelich under the terms of Mr. Fraelich's Subscription, Handicapper Reports published and licensed by Stevo under the respective marks MICHAEL CANNON (the "9-11-2010 Cannon Report") and CRAIG DAVIS  (the "9-11-2010 Davis Report").

116.    On or about September 11, 2010, Mr. Fraelich caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "MUC Garcon" (the "MUC Garcon Contributor-Agent"), verbatim copies of three paragraphs summarizing the analysis set forth in the 9-11-2010 Cannon Report (the "9-11-2010 Cannon Infringement"), specifically:

> **40 Dime Winner** on the **STANFORD CARDINAL** minus the points over UCLA.  Stanford is laying -6 points offshore and in Vegas.
>
> **10 Dime Winner** on the **SOUTH FLORIDA BULLS** plus the points over Florida.  South Florida is getting anywhere from +15 to +16 points offshore and in Vegas so make sure you shop around for the best possible number.
>
> **5 Dime Winner** on the **SOUTH CAROLINA GAMECOCKS** minus the points over Georgia.  South Carolina is laying -3 points offshore and in Vegas.  I want you to buy the 1/2 point down to -2 1/2.

(Emphasis in original.)

117.   On or about September 11, 2010, an SBR Marketing Moderator-Agent with the user name "sam9ball" ("Agent Sam9ball") edited the 9-11-2010 Cannon Infringement to remove the first three words of each paragraph of the 9-11-2010 Cannon Infringement as follows:

> on the **STANFORD CARDINAL** minus the points over UCLA. Stanford is laying -6 points offshore and in Vegas.
>
> on the **SOUTH FLORIDA BULLS** plus the points over Florida. South Florida is getting anywhere from +15 to +16 points offshore and in Vegas so make sure you shop around for the best possible number.
>
> on the **SOUTH CAROLINA GAMECOCKS** minus the points over Georgia.  South Carolina islaying -3 points offshore and in Vegas.  I want you to buy the 1/2 point down to -2 1/2.

(Emphasis in original.)

118.   On or about September 11, 2010, Mr. Fraelich caused to be submitted and published in the Service Plays Section by the MUC Garcon Contributor-Agent a verbatim copy of the introductory paragraph of the 9-11-2010 Davis Report, which summarized the analysis set forth in the 9-11-2010 Davis Report (the "9-11-2010 Davis Infringement"), specifically:

> **40 Dime Play** on the **OKLAHOMA STATE COWBOYS** minus the points over Troy.  Oklahoma State is laying -13 1/2 in most places offshore and in Vegas but I have spotted a few -14's out there so make sure you shop around for the best number.

(Emphasis in original.)

119.   On or about September 11, 2010, Agent Sam9ball edited the 9-11-2010 Davis Infringement to remove the "40" from the beginning of the 9-11-2010 Davis Infringement as follows:

> **Dime Play** on the **OKLAHOMA STATE COWBOYS** minus the points over Troy.  Oklahoma State is laying -13 1/2 in most places

offshore and in Vegas but I have spotted a few -14's out there so

make sure you shop around for the best number.

(Emphasis in original.)

120.    SBR Marketing published the 9-11-2010 Cannon Infringement and the 9-11-2010 Davis Infringement with the subject line "Davis, Cannon, Garret??" [*sic*].

121.    SBR Marketing Contributor-Agents rewarded the MUC Garcon Contributor-Agent with 25 units of SBR Currency for effectuating the publication of the 9-11-2010 Cannon Infringement and the 9-11-2010 Davis Infringement.

122.    On or about September 12, 2010, Stevo published, and furnished to Mr. Fraelich under the terms of Mr. Fraelich's Subscription, a Handicapping Report published and licensed by Stevo under the mark STEPHEN NOVER (the "9-12-2010 Nover Report").

123.    On or about September 12, 2010, Mr. Fraelich caused to be submitted and published in the Service Plays Section, by the MUC Garcon Contributor-Agent, a nearly verbatim copy of the first two paragraphs of the 9-12-2010 Nover Report, which summarized the analysis set forth in the 9-12-2010 Nover Report (the "9-12-2010 Nover Infringement").

124.    SBR Marketing Contributor-Agents rewarded the MUC Garcon Contributor-Agent with 23 units of SBR Currency for effectuating the publication of the 9-12-2010 Nover Infringement.

125.    On or about September 4, 2010, Christopher Smith ("Mr. Smith") purchased a football-season-long subscription granting Mr. Smith a limited, non-exclusive license to view Handicapper Reports published and licensed by Stevo under the mark ANTHONY REDD ("Mr. Smith's Subscription").

126.    In order to purchase Mr. Smith's Subscription, Mr. Smith had to scroll through and affirmatively indicate Mr. Smith's entry into a User Contract (the "Smith User Contract").

127.    On or about October 1, 2010, Stevo published, and furnished to Mr. Smith under the terms of Mr. Smith's Subscription, a Handicapping Report (the "10-1-2010 Redd Report").

128.    On or about October 1, 2010, Mr. Smith caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name

"clownpuncher" (the "Clownpuncher Contributor-Agent"), a verbatim copy of the 10-1-2010 Redd Report (the "10-1-2010 Redd Infringement").

129.    SBR Marketing published the 10-1-2010 Redd Infringement with the subject line "A Redd 10/1."

130.    An SBR Marketing Contributor-Agent rewarded the Clownpuncher Contributor-Agent with 13 units of SBR Currency for effectuating the publication of the 10-1-2010 Redd Infringement.

131.    Approximately 15 hours after the Clownpuncher Contributor-Agent effectuated the publication of the 10-1-2010 Redd Infringement, *i.e.* several hours after the football game that was the subject of the 10-1-2010 Redd Report had ended, an SBR Marketing Moderator-Agent with the user name "Willie Bee" ("Agent Willie Bee") edited the 10-1-2010 Redd Infringement to delete the first four words of the 10-1-2010 Redd Report.

132.    On or about October 2, 2010, Stevo published, and furnished to Mr. Smith under the terms of Mr. Smith's Subscription, a Handicapping Report entitled "Saturday's Plays" (the "10-2-2010 Redd Report"), consisting of the following text:

> 75 Dime play on Washington plus the points at Southern
> California.  As this [selection] is released at 1 AM [Pacific], the
> Huskies are [currently] a 10-point road dog versus the Trojans.
> 50 Dime play on Stanford plus the points at Oregon.  As this
> [selection] is released at 1 AM [Pacific], the Cardinal is [currently]
> a 6 1/2 to 7-point road dog versus the Ducks [depending] on where
> you shop.
> 15 Dime play on Buffalo plus the points at Bowling Green.  The
> Bulls are [currently] a 3 to 3 1/2 point road dog in this contest.
> 15 Dime play on Wyoming plus the points at Toledo.  The
> Cowboys are [currently] a 3 1/2 to 4 1/2 point road dog depending
> on where you shop.  With 4 1/2 points being the most dominant
> number.

15 Dime play on SMU over Rice.  The Mustangs are [currently] a

12 1/2 point road favorite in this contest.

133.    On or about October 2, 2010, Mr. Smith caused to be submitted and published in the Service Plays Section, by the Clownpuncher Contributor-Agent, a verbatim or nearly verbatim copy of the 10-2-2010 Redd Report (the "10-2-2010 Redd Infringement"):

134.    The Clownpuncher Contributor-Agent caused the 10-2-2010 Redd Infringement to be published with the subject line "A Redd 10/2."

135.    Five SBR Marketing Contributor-Agents rewarded the Clownpuncher Contributor-Agent with a total of 30 SBR Currency for effectuating the publication of the 10-2-2010 Redd Infringement.

136.    Approximately 90 minutes after the Clownpuncher Contributor-Agent effected the publication of the 10-2-2010 Redd Infringement, Agent Willie Bee edited the 10-2-2010 Redd Infringement as follows:

 Washington plus the points at Southern California.  As this selection is released at 1 AM Pacifinc [sic], the Huskies are currently a 10-point road dog versus the Trojans.

Stanford plus the points at Oregon.  As this selection is released at 1 AM Pacifinc [sic], the Cardinal is currently a 6 1/2 to 7-point road dog versus the Ducks depending on where you shop.

Buffalo plus the points at Bowling Green.  The Bulls are currently a 3 to 3 1/2 point road dog in this contest.

Wyoming plus the points at Toledo.  The Cowboys are currently a 3 1/2 to 4 1/2 point road dog depending on where you shop.  With 4 1/2 points being the most dominant number.

SMU over Rice.  The Mustangs are currently a 12 1/2 point road favorite in this contest.

137.    Approximately three hours after Agent Willie Bee edited the 10-2-2010 Redd Infringement, the Clownpuncher Contributor-Agent caused the following content to be published

in the Service Plays Section, which neither Agent Willie Bee nor any other SBR Marketing

Moderator-Agent deleted:

       75 dimes wash

       50 dimes stanford

       15 dimes buff, wyoming and smu

       138.   On or about October 3, 2010, Stevo published, and furnished to Mr. Smith under the terms of Mr. Smith's Subscription, a Handicapping Report entitled "Sunday's Card" (the "10-3-2010 Redd Report"), consisting of the following text:

       75 Dime play on the Redskins plus the points over the Eagles.  As

       this [selection] is released at 1 AM Eastern, Washington is

       between a 5 1/2 to 6 point pup [depending] on where you shop.

       15 Dime play on the Ravens plus the points over the Steelers.

       Baltimore is [currently] getting 2 1/2 points in this contest.

       15 Dime play on the Falcons over the 49ers.  Atlanta is [currently]

       a 6 1/2 point favorite in this contest.

       139.   On or about October 3, 2010, Mr. Smith caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "WhiZzer" (the "WhiZzer Contributor-Agent"), a near-verbatim copy of the 10-3-2010 Redd Report, consisting of the following text:

       Dime play on the Redskins plus the points over the Eagles.  As this

       selection is released at 1 AM Eastern, Washington is between a 5

       1/2 to 6 point pup depending on where you shop.

       Dime play on the Ravens plus the points over the Steelers.

       Baltimore is currentnly [*sic*] getting 2 1/2 points in this contest.

       Dime play on the Falcons over the 49ers.  Atlanta is currentnly

       [*sic*] a 6 1/2 point favorite in this contest.

140.     On or about October 9, 2010, Stevo published, and furnished to Mr. Smith under the terms of Mr. Smith's Subscription, a Handicapping Report entitled "Saturday's Plays" (the "10-9-2010 Redd Report").

141.     On or about October 9, 2010, Mr. Smith caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the username "zbones99" (the "Zbones99 Contributor-Agent"), a verbatim copy of the 10-9-2010 Redd Report (the "10-9-2010 Redd Infringement").

142.     SBR Marketing published the 10-9-2010 Redd Infringement with a subject line including the text "A Redd."

143.     On or about October 16, 2010, Stevo published, and furnished to Mr. Smith under the terms of Mr. Smith's Subscription, a Handicapping Report (the "10-16-2010 Redd Report"), consisting of the following text:

> 75 Dime 1st Half Play on Notre Dame over Western Michigan.  As this [selection] is released at 4 AM [Pacific], the Irish are [currently] a 14-point favorite in the 1st Half of this contest.
> 20 Dime Play on California as the road dog over Southern Cal. The Golden Bears are [currently] getting 2 1/2 points in this contest.
> 20 Dime Play on Rice as the home dog over Houston.  The Owls are [currently] getting 9 1/2 points in this contest.

144.     On or about October 16, 2010, Mr. Smith caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "Bucketwah" (the "Bucketwah Contributor-Agent"), a near-verbatim copy of the 10-16-2010 Redd Report (the "10-16-2010 Redd Infringement"), consisting of the following text, followed by the commentary "from a very reliable friend.  Top play is biggest.":

> Play 1st Half Play on Notre Dame over Western Michigan.  As this selection is released at 4 AM Pacifinc [*sic*], the Irish are currentoy [*sic*] a 14-point favorite in the 1st Half of this contest.

Play on California as the road dog over Southern Cal.  The Golden

Bears are currentoy [*sic*] getting 2 1/2 points in this contest.

Play on Rice as the home dog over Houston.  The Owls are

currentoy [*sic*] getting 9 1/2 points in this contest.

145.    On or about October 18, 2010, Rahul Dutta ("Mr. Dutta") purchased a limited, non-exclusive license to view, and received an electronic copy of, a Handicapping Report entitled "Monday Night Total Of The Year," published and licensed by Stevo under the mark STEVE BUDIN (the "10-18-2010 Budin Report") ("Mr. Dutta's Purchase").

146.    In order to make Mr. Dutta's Purchase, Mr. Dutta had to scroll through and affirmatively indicate Mr. Dutta's entry into a User Contract (the "Dutta User Contract").

147.    On or about October 18, 2010, Mr. Dutta caused to be submitted and published in the Service Plays Section, by an SBR Marketing Contributor-Agent with the user name "ebbs" (the "Ebbs Contributor-Agent"), a near-verbatim copy of the Budin Report.

148.    On or about September 20, 2010, Pedro Ganes ("Mr. Ganes") purchased a year-long subscription granting Mr. Ganes a limited, non-exclusive license to view Handicapper Reports published and licensed by Stevo under the mark JEFF BENTON ("Mr. Ganes' Subscription").

149.    In order to purchase Mr. Ganes' Subscription, Mr. Ganes had to scroll through and affirmatively indicate Mr. Ganes' entry into a User Contract (the "Ganes User Contract").

150.    On or about October 27, 2010, Stevo published, and furnished to Mr. Ganes under the terms of Mr. Ganes' Subscription, a Handicapping Report entitled "Jeff Benton Wednesday's Action" (the "10-27-2010 Benton Report").

151.    On or about October 27, 2010, Mr. Ganes caused to be submitted and published in the Service Plays Section, by a SBR Marketing Contributor-Agent with the username "Stallion" (the "Stallion Contributor-Agent"), a nearly verbatim copy of the first two paragraphs of the 10-27-2010 Benton Report (the "10-27-2010 Benton Infringement"), which paragraphs summarize and disclose the analysis and recommendations set forth in the 10-27-2010 Benton Report.

152.    SBR Marketing published the 10-27-2010 Benton Infringement with the subject line "Jeff Benton."

### IV.    *SBR MARKETING'S KNOWING GAIN AT STEVO'S EXPENSE*

153.    Internet users seeking information online regarding the "picks" of a particular sports handicapper are more likely to obtain that information from a source that appears at or near the top of results from Internet search engines such as Google than from sources that appear lower in search engine results.

154.    SBR Marketing knowingly uses, and knowingly engages SBR Marketing Contributor-Agents to use, the Marks in connection with published infringements of Stevo's Handicapper Reports, in order to gain higher placement in Internet search engine results with respect to the Marks and thereby illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain.

155.    As of February 3, 2011, a Google search for "Al Demarco picks" yielded the SBR Website on the first page of search results, ahead of multiple Stevo Websites on which Handicapper Reports published under the DeMarco Mark legitimately appear.

156.    The Google search results for "Al Demarco picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the DeMarco Mark.

157.    The Google search results for "Al Demarco picks," as of February 3, 2011, actually excerpt content in the Service Plays Section in which an SBR Marketing Contributor-Agent wrote, "Somebody (possibly me) will probably post Al DeMarco's pick as soon as we get ahold [*sic*] of it, and if that happens, you're welcome to take it…"

158.    As of February 3, 2011, a Google search for "Brandon Lang picks" yielded the SBR Website as the second search result, immediately behind the Stevo Website on which Handicapper Reports published under the Lang Mark legitimately appears.

159.    The Google search results for "Brandon Lang picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Lang Mark.

160.    The Google search results for "Brandon Lang picks," as of February 3, 2011, actually excerpt content in the Service Plays Section in which an SBR Marketing Contributor-Agent wrote, "I will keep track of Brandon Lang's football picks here for the entire season. I believe this is beneficial because he's possibly the WORST [handi]capper."

161.    As of February 3, 2011, a Google search for "Jeff Benton picks" yielded the SBR Website as the third search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Benton Mark legitimately appear.

162.    The Google search results for "Jeff Benton picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Benton Mark.

163.    As of February 3, 2011, a Google search for "Matt Rivers picks" yielded the SBR Website on the first page of search results, ahead of multiple Stevo Websites on which Handicapper Reports published under the Rivers Mark legitimately appear.

164.    As of February 3, 2011, a Google search for "Steve Budin picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Budin Mark legitimately appear.

165.    The Google search results for "Steve Budin picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Budin Mark.

166.     As of February 3, 2011, a Google search for "Andy Fanelli picks" yielded the SBR Website as the third search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Fanelli Mark legitimately appear.

167.     The Google search results for "Andy Fanelli picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Fanelli Mark.

168.     The Google search results for "Andy Fanelli picks," as of February 3, 2011, actually content published in the Service Plays Section in which an SBR Marketing Contributor-Agent effectuated a verbatim republication of at least the first sentence of a Handicapper Report originally published by Stevo under the Fanelli Mark.

169.     As of February 3, 2011, a Google search for "Anthony Redd picks" yielded the SBR Website as the first search result, rather than any of the Stevo Websites on which Handicapper Reports published under the Redd Mark legitimately appear.

170.     The Google search results for "Anthony Redd picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Redd Mark.

171.     As of February 3, 2011, a Google search for "Bob Valentino picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Valentino Mark legitimately appear.

172.     The Google search results for "Scott Delaney picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Delaney Mark.

173.    As of February 3, 2011, a Google search for "Bobby Maxwell picks" yielded the SBR Website as the third search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Maxwell Mark legitimately appear.

174.    The Google search results for "Bobby Maxwell picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Maxwell Mark.

175.    As of February 3, 2011, a Google search for "Brett Atkins picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Atkins Mark legitimately appear.

176.    The Google search results for "Brett Atkins picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Atkins Mark.

177.    The Google search results for "Brett Atkins picks," as of February 3, 2011, actually excerpt content published in the Service Plays Section in which an SBR Marketing Contributor-Agent effectuated a verbatim republication of at least the first few sentences of a Handicapper Report originally published by Stevo under the Atkins Mark.

178.    As of February 3, 2011, a Google search for "Chris Jordan picks" yielded the SBR Website as the third search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Jordan Mark legitimately appear.

179.    The Google search results for "Chris Jordan picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Jordan Mark.

180.    The Google search results for "Chris Jordan picks," as of February 3, 2011, actually excerpt content published by SBR Marketing in the Service Plays Section in which an SBR Marketing Contributor-Agent wrote, "if anyone picks this play up please post.  I was about to get his monthly package again," thereby openly soliciting misappropriation of Stevo's intellectual property.

181.    As of February 3, 2011, a Google search for "Chuck O'Brien picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the O'Brien Mark legitimately appear.

182.    The Google search results for "Chuck O'Brien picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the O'Brien Mark.

183.    The Google search results for "Chuck O'Brien picks," as of February 3, 2011, actually excerpt content published by SBR Marketing in the Service Plays Section in which an SBR Marketing Contributor-Agent offers to give SBR Currency to any other Service Plays Section user who would republish information from that day's Handicapper Report published by Stevo under the O'Brien Mark.

184.    As of February 3, 2011, a Google search for "Craig Davis picks" yielded the SBR Website as the first search result, rather than any of the Stevo Websites on which Handicapper Reports published under the Davis Mark legitimately appear.

185.    The Google search results for "Craig Davis picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Davis Mark.

186.   As of February 3, 2011, a Google search for "Derek Mancini picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Mancini Mark legitimately appear.

187.   The Google search results for "Derek Mancini picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Mancini Mark.

188.   As of February 3, 2011, a Google search for "Jay McNeil picks" yielded the SBR Website as the fourth search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the McNeil Mark legitimately appear.

189.   The Google search results for "Jay McNeil picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the McNeil Mark.

190.   The Google search results for "Jay McNeil picks," as of February 3, 2011, actually excerpt content published by SBR Marketing in the Service Plays Section in which an SBR Marketing Contributor-Agent effectuated a verbatim republication of at least the first few sentences of a Handicapper Report originally published by Stevo under the McNeil Mark.

191.   As of February 3, 2011, a Google search for "Joel Tyson picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Tyson Mark legitimately appear.

192.   The Google search results for "Joel Tyson picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Tyson Mark.

193.    The Google search results for "Joel Tyson picks," as of February 3, 2011, actually excerpt content published by SBR Marketing in the Service Plays Section in which an SBR Marketing Contributor-Agent effectuated a verbatim republication of at least the first sentence of a Handicapper Report originally published by Stevo under the Tyson Mark.

194.    As of February 3, 2011, a Google search for "Scott Delaney picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Delaney Mark legitimately appear.

195.    The Google search results for "Scott Delaney picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Delaney Mark.

196.    The Google search results for "Scott Delaney picks," as of February 3, 2011, actually excerpt a verbatim republication by an SBR Marketing Contributor-Agent of at least the first few sentences of a Handicapper Report originally published by Stevo under the Delaney Mark.

197.    As of February 3, 2011, a Google search for "Sean Michaels picks" yielded the SBR Website as the second search result, ahead of all but one of the Stevo Websites on which Handicapper Reports published under the Michaels Mark legitimately appear.

198.    The Google search results for "Sean Michaels picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Michaels Mark.

199.    As of February 3, 2011, a Google search for "Stephen Nover picks" yielded the SBR Website as the fourth search result, ahead of all but one of the Stevo Websites on which the Handicapper Reports published under the Nover Mark legitimately appear.

200.     The Google search results for "Stephen Nover picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Nover Mark.

201.     As of February 3, 2011, a Google search for "Trace Adams picks" yielded the SBR Website as the first search result, rather than any of the Stevo Websites on which Handicapper Reports published under the Adams Mark legitimately appear.

202.     The Google search results for "Trace Adams picks," as of February 3, 2011, are derived in significant part from the subject lines of content published by SBR Marketing in the Service Plays Section containing unauthorized displays, reproductions and republications of, and unauthorized derivative works based on, Handicapper Reports originally published by Stevo under the Adams Mark.

203.     Stevo has never licensed any of the Marks to SBR Marketing or in any other way granted permission to SBR Marketing to use any of the Marks.

204.     Stevo has never licensed any of the Handicapper Reports to SBR Marketing or in any other way granted permission to SBR Marketing to display, reproduce, republish, or publish derivative works based on Handicapper Reports originally published by Stevo.

### *V.  MR. DANIELE'S ATTACK ON STEVO, MR. BUDIN, AND MR. ROLLI*

205.     Mr. Daniele has engaged in a willful, ongoing and extensive campaign to misappropriate and republish without authorization Stevo's intellectual and commercial property, and to publish defamatory statements about Plaintiffs (respectively and in the aggregate) in order to damage Stevo's business and the respective personal and professional reputations of Mr. Budin and Mr. Rolli.

206.     Under the username "PepperMillRick," Mr. Daniele contributed content to the SBR Website (the "Daniele SBR Contributions") that included, without limitation: (a) defamatory and disparaging statements that Plaintiffs, collectively and respectively, have engaged, and continue to engage in, fraudulent, corrupt and unscrupulous business practices; (b)

unauthorized republications of Stevo's copyrighted material; and (c) unauthorized republications of Stevo's licensable commercial property.

207.    Mr. Daniele contributed the Daniele SBR Contributions to the SBR Website from a location within the United States of America.

208.    In one or more of the Daniele SBR Contributions, Mr. Daniele falsely represented that "PepperMillRick" was a former employee of Stevo.

209.    In a Daniele SBR Contribution dated February 10, 2011 at 11:47 a.m., which makes specific reference to "Lang," "Budin," "DeMarco," "Brandon Lang," "Brandon Link," "Al Rolli" and "Al DeMarco," and in which "PepperMillRick" made representations suggesting that "PepperMillRick" was a former employee of Stevo, Mr. Daniele caused the following content to be published:

> They had less than 25 buys of Brandon's Super Bowl pick so when people said WTF and e mailed WTF is going on I got Pitt for the first half and not the game they would respond that they posted his pick in one of his other clubs and offer them a free day or a free week. Then because less than 5 people in the entire country bought his picks the last two days where he went 1-2 **they posted fake games** and make it seem like he went 3-0 (the "Fake Game Misrepresentation") (emphasis added).

210.    In a Daniele SBR Contribution dated February 10, 2011 at 11:47 a.m., which makes specific reference to "Lang," "Budin," "DeMarco," "Brandon Lang," "Brandon Link," "Al Rolli" and "Al DeMarco," and in which "PepperMillRick" made representations suggesting that "PepperMillRick" was a former employee of Stevo, Mr. Daniele caused the following content to be published:

> We were told to sign up with up to five message boards under different fake names. We were told to post messages like "isn't Lang sharp?" or "isn't Lang running hot?" or "don't fade him tonight he's on the right side". That way idiots or new people

would buy their games. I personally was on 5 message boards and
it was crazy how just a few posts would generate buys to Lang's
site. Now they r in big trouble. No one is buying much of anything
from any capper. On an average day less each capper was selling
about only 2 or 3 daily packages. Be careful everyone as Rolli and
Budin r friends with many of the people that run the message
boards and if you buy picks from them to fade they try to match up
ip addresses who buy to these message boards. Many, many people
are in bed together and a few of the message boards r sold off
interests in their product to sports handicapping firms and offshore
sportsbooks (the "Message Board Misrepresentation").

211. In a Daniele SBR Contribution dated February 10, 2011 at 11:47 a.m., which makes specific reference to "Lang," "Budin," "DeMarco," "Brandon Lang," "Brandon Link," "Al Rolli" and "Al DeMarco," and in which "PepperMillRick" made representations suggesting that "PepperMillRick" was a former employee of Stevo, Mr. Daniele caused the following content to be published:

Everything we did from hyping games, telling people to buy half
points, tease games and parlays go against basic strategies of
winning in gambling. Basically they didn't care about any of their
clients (the "Hype Misrepresentation").

212. Mr. Daniele has never worked for Stevo.

213. Mr. Daniele did not, and does not, have any capability to gain, by authorized means, first-hand personal knowledge regarding the day-to-day operations of Stevo.

214. Mr. Daniele could not have gained, by authorized means, information regarding the various methodologies used by Stevo's handicappers.

# FIRST CAUSE OF ACTION

## REGISTERED MARK INFRINGEMENT UNDER THE LANHAM ACT,

## 15 U.S.C. § 1114(a)(1) (BY STEVO, AGAINST SBR)

215.    Stevo repeats and realleges all the allegations set forth above.

216.    SBR Marketing, by and through its employees and agents, including SBR Marketing Contributor-Agents and SBR Marketing Moderator-Agents, is using and/or has used the Registered Marks (the "Infringing Registered Marks") in commerce in connection with the sale, offering for sale, distribution, and advertising of goods and services, specifically, sports Handicapper Reports, without Stevo's consent, and with knowledge that SBR Marketing's use of the Infringing Registered Marks in commerce constitutes the use of a counterfeit mark or designation (the "SBR Marketing Infringing Registered Mark Use").

217.    The SBR Marketing Infringing Registered Mark Use constitutes more than a nominative use of the Infringing Registered Marks, because SBR Marketing engages in the SBR Marketing Infringing Registered Mark Use specifically to denote the source of the infringed content appearing on the SBR Website that was originally licensed by Stevo under the Registered Marks.

218.    When SBR Marketing republishes infringed Handicapper Reports in conjunction with the Infringing Registered Marks, SBR Marketing thereby leads users to believe that SBR Marketing is, or is affiliated with, the source of the infringed Handicapper Reports and the Infringing Registered Marks,

219.    When SBR Marketing republishes infringed Handicapper Reports in conjunction with the Infringing Registered Marks, SBR Marketing thereby leads users to believe that SBR Marketing has permission to republish the Infringing Registered Marks in conjunction with the infringed Handicapper Reports.

220.    The SBR Marketing Infringing Registered Mark Use constitutes more than a nominative use of the Infringing Registered Marks, because SBR Marketing engages in the SBR Marketing Infringing Registered Mark Use to illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain.

221.     By engaging in the SBR Marketing Infringing Registered Mark Use, rather than merely republishing infringed Handicapper Reports without use of the Infringing Registered Marks, SBR Marketing republishes the source indicators with respect to the Handicapper Reports, which source indicators are not an integral or incorporated part of the Handicapper Reports.

222.     The SBR Marketing Infringing Registered Mark Use is likely to cause confusion, cause mistake, or deceive consumers and the public with respect to the goods and services offered in commerce by SBR Marketing.

223.     SBR Marketing has willfully engaged in the SBR Marketing Infringing Registered Mark Use with knowledge that the SBR Marketing Infringing Registered Mark Use constitutes infringement of the Registered Marks.

224.     The SBR Marketing Infringing Registered Mark Use has damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Registered Marks, in violation of § 32 of the Lanham Act (15 U.S.C. § 1114).

225.     Stevo has sustained actual damages as a direct and proximate result of the SBR Marketing Infringing Registered Mark Use, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

226.     SBR Marketing has profited as a direct and proximate result of the SBR Marketing Infringing Registered Mark Use, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

227.     SBR Marketing is liable to Stevo for three times Stevo's actual damages or SBR Marketing's profits resulting from the SBR Marketing Infringing Registered Mark Use, whichever is greater, plus prejudgment interest on such amount, or, in the alternative, to statutory damages not exceeding $2,000,000 per type of goods or services sold, offered for sale, or distributed by SBR Marketing under the Infringing Registered Marks, pursuant to § 35 of the Lanham Act (15 U.S.C § 1117) as amended by the Prioritizing Resources and Organization for Intellectual Property Act of 2008.

228.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

229.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement by SBR Marketing of the Registered Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the Registered Marks, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

230.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## SECOND CAUSE OF ACTION

## CONTRIBUTORY REGISTERED MARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. § 1114(a)(1) (BY STEVO, AGAINST SBR)

231.     Stevo repeats and realleges all the allegations set forth above.

232.     SBR Marketing has intentionally induced others, specifically, SBR Marketing Contributor-Agents, to infringe the Registered Marks, by engaging and paying those SBR Marketing Contributor-Agents to author and effectuate publication of content that infringes the Registered Marks.

233.     SBR Marketing has continued to supply SBR Marketing's services, specifically, use of the SBR Website and payment for contribution of content to the SBR Website, to SBR Marketing Contributor-Agents whom SBR Marketing knows or has reason to know are engaging in infringement of the Registered Marks.

234.     SBR Marketing Contributor-Agents' use of the Infringing Registered Marks constitutes more than a nominative use of the Infringing Registered Marks, because SBR Marketing Contributor-Agents use the Infringing Registered Marks specifically to denote the source of the infringed content appearing on the SBR Website that was originally licensed by Stevo under the Registered Marks.

235.    SBR Marketing Contributor-Agents' use of the Infringing Registered Marks constitutes more than a nominative use of the Infringing Registered Marks, because SBR Marketing engages SBR Marketing Contributor-Agents to use the Infringing Registered Marks to illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain.

236.    SBR Marketing's acts and omissions alleged herein have damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Registered Marks, in violation of § 32 of the Lanham Act (15 U.S.C. § 1114).

237.    Stevo has sustained actual damages as a direct and proximate result of SBR's acts and omissions alleged herein, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

238.    SBR Marketing has profited as a direct and proximate result of SBR's acts and omissions alleged herein, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

239.    SBR Marketing is liable to Stevo for three times Stevo's actual damages or SBR Marketing's profits resulting from SBR's acts and omissions alleged herein, whichever is greater, plus prejudgment interest on such amount, or, in the alternative, to statutory damages not exceeding $2,000,000 per type of goods or services sold, offered for sale, or distributed by SBR Marketing under the Infringing Registered Marks, pursuant to § 35 of the Lanham Act (15 U.S.C § 1117) as amended by the Prioritizing Resources and Organization for Intellectual Property Act of 2008.

240.    SBR Marketing's acts and omissions as alleged herein, and the ongoing direct results of those acts and omissions, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

241.    Unless SBR Marketing is preliminarily and permanently enjoined from further contributory infringement by SBR Marketing of the Registered Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further contributory infringement by SBR Marketing of the Registered Marks, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

242.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

### THIRD CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (BY STEVO, AGAINST SBR)

243.     Stevo repeats and realleges all the allegations set forth above.

244.     SBR Marketing, by and through SBR Marketing's employees and agents, including without limitation SBR Marketing Contributor-Agents and SBR Marketing Moderator-Agents, is using and/or has used the Marks in commerce (the "Infringing Marks")  in connection with the sale, offering for sale, distribution, and advertising of goods and services, without Stevo's consent (the "SBR Marketing Infringing Use").

245.     The SBR Marketing Infringing Use constitutes more than a nominative use of the Infringing Marks, because SBR Marketing engages in the SBR Marketing Infringing Use specifically to denote the source of the infringed content appearing on the SBR Website that was originally licensed by Stevo under the Marks.

246.     When SBR Marketing republishes infringed Handicapper Reports in conjunction with the Infringing Marks, SBR Marketing thereby leads users to believe that SBR Marketing has permission to republish the Infringing Marks in conjunction with the infringed Handicapper Reports.

247.     The SBR Marketing Infringing Use constitutes more than a nominative use of the Infringing Marks, because SBR Marketing engages in the SBR Marketing Infringing Use to illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain.

248.     By engaging in the SBR Marketing Infringing Use, rather than merely republishing infringed Handicapper Reports, SBR Marketing republishes the source indicators with respect to the Handicapper Reports, which source indicators are not an integral or incorporated part of the Handicapper Reports.

249.    The SBR Marketing Infringing Use constitutes a false designation of origin and a false description and representation of SBR Marketing's business and goods and services, which has damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Marks, in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

250.    Stevo has sustained actual damages as a direct and proximate result of the SBR Marketing Infringing Use, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

251.    SBR Marketing has profited as a direct and proximate result of the SBR Marketing Infringing Use, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

252.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

253.    Unless SBR Marketing is preliminarily and permanently enjoined from further illegal use by SBR Marketing of the Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further illegal use by SBR Marketing of the Marks, pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116).

254.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

255.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## FOURTH CAUSE OF ACTION

## CONTRIBUTORY FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a) (BY STEVO, AGAINST SBR)

256.    Stevo repeats and realleges all the allegations set forth above.

257.    SBR Marketing has intentionally induced others, specifically, SBR Marketing Contributor-Agents, to make use of the Marks in a manner that constitutes a false designation of origin and a false description and representation of SBR Marketing's business and goods and services, by paying those SBR Marketing Contributor-Agents to author and effectuate publication of content making prominent use of the Infringing Marks, thereby causing SBR Marketing to be more strongly associated with the Marks in at least one significant search engine algorithm than Stevo itself.

258.    SBR Marketing has continued to supply SBR Marketing's services, specifically, use of the SBR Website and payment for contribution of content to the SBR Website, to SBR Marketing Contributor-Agents whom SBR Marketing knows or has reason to know are engaging in use of the Marks that constitutes a false designation of origin and a false description and representation of SBR Marketing's business and goods and services.

259.    SBR Marketing Contributor-Agents' use of the Infringing Marks constitutes more than a nominative use of the Infringing Marks, because SBR Marketing Contributor-Agents use the Infringing Marks specifically to denote the source of the infringed content appearing on the SBR Website that was originally licensed by Stevo under the Marks.

260.    SBR Marketing Contributor-Agents' use of the Infringing Marks constitutes more than a nominative use of the Infringing Marks, because SBR Marketing engages SBR Marketing Contributor-Agents to use the Infringing Marks to illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain.

261.    Stevo has sustained actual damages as a direct and proximate result of SBR Marketing's acts and omissions alleged herein, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

262.    SBR Marketing has profited as a direct and proximate result of SBR Marketing's acts and omissions alleged herein, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

263.    SBR Marketing's acts and omissions as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

264.    Unless SBR Marketing is preliminarily and permanently enjoined from further illegal use by SBR Marketing of the Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further illegal use by SBR Marketing of the Marks, pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116).

265.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

266.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## FIFTH CAUSE OF ACTION

## MARK DILUTION (BLURRING) UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)

## (BY STEVO, AGAINST SBR)

267.    Stevo repeats and realleges all the allegations set forth above.

268.    During the years in which the Marks have been in continuous use and subject to extensive marketing, the Marks have acquired a high level of distinctiveness and fame in connection with Stevo's provision of goods and services under the Marks.

269.    The Marks were famous when SBR Marketing began using the Infringing Marks in interstate commerce.

270.    SBR Marketing's wrongful use of the Infringing Marks was willful, and SBR Marketing willfully intended to trade on the recognition of the Marks when SBR Marketing used the Infringing Marks.

271.    SBR Marketing's use of the Infringing Marks, which are identical or nearly identical to the Marks, cause dilution of the distinctive qualities of the Marks, and such dilution

has damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Marks, in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

272.    Stevo has sustained actual damages as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

273.    SBR Marketing has profited as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

274.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

275.    Unless SBR Marketing is preliminarily and permanently enjoined from further dilution by blurring by SBR Marketing of the Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further dilution by blurring by SBR Marketing of the Marks, pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116).

276.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

277.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## SIXTH CAUSE OF ACTION

## CONTRIBUTORY MARK DILUTION (BLURRING) UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c) (BY STEVO, AGAINST SBR)

278.    Stevo repeats and realleges all the allegations set forth above.

279.    SBR Marketing has intentionally induced others, specifically, SBR Marketing Contributor-Agents, to make use of the Marks in a manner willfully intended to trade on the

recognition of the Marks, by paying those SBR Marketing Contributor-Agents to authors and effectuate publication of content making prominent use of the Infringing Marks, thereby causing SBR Marketing to be more strongly associated with the Marks in at least one significant search engine algorithm than Stevo itself.

280. SBR Marketing has continued to supply SBR Marketing's services, specifically, use of the SBR Website and payment for contribution of content to the SBR Website, to SBR Marketing Contributor-Agents whom SBR Marketing knows or has reason to know are engaging in use of the Marks in a manner willfully intended to trade on the recognition of the Marks.

281. The Marks were famous when SBR Marketing began paying SBR Marketing Contributor-Agents to contribute to the SBR Website content whose publication by SBR Marketing constitutes use of the Infringing Marks in interstate commerce.

282. SBR Marketing's inducement of SBR Marketing Contributor-Agents to use the Infringing Marks in the Service Plays Section was willful, and SBR Marketing willfully intended to trade on the recognition of the Marks when SBR Marketing paid SBR Marketing Contributor-Agents to contribute content to the SBR Website making improper use of the Infringing Marks.

283. SBR Marketing's inducement of SBR Marketing Contributor-Agents to use the Infringing Marks, which are identical or nearly identical to the Marks, causes dilution of the distinctive qualities of the Marks, and such dilution has damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Marks, in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

284. Stevo has sustained actual damages as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

285. SBR Marketing has profited as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

286.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

287.    Unless SBR Marketing is preliminarily and permanently enjoined from further dilution by blurring by SBR Marketing of the Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further dilution by blurring by SBR Marketing of the Marks, pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116).

288.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

289.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## SEVENTH CAUSE OF ACTION

## MARK DILUTION (TARNISHMENT) UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)

### (BY STEVO, AGAINST SBR)

290.    Stevo repeats and realleges all the allegations set forth above.

291.    During the years in which the Marks have been in continuous use and subject to extensive marketing, the Marks have acquired a high level of distinctiveness and fame in connection with Stevo's provision of goods and services under the Marks.

292.    The Marks were famous when SBR Marketing began using the Infringing Marks in interstate commerce.

293.    SBR Marketing's wrongful use of the Infringing Marks was willful, and SBR Marketing willfully intended to harm the reputations of the Marks when SBR Marketing used the Infringing Marks.

294.    SBR Marketing's use of the Infringing Marks, which are identical or nearly identical to the Marks, causes dilution of the distinctive qualities of the Marks, and such dilution

has damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Marks, in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

295.    Stevo has sustained actual damages as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

296.    SBR Marketing has profited as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

297.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

298.    Unless SBR Marketing is preliminarily and permanently enjoined from further dilution by tarnishment by SBR Marketing of the Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further dilution by tarnishment by SBR Marketing of the Marks, pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116).

299.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

300.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## EIGHTH CAUSE OF ACTION

## CONTRIBUTORY MARK DILUTION (TARNISHMENT) UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c) (BY STEVO, AGAINST SBR)

301.    Stevo repeats and realleges all the allegations set forth above.

302.    SBR Marketing has intentionally induced others, including, without limitation, SBR Marketing Contributor-Agents, to make use of the Marks in a manner willfully intended to

harm the reputations of the Marks, by paying those SBR Marketing Contributor-Agents to author and effectuate publication of content making prominent disparaging use of the Infringing Marks, thereby causing SBR Marketing to be more strongly associated with the Marks in at least one significant search engine algorithm than Stevo itself.

303.    SBR Marketing has continued to supply SBR Marketing's services, specifically, use of the SBR Website and payment for contribution of content to the SBR Website, to SBR Marketing Contributor-Agents whom SBR Marketing knows or has reason to know are engaging in use of the Marks in a manner willfully intended to harm the reputations of the Marks.

304.    The Marks were famous when SBR Marketing began paying SBR Marketing Contributor-Agents to contribute to the SBR Website content whose publication by SBR Marketing constitutes use of Infringing Marks in interstate commerce.

305.    SBR Marketing's inducement of SBR Marketing Contributor-Agents to use the Infringing Marks in the Service Plays Section was willful, and SBR Marketing willfully intended to harm the reputations of the Marks when SBR Marketing paid SBR Marketing Contributor-Agents to contribute content to the SBR Website making prominent disparaging use of the Infringing Marks.

306.    SBR Marketing's inducement of SBR Marketing Contributor-Agents to disparagingly use the Infringing Marks, which are identical or nearly identical to the Marks, causes dilution of the distinctive qualities of the Marks, and such dilution has damaged and will continue to damage the reputation and goodwill of Stevo established in connection with the Marks, in violation of § 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

307.    Stevo has sustained actual damages as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those actual damages pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

308.    SBR Marketing has profited as a direct and proximate result of the Infringing Use, and SBR Marketing is liable to Stevo for the amount of those profits pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

309.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

310.    Unless SBR Marketing is preliminarily and permanently enjoined from further dilution by blurring by SBR Marketing of the Marks, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further dilution by blurring by SBR Marketing of the Marks, pursuant to § 34 of the Lanham Act (15 U.S.C. § 1116).

311.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

312.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to § 35 of the Lanham Act (15 U.S.C. § 1117).

## NINTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—3-29-2010 DAVIS REPORT (BY STEVO, AGAINST SBR)

313.    Stevo repeats and realleges all the allegations set forth above.

314.    Stevo's copyright in the 3-29-2010 Davis Report is the subject of registration number TX0007371067, granted February 22, 2011, with the United States Copyright Office..

315.    Stevo holds the exclusive right to reproduce the 3-29-2010 Davis Report, pursuant to 17 U.S.C. § 106(1).

316.    Stevo holds the exclusive right to prepare derivative works based upon the 3-29-2010 Davis Report, pursuant to 17 U.S.C. § 106(2).

317.    Stevo holds the exclusive right to distribute copies of the 3-29-2010 Davis Report, pursuant to 17 U.S.C. § 106(3).

318.    Stevo holds the exclusive right to publicly display the 3-29-2010 Davis Report, pursuant to 17 U.S.C. § 106(5).

319.    SBR Marketing reproduced the 3-29-2010 Davis Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

320.    SBR Marketing created an unauthorized derivative of the 3-29-2010 Davis Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

321.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 3-29-2010 Davis Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

322.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 3-29-2010 Davis Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

323.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 3-29-2010 Davis Report.

324.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

325.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

326.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

327.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

328.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 3-29-2010 Davis Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 3-29-2010 Davis Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

329.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

330.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-2-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

331.     Stevo repeats and realleges all the allegations set forth above.

332.     Stevo's copyright in the 5-2-2010 Nover Report is the subject of registration number TX0007371063, granted February 22, 2011, with the United States Copyright Office.

333.     Stevo holds the exclusive right to reproduce the 5-2-2010 Nover Report, pursuant to 17 U.S.C. § 106(1).

334.     Stevo holds the exclusive right to prepare derivative works based upon the 5-2-2010 Nover Report, pursuant to 17 U.S.C. § 106(2).

335.     Stevo holds the exclusive right to distribute copies of the 5-2-2010 Nover Report, pursuant to 17 U.S.C. § 106(3).

336.     Stevo holds the exclusive right to publicly display the 5-2-2010 Nover Report, pursuant to 17 U.S.C. § 106(5).

337.     SBR Marketing reproduced the 5-2-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

338.     SBR Marketing created an unauthorized derivative of the 5-2-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

339.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-2-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

340.     SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-2-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

341.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-2-2010 Nover Report.

342.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

343.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

344.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

345.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

346.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-2-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-2-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

347.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

348.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## ELEVENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-3-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

349.    Stevo repeats and realleges all the allegations set forth above.

350.    Stevo's copyright in the 5-3-2010 Nover Report is the subject of registration number TX0007371070, granted February 22, 2011, with the United States Copyright Office.

351.    Stevo holds the exclusive right to reproduce the 5-3-2010 Nover Report, pursuant to 17 U.S.C. § 106(1).

352.    Stevo holds the exclusive right to prepare derivative works based upon the 5-3-2010 Nover Report, pursuant to 17 U.S.C. § 106(2).

353.    Stevo holds the exclusive right to distribute copies of the 5-3-2010 Nover Report, pursuant to 17 U.S.C. § 106(3).

354.    Stevo holds the exclusive right to publicly display the 5-3-2010 Nover Report, pursuant to 17 U.S.C. § 106(5).

355.    SBR Marketing reproduced the 5-3-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

356.    SBR Marketing created an unauthorized derivative of the 5-3-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

357.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-3-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

358.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-3-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

359.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-3-2010 Nover Report.

360.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

361.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

362.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

363.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

364.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-3-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-3-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

365.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

366.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TWELFTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 CANNON REPORT (BY STEVO, AGAINST SBR)

367.    Stevo repeats and realleges all the allegations set forth above.

368.    Stevo's copyright in the 5-17-2010 Cannon Report is the subject of registration number TX0007371069, granted February 22, 2011, with the United States Copyright Office.

369.    Stevo holds the exclusive right to reproduce the 5-17-2010 Cannon Report, pursuant to 17 U.S.C. § 106(1).

370.    Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 Cannon Report, pursuant to 17 U.S.C. § 106(2).

371.    Stevo holds the exclusive right to distribute copies of the 5-17-2010 Cannon Report, pursuant to 17 U.S.C. § 106(3).

372.    Stevo holds the exclusive right to publicly display the 5-17-2010 Cannon Report, pursuant to 17 U.S.C. § 106(5).

373.    SBR Marketing reproduced the 5-17-2010 Cannon Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

374.     SBR Marketing created an unauthorized derivative of the 5-17-2010 Cannon Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

375.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 Cannon Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

376.     SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 Cannon Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

377.     SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 Cannon Report.

378.     SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

379.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

380.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

381.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

382.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Cannon Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Cannon Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

383.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

384.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### THIRTEENTH CAUSE OF ACTION

### DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 DEMARCO REPORT (BY STEVO, AGAINST SBR)

385.    Stevo repeats and realleges all the allegations set forth above.

386.    Stevo's copyright in the 5-17-2010 DeMarco Report is the subject of registration number TX0007371075, granted February 22, 2011, with the United States Copyright Office.

387.    Stevo holds the exclusive right to reproduce the 5-17-2010 DeMarco Report, pursuant to 17 U.S.C. § 106(1).

388.    Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 DeMarco Report, pursuant to 17 U.S.C. § 106(2).

389.    Stevo holds the exclusive right to distribute copies of the 5-17-2010 DeMarco Report, pursuant to 17 U.S.C. § 106(3).

390.    Stevo holds the exclusive right to publicly display the 5-17-2010 DeMarco Report, pursuant to 17 U.S.C. § 106(5).

391.    SBR Marketing reproduced the 5-17-2010 DeMarco Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

392.    SBR Marketing created an unauthorized derivative of the 5-17-2010 DeMarco Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

393.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 DeMarco Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

394.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 DeMarco Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

395.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 DeMarco Report.

396.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

397.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

398.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

399.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

400.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 DeMarco Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 DeMarco Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

401.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

402.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FOURTEENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 GARRETT REPORT (BY STEVO, AGAINST SBR)

403.    Stevo repeats and realleges all the allegations set forth above.

404.    Stevo's copyright in the 5-17-2010 Garrett Report is the subject of registration number TX0007371071, granted February 22, 2011, with the United States Copyright Office.

405.    Stevo holds the exclusive right to reproduce the 5-17-2010 Garrett Report, pursuant to 17 U.S.C. § 106(1).

406.    Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 Garrett Report, pursuant to 17 U.S.C. § 106(2).

407.    Stevo holds the exclusive right to distribute copies of the 5-17-2010 Garrett Report, pursuant to 17 U.S.C. § 106(3).

408.    Stevo holds the exclusive right to publicly display the 5-17-2010 Garrett Report, pursuant to 17 U.S.C. § 106(5).

409.    SBR Marketing reproduced the 5-17-2010 Garrett Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

410.    SBR Marketing created an unauthorized derivative of the 5-17-2010 Garrett Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

411.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 Garrett Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

412.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 Garrett Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

413.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 Garrett Report.

414.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

415.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

416.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

417.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

418.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Garrett Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Garrett Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

419.   Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

420.   Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FIFTEENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 JORDAN REPORT (BY STEVO, AGAINST SBR)

421.   Stevo repeats and realleges all the allegations set forth above.

422.   Stevo's copyright in the 5-17-2010 Jordan Report is the subject of registration number TX0007371065, granted February 22, 2011, with the United States Copyright Office.

423.   Stevo holds the exclusive right to reproduce the 5-17-2010 Jordan Report, pursuant to 17 U.S.C. § 106(1).

424.   Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 Jordan Report, pursuant to 17 U.S.C. § 106(2).

425.   Stevo holds the exclusive right to distribute copies of the 5-17-2010 Jordan Report, pursuant to 17 U.S.C. § 106(3).

426.   Stevo holds the exclusive right to publicly display the 5-17-2010 Jordan Report, pursuant to 17 U.S.C. § 106(5).

427.   SBR Marketing reproduced the 5-17-2010 Jordan Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

428.   SBR Marketing created an unauthorized derivative of the 5-17-2010 Jordan Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

429.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 Jordan Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

430.     SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 Jordan Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

431.     SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 Jordan Report.

432.     SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

433.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

434.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

435.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

436.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Jordan Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Jordan Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

437.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

438.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## SIXTEENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010

## MANCINI REPORT (BY STEVO, AGAINST SBR)

439.    Stevo repeats and realleges all the allegations set forth above.

440.    Stevo's copyright in the 5-17-2010 Mancini Report is the subject of registration number TX0007371076, granted February 22, 2011, with the United States Copyright Office.

441.    Stevo holds the exclusive right to reproduce the 5-17-2010 Mancini Report, pursuant to 17 U.S.C. § 106(1).

442.    Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 Mancini Report, pursuant to 17 U.S.C. § 106(2).

443.    Stevo holds the exclusive right to distribute copies of the 5-17-2010 Mancini Report, pursuant to 17 U.S.C. § 106(3).

444.    Stevo holds the exclusive right to publicly display the 5-17-2010 Mancini Report, pursuant to 17 U.S.C. § 106(5).

445.    SBR Marketing reproduced the 5-17-2010 Mancini Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

446.    SBR Marketing created an unauthorized derivative of the 5-17-2010 Mancini Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

447.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 Mancini Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

448.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 Mancini Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

449.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 Mancini Report.

450.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

451.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

452.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

453.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

454.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Mancini Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Mancini Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

455.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

456.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## SEVENTEENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010

## MAXWELL REPORT (BY STEVO, AGAINST SBR)

457.    Stevo repeats and realleges all the allegations set forth above.

458.    Stevo's copyright in the 5-17-2010 Maxwell Report is the subject of registration number TX0007371066, granted February 22, 2011, with the United States Copyright Office.

459.    Stevo holds the exclusive right to reproduce the 5-17-2010 Maxwell Report, pursuant to 17 U.S.C. § 106(1).

460.    Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 Maxwell Report, pursuant to 17 U.S.C. § 106(2).

461. Stevo holds the exclusive right to distribute copies of the 5-17-2010 Maxwell Report, pursuant to 17 U.S.C. § 106(3).

462. Stevo holds the exclusive right to publicly display the 5-17-2010 Maxwell Report, pursuant to 17 U.S.C. § 106(5).

463. SBR Marketing reproduced the 5-17-2010 Maxwell Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

464. SBR Marketing created an unauthorized derivative of the 5-17-2010 Maxwell Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

465. SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 Maxwell Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

466. SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 Maxwell Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

467. SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 Maxwell Report.

468. SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

469. Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

470. SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

471. SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

472. Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Maxwell Report and other Handicapper

Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Maxwell Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

473.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

474.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## EIGHTEENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

475.     Stevo repeats and realleges all the allegations set forth above.

476.     Stevo's copyright in the 5-17-2010 Nover Report is the subject of registration number TX0007371062, granted February 22, 2011, with the United States Copyright Office.

477.     Stevo holds the exclusive right to reproduce the 5-17-2010 Nover Report, pursuant to 17 U.S.C. § 106(1).

478.     Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 Nover Report, pursuant to 17 U.S.C. § 106(2).

479.     Stevo holds the exclusive right to distribute copies of the 5-17-2010 Nover Report, pursuant to 17 U.S.C. § 106(3).

480.     Stevo holds the exclusive right to publicly display the 5-17-2010 Nover Report, pursuant to 17 U.S.C. § 106(5).

481.     SBR Marketing reproduced the 5-17-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

482.     SBR Marketing created an unauthorized derivative of the 5-17-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

483.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

484.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

485.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 Nover Report.

486.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

487.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

488.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

489.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

490.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

491.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

492.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## NINETEENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 O'BRIEN REPORT (BY STEVO, AGAINST SBR)

493.    Stevo repeats and realleges all the allegations set forth above.

494.     Stevo's copyright in the 5-17-2010 O'Brien Report is the subject of registration number TX0007371078, granted February 22, 2011, with the United States Copyright Office.

495.     Stevo holds the exclusive right to reproduce the 5-17-2010 O'Brien Report, pursuant to 17 U.S.C. § 106(1).

496.     Stevo holds the exclusive right to prepare derivative works based upon the 5-17-2010 O'Brien Report, pursuant to 17 U.S.C. § 106(2).

497.     Stevo holds the exclusive right to distribute copies of the 5-17-2010 O'Brien Report, pursuant to 17 U.S.C. § 106(3).

498.     Stevo holds the exclusive right to publicly display the 5-17-2010 O'Brien Report, pursuant to 17 U.S.C. § 106(5).

499.     SBR Marketing reproduced the 5-17-2010 O'Brien Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

500.     SBR Marketing created an unauthorized derivative of the 5-17-2010 O'Brien Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

501.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 5-17-2010 O'Brien Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

502.     SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 5-17-2010 O'Brien Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

503.     SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 5-17-2010 O'Brien Report.

504.     SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

505.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

506.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

507.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

508.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 O'Brien Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 O'Brien Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

509.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

510.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

**TWENTIETH CAUSE OF ACTION**

**DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—9-11-2010 CANNON REPORT (BY STEVO, AGAINST SBR)**

511.    Stevo repeats and realleges all the allegations set forth above.

512.    Stevo's copyright in the 9-11-2010 Cannon Report is the subject of registration number TX0007371061, granted February 22, 2011, with the United States Copyright Office.

513.    Stevo holds the exclusive right to reproduce the 9-11-2010 Cannon Report, pursuant to 17 U.S.C. § 106(1).

514.    Stevo holds the exclusive right to prepare derivative works based upon the 9-11-2010 Cannon Report, pursuant to 17 U.S.C. § 106(2).

515.    Stevo holds the exclusive right to distribute copies of the 9-11-2010 Cannon Report, pursuant to 17 U.S.C. § 106(3).

516.    Stevo holds the exclusive right to publicly display the 9-11-2010 Cannon Report, pursuant to 17 U.S.C. § 106(5).

517.   SBR Marketing reproduced the 9-11-2010 Cannon Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

518.   SBR Marketing created an unauthorized derivative of the 9-11-2010 Cannon Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

519.   SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 9-11-2010 Cannon Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

520.   SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 9-11-2010 Cannon Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

521.   SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 9-11-2010 Cannon Report.

522.   SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

523.   Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

524.   SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

525.   SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

526.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 9-11-2010 Cannon Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 9-11-2010 Cannon Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

527.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

528.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TWENTY-FIRST CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—9-11-2010 DAVIS REPORT (BY STEVO, AGAINST SBR)

529.     Stevo repeats and realleges all the allegations set forth above.

530.     Stevo's copyright in the 9-11-2010 Davis Report is the subject of registration number TX0007371059, granted February 22, 2011, with the United States Copyright Office..

531.     Stevo holds the exclusive right to reproduce the 9-11-2010 Davis Report, pursuant to 17 U.S.C. § 106(1).

532.     Stevo holds the exclusive right to prepare derivative works based upon the 9-11-2010 Davis Report, pursuant to 17 U.S.C. § 106(2).

533.     Stevo holds the exclusive right to distribute copies of the 9-11-2010 Davis Report, pursuant to 17 U.S.C. § 106(3).

534.     Stevo holds the exclusive right to publicly display the 9-11-2010 Davis Report, pursuant to 17 U.S.C. § 106(5).

535.     SBR Marketing reproduced the 9-11-2010 Davis Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

536.     SBR Marketing created an unauthorized derivative of the 9-11-2010 Davis Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

537.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 9-11-2010 Davis Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

538.     SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 9-11-2010 Davis Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

539.   SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 9-11-2010 Davis Report.

540.   SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

541.   Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

542.   SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

543.   SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

544.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 9-11-2010 Davis Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 9-11-2010 Davis Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

545.   Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

546.   Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TWENTY-SECOND CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—9-12-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

547.   Stevo repeats and realleges all the allegations set forth above.

548.   Stevo's copyright in the 9-12-2010 Nover Report is the subject of registration number TX0007371058, granted February 22, 2011, with the United States Copyright Office.

549.     Stevo holds the exclusive right to reproduce the 9-12-2010 Nover Report, pursuant to 17 U.S.C. § 106(1).

550.     Stevo holds the exclusive right to prepare derivative works based upon the 9-12-2010 Nover Report, pursuant to 17 U.S.C. § 106(2).

551.     Stevo holds the exclusive right to distribute copies of the 9-12-2010 Nover Report, pursuant to 17 U.S.C. § 106(3).

552.     Stevo holds the exclusive right to publicly display the 9-12-2010 Nover Report, pursuant to 17 U.S.C. § 106(5).

553.     SBR Marketing reproduced the 9-12-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

554.     SBR Marketing created an unauthorized derivative of the 9-12-2010 Nover Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

555.     SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 9-12-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

556.     SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 9-12-2010 Nover Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

557.     SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 9-12-2010 Nover Report.

558.     SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

559.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

560.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

561.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

562.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 9-12-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 9-12-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

563.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

564.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TWENTY-THIRD CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—10-2-2010 REDD REPORT (BY STEVO, AGAINST SBR)

565.    Stevo repeats and realleges all the allegations set forth above.

566.    Stevo's copyright in the 10-2-2010 Redd Report is the subject of registration number TX0007371072, granted February 22, 2011, with the United States Copyright Office.

567.    Stevo holds the exclusive right to reproduce the 10-2-2010 Redd Report, pursuant to 17 U.S.C. § 106(1).

568.    Stevo holds the exclusive right to prepare derivative works based upon the 10-2-2010 Redd Report, pursuant to 17 U.S.C. § 106(2).

569.    Stevo holds the exclusive right to distribute copies of the 10-2-2010 Redd Report, pursuant to 17 U.S.C. § 106(3).

570.    Stevo holds the exclusive right to publicly display the 10-2-2010 Redd Report, pursuant to 17 U.S.C. § 106(5).

571.    SBR Marketing reproduced the 10-2-2010 Redd Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

572.   SBR Marketing created an unauthorized derivative of the 10-2-2010 Redd Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

573.   SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 10-2-2010 Redd Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

574.   SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 10-2-2010 Redd Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

575.   SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 10-2-2010 Redd Report.

576.   SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

577.   Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

578.   SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

579.   SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

580.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 10-2-2010 Redd Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 10-2-2010 Redd Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

581.   Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

582.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### TWENTY-FOURTH CAUSE OF ACTION

### DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—10-9-2010 REDD REPORT (BY STEVO, AGAINST SBR)

583.    Stevo repeats and realleges all the allegations set forth above.

584.    Stevo's copyright in the 10-9-2010 Redd Report is the subject of registration number TX0007371073, granted February 22, 2011, with the United States Copyright Office.

585.    Stevo holds the exclusive right to reproduce the 10-9-2010 Redd Report, pursuant to 17 U.S.C. § 106(1).

586.    Stevo holds the exclusive right to prepare derivative works based upon the 10-9-2010 Redd Report, pursuant to 17 U.S.C. § 106(2).

587.    Stevo holds the exclusive right to distribute copies of the 10-9-2010 Redd Report, pursuant to 17 U.S.C. § 106(3).

588.    Stevo holds the exclusive right to publicly display the 10-9-2010 Redd Report, pursuant to 17 U.S.C. § 106(5).

589.    SBR Marketing reproduced the 10-9-2010 Redd Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

590.    SBR Marketing created an unauthorized derivative of the 10-9-2010 Redd Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

591.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 10-9-2010 Redd Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

592.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 10-9-2010 Redd Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

593.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 10-9-2010 Redd Report.

594.     SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

595.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

596.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

597.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

598.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 10-9-2010 Redd Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 10-9-2010 Redd Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

599.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

600.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TWENTY-FIFTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—10-27-2010 BENTON REPORT (BY STEVO, AGAINST SBR)

601.     Stevo repeats and realleges all the allegations set forth above.

602.     Stevo's copyright in the 10-27-2010 Benton Report is the subject of registration number TX0007371065, granted February 22, 2011, with the United States Copyright Office.

603.     Stevo holds the exclusive right to reproduce the 10-27-2010 Benton Report, pursuant to 17 U.S.C. § 106(1).

604.    Stevo holds the exclusive right to prepare derivative works based upon the 10-27-2010 Benton Report, pursuant to 17 U.S.C. § 106(2).

605.    Stevo holds the exclusive right to distribute copies of the 10-27-2010 Benton Report, pursuant to 17 U.S.C. § 106(3).

606.    Stevo holds the exclusive right to publicly display the 10-27-2010 Benton Report, pursuant to 17 U.S.C. § 106(5).

607.    SBR Marketing reproduced the 10-27-2010 Benton Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(1).

608.    SBR Marketing created an unauthorized derivative of the 10-27-2010 Benton Report in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(2).

609.    SBR Marketing distributed, and continues to distribute, an unauthorized reproduction of the 10-27-2010 Benton Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(3).

610.    SBR Marketing publicly displayed, and continues to publicly display, an unauthorized reproduction of the 10-27-2010 Benton Report, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106(5).

611.    SBR Marketing has willfully engaged in infringement of Stevo's copyrights in the 10-27-2010 Benton Report.

612.    SBR Marketing has not designated with the United States Copyright Office an agent to receive notifications of claimed infringement pursuant to 17 U.S.C. § 512(c)(2).

613.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

614.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

615.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

616.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 10-27-2010 Benton Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 10-27-2010 Benton Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

617.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

618.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## TWENTY-SIXTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—MANCINI BIOGRAPHY (BY STEVO, AGAINST ALL DEFENDANTS)

619.    Stevo repeats and realleges all the allegations set forth above.

620.    Stevo's copyright in the Mancini Biography is the subject of registration number TX0007384409, granted March 31, 2011, with the United States Copyright Office.

621.    Stevo holds the exclusive right to reproduce the Mancini Biography, pursuant to 17 U.S.C. §106(1).

622.    Stevo holds the exclusive right to prepare derivative works based upon the Mancini Biography, pursuant to 17 U.S.C. §106(2).

623.    Stevo holds the exclusive right to distribute copies of the Mancini Biography, pursuant to 17 U.S.C. §106(3).

624.    Stevo holds the exclusive right to publicly display the Mancini Biography, pursuant to 17 U.S.C. §106(5).

625.    SBR reproduced the Mancini Biography in derogation of Stevo's exclusive rights under 17 U.S.C. §106(1).

626.    Mr. Daniele reproduced the Mancini Biography in derogation of Stevo's exclusive rights under 17 U.S.C. §106(1).

627. SBR created unauthorized derivatives of the Mancini Biography in derogation of Stevo's exclusive rights under 17 U.S.C. §106(2).

628. Mr. Daniele created unauthorized derivatives of the Mancini Biography in derogation of Stevo's exclusive rights under 17 U.S.C. §106(2).

629. SBR distributed, and continues to distribute, unauthorized reproductions of the Mancini Biography on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(3).

630. Mr. Daniele distributed, and continues to distribute, unauthorized reproductions of the Mancini Biography on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(3).

631. SBR publicly displayed, and continues to publicly display, unauthorized reproductions of the Mancini Biography on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(5).

632. Mr. Daniele publicly displayed, and continues to publicly display, unauthorized reproductions of the Mancini Biography on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(5).

633. SBR has willfully engaged in infringement of Stevo's copyrights in the Mancini Biography.

634. Mr. Daniele has willfully engaged in infringement of Stevo's copyrights in the Mancini Biography.

635. Stevo has sustained actual damages as a result of Defendants' acts as alleged herein, and Defendants are liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

636. Defendants have profited as a result of Mr. Daniele's acts as alleged herein, and Defendants are liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

637. Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

638.    Unless Defendants are preliminarily and permanently enjoined from further infringement of the Mancini Biography, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Mancini Biography, pursuant to 17 U.S.C. §502.

639.    Stevo has been required to retain an attorney to prosecute this action, and Defendants are liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to 17 U.S.C. §505.

640.    Stevo has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stevo for those costs of suit pursuant to 17 U.S.C. §505.

## TWENTY-SEVENTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—MANCINI HEADER (BY STEVO, AGAINST ALL DEFENDANTS)

641.    Stevo repeats and realleges all the allegations set forth above.

642.    Stevo's copyright in the Mancini Header is the subject of registration number VA0001768087, granted March 29, 2011, with the United States Copyright Office..

643.    Stevo holds the exclusive right to reproduce the Mancini Header, pursuant to 17 U.S.C. §106(1).

644.    Stevo holds the exclusive right to prepare derivative works based upon the Mancini Header, pursuant to 17 U.S.C. §106(2).

645.    Stevo holds the exclusive right to distribute copies of the Mancini Header, pursuant to 17 U.S.C. §106(3).

646.    Stevo holds the exclusive right to publicly display the Mancini Header, pursuant to 17 U.S.C. §106(5).

647.    SBR reproduced the Mancini Header in derogation of Stevo's exclusive rights under 17 U.S.C. §106(1).

648.    Mr. Daniele reproduced the Mancini Header in derogation of Stevo's exclusive rights under 17 U.S.C. §106(1).

649.    SBR created unauthorized derivatives of the Mancini Header in derogation of Stevo's exclusive rights under 17 U.S.C. §106(2).

650.    Mr. Daniele created unauthorized derivatives of the Mancini Header in derogation of Stevo's exclusive rights under 17 U.S.C. §106(2).

651.    SBR distributed, and continues to distribute, unauthorized reproductions of the Mancini Header on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(3).

652.    Mr. Daniele distributed, and continues to distribute, unauthorized reproductions of the Mancini Header on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(3).

653.    SBR publicly displayed, and continues to publicly display, unauthorized reproductions of the Mancini Header on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(5).

654.    Mr. Daniele publicly displayed, and continues to publicly display, unauthorized reproductions of the Mancini Header on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(5).

655.    SBR has willfully engaged in infringement of Stevo's copyrights in the Mancini Header.

656.    Mr. Daniele has willfully engaged in infringement of Stevo's copyrights in the Mancini Header.

657.    Stevo has sustained actual damages as a result of Defendants' acts as alleged herein, and Defendants are liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

658.    Defendants have profited as a result of Mr. Daniele's acts as alleged herein, and Defendants are liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

659.    Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

660.     Unless Defendants are preliminarily and permanently enjoined from further infringement of the Mancini Header, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the Mancini Header, pursuant to 17 U.S.C. §502.

661.     Stevo has been required to retain an attorney to prosecute this action, and Defendants are liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to 17 U.S.C. §505.

662.     Stevo has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stevo for those costs of suit pursuant to 17 U.S.C. §505.

## TWENTY-EIGHTH CAUSE OF ACTION

## DIRECT COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—2-10-2011 LANG VIDEO (BY STEVO, AGAINST ALL DEFENDANTS)

663.     Stevo repeats and realleges all the allegations set forth above.

664.     Stevo's copyright in the 2-10-2011 Lang Video is the subject of registration number PA0001727249, granted March 24, 2011, with the United States Copyright Office..

665.     Stevo holds the exclusive right to reproduce the 2-10-2011 Lang Video, pursuant to 17 U.S.C. §106(1).

666.     Stevo holds the exclusive right to prepare derivative works based upon the 2-10-2011 Lang Video, pursuant to 17 U.S.C. §106(2).

667.     Stevo holds the exclusive right to distribute copies of the 2-10-2011 Lang Video, pursuant to 17 U.S.C. §106(3).

668.     Stevo holds the exclusive right to publicly display the 2-10-2011 Lang Video, pursuant to 17 U.S.C. §106(5).

669.     SBR reproduced the 2-10-2011 Lang Video in derogation of Stevo's exclusive rights under 17 U.S.C. §106(1).

670.     Mr. Daniele reproduced the 2-10-2011 Lang Video in derogation of Stevo's exclusive rights under 17 U.S.C. §106(1).

671.    SBR created unauthorized derivatives of the 2-10-2011 Lang Video in derogation of Stevo's exclusive rights under 17 U.S.C. §106(2).

672.    Mr. Daniele created unauthorized derivatives of the 2-10-2011 Lang Video in derogation of Stevo's exclusive rights under 17 U.S.C. §106(2).

673.    SBR distributed, and continues to distribute, unauthorized reproductions of the 2-10-2011 Lang Video on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(3).

674.    Mr. Daniele distributed, and continues to distribute, unauthorized reproductions of the 2-10-2011 Lang Video on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(3).

675.    SBR publicly displayed, and continues to publicly display, unauthorized reproductions of the 2-10-2011 Lang Video on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(5).

676.    Mr. Daniele publicly displayed, and continues to publicly display, unauthorized reproductions of the 2-10-2011 Lang Video on the SBR Website, in derogation of Stevo's exclusive rights under 17 U.S.C. §106(5).

677.    SBR has willfully engaged in infringement of Stevo's copyrights in the 2-10-2011 Lang Video.

678.    Mr. Daniele has willfully engaged in infringement of Stevo's copyrights in the 2-10-2011 Lang Video.

679.    Stevo has sustained actual damages as a result of Defendants' acts as alleged herein, and Defendants are liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

680.    Defendants have profited as a result of Defendants' acts as alleged herein, and Defendants are liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

681.    Defendants' acts of willful infringement entitle Stevo to statutory damages of up to $150,000 pursuant to 17 U.S.C. § 504(c).

682.    Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

683.    Unless Defendants are preliminarily and permanently enjoined from further infringement of the 2-10-2011 Lang Video, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by Defendants of the 2-10-2011 Lang Video, pursuant to 17 U.S.C. §502.

684.    Stevo has been required to retain an attorney to prosecute this action, and Defendants are liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action, pursuant to 17 U.S.C. §505.

685.    Stevo has incurred costs of suit in connection with bringing this action, and Defendants are liable to Stevo for those costs of suit pursuant to 17 U.S.C. §505.

## TWENTY-NINTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—3-29-2010 DAVIS REPORT (BY STEVO, AGAINST SBR)

686.    Stevo repeats and realleges all the allegations set forth above.

687.    SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 3-29-2010 Davis Report.

688.    SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

689.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

690.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

691.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

692.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 3-29-2010 Davis Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 3-29-2010 Davis Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

693.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

694.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTIETH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-2-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

695.     Stevo repeats and realleges all the allegations set forth above.

696.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-2-2010 Nover Report.

697.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

698.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

699.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

700.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

701.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-2-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-2-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

702.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

703.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-FIRST CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-3-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

704.     Stevo repeats and realleges all the allegations set forth above.

705.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-3-2010 Nover Report.

706.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

707.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

708.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

709.   SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

710.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-3-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-3-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

711.   Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

712.   Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-SECOND CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 CANNON REPORT (BY STEVO, AGAINST SBR)

713.   Stevo repeats and realleges all the allegations set forth above.

714.   SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 Cannon Report.

715.   SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

716.   Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

717.   SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

718.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

719.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Cannon Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Cannon Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

720.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

721.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### THIRTY-THIRD CAUSE OF ACTION

### VICARIOUS COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501—5-17-2010 DEMARCO REPORT (BY STEVO, AGAINST SBR)

722.     Stevo repeats and realleges all the allegations set forth above.

723.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 DeMarco Report.

724.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

725.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

726.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

727.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

728.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 DeMarco Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 DeMarco Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

729.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

730.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-FOURTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 5-17-2010 GARRETT REPORT (BY STEVO, AGAINST SBR)

731.     Stevo repeats and realleges all the allegations set forth above.

732.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 Garrett Report.

733.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

734.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

735.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

736.   SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

737.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Garrett Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Garrett Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

738.   Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

739.   Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-FIFTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 5-17-2010 JORDAN REPORT (BY STEVO, AGAINST SBR)

740.   Stevo repeats and realleges all the allegations set forth above.

741.   SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 Jordan Report.

742.   SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

743.   Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

744.   SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

745.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

746.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Jordan Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Jordan Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

747.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

748.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-SIXTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 5-17-2010 MANCINI REPORT (BY STEVO, AGAINST SBR)

749.     Stevo repeats and realleges all the allegations set forth above.

750.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 Mancini Report.

751.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

752.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

753.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

754.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

755.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Mancini Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Mancini Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

756.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

757.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-SEVENTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 5-17-2010 MAXWELL REPORT (BY STEVO, AGAINST SBR)

758.     Stevo repeats and realleges all the allegations set forth above.

759.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 Maxwell Report.

760.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

761.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

762.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

763.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

764.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Maxwell Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Maxwell Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

765.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

766.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## THIRTY-EIGHTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 5-17-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

767.     Stevo repeats and realleges all the allegations set forth above.

768.     Stevo's copyright in the 5-17-2010 Nover Report is the subject of registration number TX0007371062, granted February 22, 2011, with the United States Copyright Office.

769.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

770.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

771.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

772.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

773.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

774.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

775.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### THIRTY-NINTH CAUSE OF ACTION

### VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW—5-17-2010 O'BRIEN REPORT (BY STEVO, AGAINST SBR)

776.     Stevo repeats and realleges all the allegations set forth above.

777.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 5-17-2010 O'Brien Report.

778.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

779.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

780.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

781.   SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

782.   Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 5-17-2010 O'Brien Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 5-17-2010 O'Brien Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

783.   Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

784.   Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTIETH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 9-11-2010 CANNON REPORT (BY STEVO, AGAINST SBR)

785.   Stevo repeats and realleges all the allegations set forth above.

786.   SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 9-11-2010 Cannon Report.

787.   SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

788.   Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

789.   SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

790.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

791.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 9-11-2010 Cannon Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 9-11-2010 Cannon Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

792.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

793.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTY-FIRST CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 9-11-2010 DAVIS REPORT (BY STEVO, AGAINST SBR)

794.    Stevo repeats and realleges all the allegations set forth above.

795.    SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 9-11-2010 Davis Report.

796.    SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

797.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

798.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

799.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

800.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 9-11-2010 Davis Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 9-11-2010 Davis Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

801.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

802.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTY-SECOND CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 9-12-2010 NOVER REPORT (BY STEVO, AGAINST SBR)

803.    Stevo repeats and realleges all the allegations set forth above.

804.    SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 9-12-2010 Nover Report.

805.    SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

806.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

807.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

808.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

809.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 9-12-2010 Nover Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 9-12-2010 Nover Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

810.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

811.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTY-THIRD CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 10-2-2010 REDD REPORT (BY STEVO, AGAINST SBR)

812.     Stevo repeats and realleges all the allegations set forth above.

813.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 10-2-2010 Redd Report.

814.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

815.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

816.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

817.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

818.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 10-2-2010 Redd Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 10-2-2010 Redd Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

819.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

820.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### FORTY-FOURTH CAUSE OF ACTION

### VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 10-9-2010 REDD REPORT (BY STEVO, AGAINST SBR)

821.    Stevo repeats and realleges all the allegations set forth above.

822.    SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 10-9-2010 Redd Report.

823.    SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

824.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

825.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

826.     SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

827.     Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 10-9-2010 Redd Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 10-9-2010 Redd Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

828.     Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

829.     Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTY-FIFTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— 10-27-2010 BENTON REPORT (BY STEVO, AGAINST SBR)

830.     Stevo repeats and realleges all the allegations set forth above.

831.     SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 10-27-2010 Benton Report.

832.     SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

833.     Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

834.     SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

835. SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

836. Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 10-27-2010 Benton Report and other Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 10-27-2010 Benton Report and other Handicapper Reports, pursuant to 17 U.S.C. § 502.

837. Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

838. Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTY-SIXTH CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW— MANCINI BIOGRAPHY (BY STEVO, AGAINST SBR)

839. Stevo repeats and realleges all the allegations set forth above.

840. SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the Mancini Biography.

841. SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

842. Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

843. SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

844.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

845.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the Mancini Biography, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the Mancini Biography, pursuant to 17 U.S.C. § 502.

846.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

847.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

**FORTY-SEVENTH CAUSE OF ACTION**

**VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW—**

**MANCINI HEADER (BY STEVO, AGAINST SBR)**

848.    Stevo repeats and realleges all the allegations set forth above.

849.    SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the Mancini Header.

850.    SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

851.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

852.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

853.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

854.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the Mancini Header, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the Mancini Header, pursuant to 17 U.S.C. § 502.

855.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

856.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

**FORTY-EIGHTH CAUSE OF ACTION**

**VICARIOUS COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW—**

**2-10-2011 LANG VIDEO (BY STEVO, AGAINST SBR)**

857.    Stevo repeats and realleges all the allegations set forth above.

858.    SBR Marketing profited and continues to profit from infringement of works with respect to which Stevo owns copyrights, including, without limitation, the 2-10-2011 Lang Video.

859.    SBR Marketing has the right to stop or limit infringement by SBR Marketing Contributor-Agents of works with respect to which Stevo owns copyrights, but has declined to meaningfully exercise that right.

860.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

861.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

862.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

863.    Unless SBR Marketing is preliminarily and permanently enjoined from further infringement of Stevo's copyrights in the 2-10-2011 Lang Video, Stevo will be irreparably

harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of the 2-10-2011 Lang Video, pursuant to 17 U.S.C. § 502.

864.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

865.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

## FORTY-NINTH CAUSE OF ACTION

## CONTRIBUTORY COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW (BY STEVO, AGAINST SBR)

866.    Stevo repeats and realleges all the allegations set forth above.

867.    SBR Marketing intentionally induced and encouraged SBR Marketing Contributor-Agents, including, without limitation, Messrs. Daniele, Fraelich, Ganes, Hernandez, Miller, Ruffino, Sher, and Smith, to engage in infringement of Stevo's copyrights, by paying SBR Marketing Contributor-Agents to reproduce, display, distribute copies of, and prepare derivative works based on Handicapper Reports, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106.

868.    Stevo has sustained actual damages as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

869.    SBR Marketing has profited as a result of SBR Marketing's acts as alleged herein, and SBR Marketing is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

870.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

871.    Unless SBR Marketing is preliminarily and permanently enjoined from further contributory infringement of Stevo's copyrights in Handicapper Reports, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief

against further infringement by SBR Marketing of Handicapper Reports, pursuant to 17 U.S.C. § 502.

872.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

873.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### FIFTIETH CAUSE OF ACTION

### CONTRIBUTORY COPYRIGHT INFRINGEMENT UNDER FEDERAL COMMON LAW (BY STEVO, AGAINST MR. DANIELE)

874.    Stevo repeats and realleges all the allegations set forth above.

875.    Mr. Daniele  intentionally induced and encouraged SBR to engage in infringement of Stevo's copyrights, by causing SBR to reproduce, display, distribute copies of, and prepare derivative works based on Handicapper Reports, in derogation of Stevo's exclusive rights under 17 U.S.C. § 106.

876.    Stevo has sustained actual damages as a result of Mr. Daniele's acts as alleged herein, and Mr. Daniele is liable to Stevo for such damages pursuant to 17 U.S.C. § 504(a)(1).

877.    Mr. Daniele  has profited as a result of Mr. Daniele's acts as alleged herein, and Mr. Daniele is liable to Stevo for such profits pursuant to 17 U.S.C. § 504(a)(1).

878.    Mr. Daniele's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

879.    Unless Mr. Daniele is preliminarily and permanently enjoined from further contributory infringement of Stevo's copyrights, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by Mr. Daniele of Stevo's copyrights, pursuant to 17 U.S.C. § 502.

880.    Stevo has been required to retain an attorney to prosecute this action, and Mr. Daniele is liable to Stevo for Stevo's attorney fees pursuant to 17 U.S.C. § 505.

881.    Stevo has incurred costs of suit in connection with bringing this action, and Mr. Daniele is liable to Stevo for those costs of suit pursuant to 17 U.S.C. § 505.

### FIFTY-FIRST CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS UNDER FLA. STAT. 688.001 *ET SEQ.* (2010) (BY STEVO, AGAINST SBR MARKETING)

882.    Stevo repeats and realleges all the allegations set forth above.

883.    Each Handicapper Report contains information that derives independent, actual or potential, economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from that information's disclosure or use, including, without limitation, recommendations by Stevo's sports handicappers of wagers on sporting events and analysis underlying those recommendations (the "Stevo Trade Secrets").

884.    Stevo makes efforts that are reasonable under the circumstances to maintain the secrecy of the Handicapper Reports, including, without limitation, limiting access to the Handicapper Reports to individuals who have paid for limited, non-exclusive licenses to view the Handicapper Reports and who have entered into User Contracts enjoining those individuals from republishing in any manner any information set forth in the Handicapper Reports.

885.    SBR Marketing knew or had reason to know that purchasers of licenses to view Handicapper Reports were contractually obligated to maintain secrecy of the Stevo Trade Secrets reposed in those Handicapper Reports.

886.    SBR Marketing acquired Stevo Trade Secrets by bribing purchasers of licenses to view Handicapper Reports to republish Stevo Trade Secrets reposed in those Handicapper Reports.

887.    SBR Marketing acquired Stevo Trade Secrets by inducing purchasers of licenses to view Handicapper Reports to breach those license purchasers' contractual duty to maintain secrecy of the Stevo Trade Secrets reposed in those Handicapper Reports.

888.    SBR Marketing knew or had reason to know that purchasers of licenses to view Handicapper Reports were contractually obligated to maintain secrecy of the Stevo Trade Secrets reposed in those Handicapper Reports.

889.    SBR Marketing used and disclosed Stevo Trade Secrets without the consent of Stevo by utilizing bribery and inducement of breaches of license purchasers' duties to maintain secrecy of Stevo Trade Secrets.

890.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

891.    Unless SBR Marketing is preliminarily and permanently enjoined from further misappropriation of Stevo Trade Secrets, Stevo will be irreparably harmed, and Stevo is thus entitled to preliminary and permanent injunctive relief against further infringement by SBR Marketing of Stevo Trade Secrets, pursuant to Fla. Stat. 688.003 (2010).

892.    Stevo has suffered actual economic loss as a result of SBR Marketing's misappropriation of Stevo Trade Secrets, and Stevo is thus entitled to recover damages for SBR Marketing's misappropriation of Stevo Trade Secrets in an amount including both Stevo's actual economic loss and SBR Marketing's unjust enrichment caused by SBR Marketing's misappropriation of Stevo Trade Secrets, or by imposition of liability for a reasonable royalty for SBR Marketing's misappropriation of Stevo Trade Secrets, pursuant to Fla. Stat. 688.004(1) (2010).

893.    SBR Marketing willfully and maliciously misappropriated Stevo Trade Secrets, and Stevo is thus entitled to exemplary damages, pursuant to Fla. Stat. 688.004(2) (2010).

894.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing's willful and malicious misappropriation of Stevo Trade Secrets entitles Stevo to an award of Stevo's attorney fees incurred herein, pursuant to Fla. Stat. 688.005 (2010).

895.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit.

## FIFTY-SECOND CAUSE OF ACTION

## MISAPPROPRIATION OF LICENSABLE COMMERCIAL PROPERTY UNDER

## FLORIDA COMMON LAW (BY STEVO, AGAINST SBR MARKETING)

896.    Stevo repeats and realleges all the allegations set forth above.

897.    Stevo has invested significant time, effort, and money in creating, publicizing, and protecting the Marks and developing the valuable goodwill arising from and associated with the Marks, as well as in creating, publicizing, publishing, and protecting the Handicapper Reports (collectively the "SBR Misappropriated Commercial Property").

898.    Stevo has licensed and continues to license the SBR Misappropriated Commercial Property in return for value.

899.    The Infringing Marks are commercial properties that may be licensed for value.

900.    The 5-17-2010 Sher Infringements, 9-4-2010 Redd Infringement, 9-11-2010 Cannon Infringement, 9-11-2010 Davis Infringement, 9-12-2010 Nover Infringement, 10-18-2010 Budin Infringement, the 10-27-2010 Benton Infringement, the 10-1-2010 Redd Infringement, the 10-2-2010 Redd Infringement, the 10-3-2010 Redd Infringement, the 10-9-2010 Redd Infringement, and the 10-16-2010 Redd Infringement (collectively, the "SBR Infringing Works") are commercial properties that may be licensed for value.

901.    SBR Marketing's wrongful use of the Infringing Marks, undertaken without authority from Stevo, deprived Stevo of the commercial value of the Infringing Marks.

902.    SBR Marketing's wrongful use of the SBR Infringing Works, undertaken without authority from Stevo, deprived Stevo of the commercial value of the SBR Infringing Works.

903.    Stevo has sustained and will continue to sustain damages as a direct and proximate result of SBR Marketing's misappropriation of Stevo's licensable SBR Misappropriated Commercial Property, and SBR Marketing is liable to Stevo for the amount of those present and future damages.

904.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

905.    Stevo is entitled to preliminary and permanent injunctive relief against further misappropriation by SBR Marketing of Stevo's licensable SBR Misappropriated Commercial Property.

906.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action.

907.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit.

## FIFTY-THIRD CAUSE OF ACTION

## CONTRIBUTORY MISAPPROPRIATION OF LICENSABLE COMMERCIAL PROPERTY UNDER FLORIDA COMMON LAW (BY STEVO, AGAINST SBR MARKETING)

908.    Stevo repeats and realleges all the allegations set forth above.

909.    SBR Marketing has intentionally induced others, specifically, SBR Marketing Contributor-Agents, to wrongfully use the Infringing Marks, without authority from Stevo, to deprive Stevo of the commercial value of the Infringing Marks for SBR Marketing's benefit.

910.    SBR Marketing has intentionally induced others, specifically, SBR Marketing Contributor-Agents, to wrongfully use the Infringing Works, without authority from Stevo, to deprive Stevo of the commercial value of the Infringing Works for SBR Marketing's benefit.

911.    SBR Marketing has continued to supply SBR Marketing's services, specifically, use of the SBR Website and payment for contribution of content to the SBR Website, to SBR Marketing Contributor-Agents whom SBR Marketing knows or has reason to know are engaging in wrongful use of the Infringing Marks, without authority from Stevo, to deprive Stevo of the commercial value of the Infringing Marks.

912.    SBR Marketing has continued to supply SBR Marketing's services, specifically, use of the SBR Website and payment for contribution of content to the SBR Website, to SBR Marketing Contributor-Agents whom SBR Marketing knows or has reason to know are engaging

in wrongful use of the Infringing Works, without authority from Stevo, to deprive Stevo of the commercial value of the Infringing Works.

913.    No SBR Marketing Contributor-Agent has or has ever had the legal right, authority, or license to use any of the Infringing Marks.

914.    No SBR Marketing Contributor-Agent has or has ever had the legal right, authority, or license to use any of the Infringing Works.

915.    SBR Marketing's wrongful inducement of SBR Marketing Contributor-Agents to make use of the Infringing Marks, without authority from Stevo, deprived Stevo of the commercial value of the Infringing Marks.

916.    SBR Marketing's wrongful inducement of SBR Marketing Contributor-Agents to make use of the Infringing Works, without authority from Stevo, deprived Stevo of the commercial value of the Infringing Works.

917.    Stevo has sustained and will continue to sustain damages as a direct and proximate result of SBR Marketing's contributory misappropriation of Stevo's licensable Commercial Property, and SBR Marketing is liable to Stevo for the amount of those present and future damages.

918.    SBR Marketing's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

919.    Stevo is entitled to preliminary and permanent injunctive relief against further contributory misappropriation by SBR Marketing of Stevo's licensable Commercial Property.

920.    Stevo has been required to retain an attorney to prosecute this action, and SBR Marketing is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action.

921.    Stevo has incurred costs of suit in connection with bringing this action, and SBR Marketing is liable to Stevo for those costs of suit.

**FIFTY-FOURTH CAUSE OF ACTION**

**DEFAMATION UNDER NEVADA COMMON LAW (BY PLAINTIFFS MR. BUDIN AND MR. ROLLI, AGAINST MR. DANIELE)**

922.     Stevo repeats and realleges all the allegations set forth above.

923.     Mr. Daniele repeatedly published false statements about Messrs. Budin and Rolli, respectively and collectively, including, without limitation, the Fake Game Misrepresentation and the Message Board Misrepresentation (collectively, the "Defamatory Statements") that harmed the reputation of Messrs. Budin and Rolli as to lower Messrs. Budin and Rolli in the estimation of the community, excite derogatory opinions about Messrs. Budin and Rolli, and hold Messrs. Budin and Rolli up to contempt.

924.     The Defamatory Statements constitute assertions of fact, or, at a minimum, expressions of opinion that suggest that the Defamatory Statements' speaker knew certain facts to be true or implied that certain facts exist when, in fact, such facts were either not in existence or not true.

925.     The Defamatory Statements impute to Messrs. Budin and Rolli a lack of fitness for Messrs. Budin and Rolli's trade, business, or profession.

926.     Mr. Daniele's defamation of Messrs. Budin and Rolli has caused and will continue to cause damage to Mr. Daniele in an amount to be proven at trial.

927.     Mr. Daniele acted fraudulently, maliciously, and oppressively in defaming Messrs. Budin and Rolli, and Messrs. Budin and Rolli are accordingly entitled to punitive and exemplary damages from Mr. Daniele.

928.     Messrs. Budin and Rolli's business interests have been irreparably damaged and will continue to be irreparably damaged by Mr. Daniele's defamation of Messrs. Budin and Rolli, and Messrs. Budin and Rolli are accordingly entitled to preliminary and permanent injunctive relief against further such defamation.

929.     Messrs. Budin and Rolli have been required to retain an attorney to prosecute this action, and Mr. Daniele is liable to Messrs. Budin and Rolli for their attorney fees incurred in connection with the prosecution of this action.

930.    Messrs. Budin and Rolli have incurred costs of suit in connection with bringing this action, and Mr. Daniele is liable to Messrs. Budin and Rolli for those costs of suit.

**FIFTY-FIFTH CAUSE OF ACTION**

**BUSINESS DISPARAGEMENT UNDER NEVADA COMMON LAW (BY STEVO, AGAINST MR. DANIELE)**

931.    Stevo repeats and realleges all the allegations set forth above.

932.    Mr. Daniele made and published false statements disparaging the quality of Stevo's services by, at a minimum, publishing the Fake Game Misrepresentation, the Message Board Misrepresentation, and the Hype Misrepresentation (collectively, the "Stevo Disparaging Statements")

933.    Mr. Daniele characterized the Stevo Disparaging Statements as fact, not opinion, by claiming first-hand knowledge of the putative "facts" Mr. Daniele alleged in the Stevo Disparaging Statements.

934.    The Stevo Disparaging Statements were in fact false.

935.    Mr. Daniele's making and publication of the Stevo Disparaging Statements was not privileged.

936.    Mr. Daniele made and published the Stevo Disparaging Statements with malice and intent to harm Stevo's pecuniary interests.

937.    Mr. Daniele made and published the Stevo Disparaging Statements with, at a minimum, reckless disregard for the truth or falsity of the Stevo Disparaging Statements.

938.    Mr. Daniele's publication of the Stevo Disparaging Statements has resulted in special damages to Stevo, in the form of, without limitation, lost sales and a decline in business, in an amount to be proven at trial.

939.    Mr. Daniele acted fraudulently, maliciously, and oppressively in disparaging Stevo, and Stevo is accordingly entitled to punitive and exemplary damages from Mr. Daniele.

940.    Mr. Daniele's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Stevo in an amount Stevo cannot ascertain, leaving Stevo with no adequate remedy at law.

941.    Stevo is entitled to preliminary and permanent injunctive relief against further publication of the Stevo Disparaging Statements by Mr. Daniele.

942.    Stevo has been required to retain an attorney to prosecute this action, and Mr. Daniele is liable to Stevo for Stevo's attorney fees incurred in connection with the prosecution of this action.

943.    Stevo has incurred costs of suit in connection with bringing this action, and Mr. Daniele is liable to Stevo for those costs of suit.

## PRAYER FOR RELIEF

Stevo prays for judgment against Defendants as follows:

a.      For compensatory damages as alleged herein;

b.      For statutory damages arising from SBR Marketing's registered mark infringement and contributory registered mark infringement;

c.      For punitive and exemplary damages as alleged herein;

d.      For injunctive relief as alleged herein;

e.      For attorneys' fees and costs of suit incurred herein; and

f.      For any other relief this Court may deem proper.

## DEMAND FOR JURY TRIAL

Stevo hereby requests trial by jury on all causes of action set forth in this Second Amended Complaint.

Respectfully submitted this 14th day of February, 2013.

DICKINSON WRIGHT PLLC

By     /s/ J.D. Lowry

STEVEN A. GIBSON
Nevada Bar No. 6656
JODI DONETTA LOWRY
Nevada Bar No. 7798
City Center West
7201 West Lake Mead Boulevard, Suite 503
Las Vegas, Nevada 89128