1   Gary Jay Kaufman, Esq. (*Pro Hac Vice*)
    gary@kaufmanlawgroupla.com
2   Colin Hardacre, Esq.        (*Pro Hac Vice*)
    colin@kaufmanlawgroupla.com
3   THE KAUFMAN LAW GROUP
4   1901 Avenue of the Stars, Suite 1010
    Los Angeles, California 90067
5   Telephone:  (310) 286-2202
    Facsimile:   (310) 712-0023
6
7   Chad Bowers (NV State Bar No. 7283)
    bowers@lawyer.com
8   CHAD A. BOWERS, LTD
    3202 West Charleston Boulevard
9   Las Vegas, Nevada 89102
    Telephone: (702) 457-1001
10
11  Attorneys for Defendant,
    SBR Marketing, Ltd.
12

13              UNITED STATES DISTRICT COURT

14                   DISTRICT OF NEVADA

15

16  STEVO DESIGN, INC., a Florida corporation;    Case No. 2:11-cv-00304
    STEVEN BUDIN, an individual; and ALAN
17  ROLLI, an individual,

18              Plaintiffs,                        **SBR MARKETING, LTD.'S MOTION TO
                                                   DISMISS PLAINTIFFS' SECOND
19      v.                                         AMENDED COMPLAINT PURSUANT TO
                                                   FED. R. CIV. P. 12(B)(6); MEMORANDUM
20  SBR MARKETING LTD., a foreign corporation;     OF POINTS AND AUTHORITIES AND
    and BRIAN DANIELE, an individual,              REQUEST FOR JUDICIAL NOTICE IN
21                                                 SUPPORT THEREOF**

22              Defendants.

23

24

25

26

27

28

<u>SBR  MARKETING, LTD.'S MOTION TO DISMISS</u>

Defendant, SBR Marketing, Ltd., by and through its counsel, hereby moves to dismiss plaintiffs' Second Amended Complaint ("SAC"), pursuant to Rule 12(b)(6)[1] of the Federal Rules of Civil Procedure[2] for the reasons set forth below.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION

In its Order Granting in part and Denying in Part Motion to Alter/Amend Judgment and Dismissing without prejudice Amended Complaint (Docket #52) (the "Order"), this Court provided plaintiff Stevo Design, Inc. ("Stevo") with a roadmap for pleading a plausible claim for relief in its Second Amended Complaint ("SAC").[3]   Stevo has utterly failed to follow that roadmap and the SAC should meet the same fate as the First Amended Complaint ("FAC").

The SAC fails for several reasons.  First, Stevo failed to file the SAC in a timely fashion.  This Court granted Stevo twenty (20) days from the date of the Order within which to file an amended complaint.  This Court signed the Order on January 24, 2013.  Therefore, Stevo's amended pleading was due February 13, 2013.  Stevo filed the SAC on February 14, 2013, twenty-one (21) days after this Court signed the Order.  Therefore, this Court should consider the SAC untimely and enter judgment in favor of SBR and against Stevo.

Second, Stevo has still failed to plausibly allege that it owns the copyrights at issue.  The User Agreement attached to the FAC as Exhibit #1, which trumps the SAC's allegations, still states that

---

[1] This Court granted SBR's motion to dismiss Stevo's First Amended Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), holding that neither the Copyright Act nor the Lanham Act cover infringement of copyrights or service marks that occurred entirely outside the United States. SBR has reviewed this Court's Order Denying in Part and Granting in Part Stevo's Motion for Reconsideration pursuant to Rule 59(e) and respects this Court's holding that extraterritoriality is an element of Stevo's copyright infringement claims, rather than an issue of subject matter jurisdiction. While SBR is not moving to dismiss pursuant to Rule 12(b)(1) in the instant motion, pursuant to Rule 12(h) SBR is not waiving any right to challenge subject matter jurisdiction in the future based upon the same arguments advanced in its original motion to dismiss.

[2] All further references are to the Federal Rules of Civil Procedure unless otherwise indicated.

[3] While this is Stevo's third attempt to plead a plausible claim in this Court, it is Stevo's fourth attempt overall.  Stevo originally filed this case in Florida state court, before voluntarily dismissing that action on the eve of the hearing on SBR's dispositive motion.

1   Stevo's websites own the copyrights, not Stevo itself.  Stevo's vain attempts to cure this fatal defect

2   fall short as they fail to address the key issue of copyright ownership at the time of the alleged

3   infringement.  Therefore, all of Stevo's copyright claims against SBR fail.

4          Third, Stevo's trademark claims still fail because each alleged use by SBR of Stevo's purported

5   service marks was either nothing more than a protected nominative fair use, or exempted from

6   trademark protection by the first sale doctrine.  Finally, all of Stevo's purported state law claims

7   against SBR fail because SBR, as a provider of an interactive computer service, is immune from

8   liability under Section 230 of the Communications Decency Act for state law claims that attempt to

9   treat SBR as a publisher or speaker of information provided by another information content provider.

10          Based upon the foregoing, SBR respectfully requests that this Court dismiss the SAC pursuant

11   to Rule 12(b)(6) with prejudice.

12   **II.      PARTIES TO THE LITIGATION**

13          SBR Marketing is a foreign corporation that maintains its principle place of business in Costa

14   Rica, from which it operates a website, www.sbrforum.com ("SBR Forum").  (SAC, ¶¶ 5, 49).  SBR

15   Forum is a leading sports odds community and information website that is frequently quoted and

16   referenced across all types of online destinations and print publications.  Representative publications

17   include the Seattle Times, Miami Herald and Time Magazine Online.

18          One aspect of SBR Forum is the operation of a Bulletin Board System, or "BBS," that permits

19   users to read news and bulletins, and exchange messages with other users, either through electronic

20   mail or on public message boards.  It is SBR's operation of this BBS that gives rise to each of Stevo's

21   purported claims against SBR.

22          Stevo is a Florida corporation with its principal place of business located in Florida.  (SAC, ¶

23   2).  According to the SAC, Stevo is in the business of selling sports betting reports.  (SAC, ¶ 32).  All

24   of Stevo's claims against SBR arise from allegations that Stevo customers posted information obtained

25   from Stevo on SBR Forum's BBS.  The individual plaintiffs, Steve Budin and Alan Rolli, have stated

26   no claims against SBR.

27   / / /

28   / / /

**III.    CASE POSTURE**

On May 21, 2010, counsel for Stevo sent a letter to SBR concerning "Unauthorized Publication of Information . . ."  (Letter dated May 21, 2010, Exhibit 9 to Stevo's Florida Circuit Court Complaint (the "Florida Complaint"), attached as Exhibit A to SBR's concurrently filed Request for Judicial Notice ("RJN")).  The letter was sent by Stevo's prior counsel, Feldman Gale in Miami.  (RJN, Ex. 9 to Ex. A).  The letter was sent to SBR Marketing at a registered corporate address, and to its Webmaster at webmaster@sportsbookreview.com.  (RJN, Ex. 9 to Ex. A).  In this letter, Stevo asserted that SBR was liable for the acts of Stevo customers that were violating copyright law and contractual duties by posting Stevo betting information on SBR Forum.  (RJN, Ex. 9 to Ex. A).

On June 30, 2010, Stevo filed suit in Miami - Dade County, Florida, against SBR and various users of SBR Forum ("Users").  (RJN, Ex. A and Ex. B, Miami-Dade County Clerk – Docket Information for Case No. 2010-31442-CA-01, *Stevo Design v. SBR Marketing, Ltd.*).  It is important to note that Stevo filed suit in state court, thereby precluding any copyright claims over which federal courts have exclusive jurisdiction.  The Florida Complaint alleged that Stevo's betting reports constituted trade secrets and that purchasers of those reports were contractually bound to maintain confidentiality.  (RJN, Ex. A).  The suit alleged breach of contract and trade secret misappropriation against Users.  (RJN, Ex. A).  The sole claim against SBR was a single count for tortious interference with Stevo's contractual relations with its customers.  (RJN, Ex. A).

SBR defended the action and filed a Motion to Dismiss.  (RJN, Ex. B).  In response, Stevo hired its current counsel, who on February 9, 2011 – in the shadow of a hearing on SBR's Motion to Dismiss – filed a Voluntary Dismissal of SBR on Stevo's behalf.  (*See* RJN, Ex. B and Ex. C, Notice of Dismissal).  Stevo filed the instant action on February 24, 2011, here in the District of Nevada, where the only connection to the forum is the location of their attorneys' offices.[4]

---

[4] It is interesting to note that Righthaven, LLC – an entity for which Stevo's attorney, Steve Gibson, was at the time C.E.O. – filed suit in Nevada District Court in 2011 based on alleged infringements of Stevo copyrights.  *See Righthaven, LLC v. Allec*, District of Nevada Case No. 11-cv-00532.  The fact that Stevo was the true copyright holder was not disclosed in Righthaven's original complaint.  However, as a result of a ruling in *Righthaven v. Democratic Underground,* District of Nevada Case No. 10-cv-01356, Righthaven filed an Amended Certificate of Interested Parties and an Amended Complaint in *Righthaven, LLC v. Allec*, disclosing Stevo's ownership of those copyrights.

1   Stevo's original District of Nevada Complaint was not served on SBR and on April 6, 2011

2   plaintiffs filed their 139 page, 1084 paragraph FAC, alleging sixty-five (65) causes of action.

3   On March 13, 2012, this Court dismissed the FAC and entered judgment in favor of SBR based

4   upon lack of subject matter jurisdiction over Stevo's copyright and Lanham Act claims.

5   On January 24, 2013, this Court issued the Order and granted Stevo leave to file an amended

6   complaint within 20 days of the date of the Order.  (Docket # 52).

7   On February 14, 2013, 21 days after the date this Court signed the Order, Stevo filed the SAC.

8   Whereas the focus of Stevo's Florida action was the Users, the focus of Stevo's claims in the

9   FAC and in the SAC is SBR's alleged liability for user generated content posted on SBR Forum.

10   Stevo's purported causes of action against SBR comprise of multiple counts of service mark

11   infringement (15 U.S.C. § 1114); contributory service mark infringement; false designation of origin

12   (15 U.S.C. § 1125(a)); contributory false designation of origin; service mark dilution (15 U.S.C. §

13   1125(c)) by blurring and by tarnishment; contributory service mark dilution; copyright infringement

14   (17 U.S.C. § 501); vicarious copyright infringement; contributory copyright infringement; and several

15   causes of action arising under Florida state law.

16   **IV.    ARGUMENT**

17   **A.    Motion To Dismiss Standard**

18   To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice

19   pleading standard of Rule 8(a)(2).  *See Mendiondo v. Centinela Hospital Medical Center*, 521 F.3d

20   1097, 1103 (9th Cir. 2008).  A complaint must contain "a short and plain statement of the claim

21   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading

22   standard does not require detailed factual allegations; however, a pleading that offers only "labels and

23   conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  *Ashcroft*

24   *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

25   Rule 8(a)(2) also requires the SAC to "contain sufficient factual matter, accepted as true, to

26   state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).  A claim has

27   facial plausibility when the pleaded factual content allows the court to draw the reasonable inference,

28   based on the court's judicial experience and common sense, that the defendant is liable for the

misconduct alleged.  *See Id*. at 678-79.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 678 (internal quotation marks and citation omitted).

**B.     The SAC Still Fails To Plausibly Allege That Stevo Owns The Allegedly Infringed Copyrights.**

As this Court correctly held, Stevo's contradictory allegations in the FAC created a material inconsistency as to ownership of the allegedly infringed copyrights that was fatal to Stevo's copyright claims.  Moreover, as this Court noted, Stevo may have pleaded that *it was not* the owner of the copyrights because the User Agreement attached to the FAC as Exhibit #1 stated that Stevo's websites own the copyrights, not Stevo itself.  The SAC has failed to cure any of these fatal defects.  Thus, Stevo's copyright claims should be dismissed with prejudice.

"The legal or beneficial owner of an exclusive right under a copyright is entitled… to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  "A plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act."  *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004); *see also Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).  "[O]nly the owner of an exclusive right under the copyright act is entitled to sue for infringement."  *Silvers v. Sony Pictures Entm't Inc*., 402 F.3d 881, 889 (9th Cir. 2005).  A parent may not assert the intellectual property rights of its subsidiary in a copyright infringement action.  *See Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007).  Inconsistent language in the pleadings relating to a material element of a claim "fail[s] to state a plausible claim for relief as required to survive a 12(b)(6) motion."  *Velazquez v. Arrow Financial Services LLC*, 2009 WL 2780372 at *2 (S.D. Cal. Aug. 31, 2009) (quoting *Iqbal*, 556 U.S. at 679).  Moreover, "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations."  *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

Facts are a stubborn thing and the SAC's meager changes do nothing to overcome the contradictory language contained in the written instrument attached to the SAC. Just as in the FAC, the SAC alleges that Stevo owns and has registered copyrights in the materials allegedly infringed by SBR (as alleged in the FAC, Stevo had only just submitted applications for registration prior to Stevo filing this action). (SAC, ¶¶ 41, 314, 332, 350, 368, 386, 404, 422, 440, 458, 476, 494, 512, 530, 548, 566, 584, 602, 620, 642, 664). However, the "Buyers Agreement" that a purchaser of a Stevo betting report is presented with, attached as Exhibit 1 to both the FAC and the SAC, states explicitly that the individual websites own the copyrights – *not* Stevo:

> Ownership of Intellectual Property. You acknowledge and agree that *this website* is and shall remain the owner of all rights, title and interest in and to this website (and all affiliated websites) and its content, including without limitation all designs, copyrightable material … (Buyer Agreement, ¶ 4, attached to the SAC as Ex. 1 (emphasis added)).

Nowhere in the Buyer Agreement is Stevo identified as the copyright owner. To the contrary, the website at which the purchase of the subject betting report is made is identified as the owner. For example, Stevo's Florida Complaint contained an example of the actual agreement presented to purchasers of betting reports on www.whowillcover.com, which provides, in relevant part:

> You are purchasing pay-per-view sports analysis which is not subject to any return policy. All sales are final. In order to complete your order with **www.whowillcover.com, Inc**. ("www.whowillcover.com"), you must click in the space provided below that you accept and agree to these terms and conditions.
>
> * * *
>
> 4. *Ownership of Intellectual Property*. You acknowledge and agree that www.whowillcover.com is and shall remain the owner of all rights, title and interest in and to the www.whowillcover.com website (and all affiliated websites) and its content. (RJN, Ex. 9 to Ex. A) (emphasis added).

Exhibit 1 is a written instrument attached to the SAC and trumps the allegations in the SAC. Therefore, the websites own the copyrights, not Stevo. Stevo attempts to address this issue by adding an allegation that "[t]he Stevo Websites are not independent entities or subsidiaries of Stevo." (SAC, ¶ 40). However, that sentence does nothing to address the key issue, which is ownership of the copyrights *at the time of the alleged infringement*. According to the SAC, each of the alleged infringements occurred prior to Stevo's submission of an application for registration of the copyrights.

Accepting Stevo's allegations as true, and given that Exhibit 1 trumps the SAC's allegations, the copyright belonged to the website – in the above example, www.whowillcover.com, Inc. – at which Stevo's customers purchased the betting reports allegedly infringed by SBR.

Accordingly, Stevo has failed to carry its burden of establishing that it has standing to pursue *any* copyright claim asserted in this action. Thus, this Court should dismiss Stevo's copyright claims against SBR with prejudice.

**C.      This Court Should Dismiss Stevo's Copyright And Trademark Claims Because Stevo Has Failed To Plausibly Allege Copyright Or Trademark Infringement Originating In The United States.**

This Court should dismiss Stevo's copyright and trademark claims to the extent that Stevo has failed to plausibly allege that those acts of copyright infringement took place within the United States. Federal copyright law does not apply to extraterritorial acts of infringement. *Subafilms, Ltd. v. MGM-Pathe Communications Co.,* 24 F.3d 1088, 1095-98 (9th Cir.1994). Similarly, the application of the Lanham Act to infringements occurring outside this country is limited to situations, not present here, where there is a substantial connection to the United States. *See, e.g., Ocean Garden, Inc. v. Markettrade Co.*, 953 F.2d 500 (9th Cir. 1991).

The computer servers on which SBR operates SBR Forum are located in Costa Rica. To the extent SBR is considered the publisher of any content – thereby giving rise to the alleged copyright and trademark infringements claimed by Stevo – such publication occurred, originated and arose at its principle place of business in Costa Rica. Furthermore, the SAC does not sufficiently plead that the alleged copyright and trademark infringements originated from the United States. Accordingly, this Court should dismiss Stevo's copyright and trademark claims against SBR with prejudice.

**D.      Stevo's Trademark Claims Must Be Dismissed Based Upon The First Sale Doctrine And Nominative Fair Use.**

This Court correctly held that the FAC failed to state a claim for trademark infringement based upon the application of the first sale doctrine and nominative fair use. Stevo's amendments have failed to overcome either of those fatal deficiencies.

To prevail on a claim of trademark infringement under the Lanham Act, Stevo must show that SBR used the mark in interstate commerce in connection with the "sale, offering for sale, distribution,

1  or advertising of any goods or services," and that such use is likely to cause consumer confusion.  15

2  U.S.C. § 1114(1); *see also Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d

3  1137, 1144-45 (9th Cir. 2011).  Claims under 15 U.S.C. 1125(a) for false designation of origin have

4  similar elements.  *See New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir.

5  1979).  "Whether we call the violation infringement, unfair competition or false designation of origin,

6  the test is identical: is there a 'likelihood of confusion?'"  *Id.*

7        Dilution, on the other hand, is not confusion.  *Visa International Service Association v. JSL*

8  *Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010).  Dilution is a cause of action "invented and reserved for a

9  select class of marks—those marks with such powerful consumer associations that even non-

10  competing uses can impinge on their value."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875

11  (9th Cir. 1999) (citation omitted).  Stevo's dilution claims require it to show that its mark is famous

12  and distinctive, that SBR began using Stevo's mark in commerce after Stevo's mark became famous

13  and distinctive, and that SBR's mark is likely to dilute Stevo's mark.  *Visa International Service*

14  *Association,* at 1090.  To prove dilution by blurring, Stevo must show that the association between its

15  mark and SBR's mark "weakens the mark's ability to evoke the first product in the minds of

16  consumers."  *Id.*  Dilution by tarnishment occurs where the plaintiff's mark is linked with "something

17  unsavory or degrading."  *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 793 (9th Cir. 1981)

18  (interpreting California's antidilution statute).  The latter category includes things like X-rated movies,

19  adult content web sites, crude humor, and illegal drugs. 4 McCarthy, *supra*, § 24:89.

20        **1.    Stevo's Trademark and Unfair Competition Claims must be dismissed
              under the first sale doctrine.**

21

22       "[T]he right of a producer to control distribution of its trademarked product does not extend

23  beyond the first sale of the product.  Resale by the first purchaser of the original article under the

24  producer's trademark is neither trademark infringement nor unfair competition."  *Sebastian Int'l, Inc.*

25  *v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir.).  In addition, "[t]he exhaustion or first-sale

26  rule is not an affirmative defense**.**  Rather, **it defines an area of commerce beyond the reach of**

27  **trademark law**."  *Taylor Made Golf Company, Inc. v. MJT Consulting Group LLC*, 265 F.Supp.2d

28  732 (N.D. Tex. 2003), citing *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992)

1   (emphasis added).  Therefore, a reseller of branded goods–who does not materially change the goods–

2   is not a trademark infringer.  *See Sebastian International, Inc.*, 53 F.3d at 1074; *see also Softman*

3   *Products Co., LLC v. Adobe Systems, Inc.*, 171 F. Supp. 2d 1075, 1092 (C.D. Cal. 2001) ("The first

4   sale doctrine does not apply, however, when an alleged infringer sells trademarked goods that are

5   materially different than those sold by the trademark owner.").  The same goes for service marks, at

6   least where the service can be sold and resold without change to its "nature, quality, and genuineness."

7   *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766 (6th Cir. 2005) (explaining how service marks

8   differ from marks on goods with respect to the first sale doctrine).  The rationale for the rule is that

9   "trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin

10  or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true

11  mark is sold.  *NEC Electonics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).  Given the

12  first sale doctrine's relationship to the likelihood of confusion, it is appropriate to raise the doctrine in a

13  Rule 12(b)(6) motion to dismiss.  *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir.

14  1998) (reviewing, without objection, a district court's dismissal under Rule 12(b)(6) pursuant to the

15  first sale doctrine).

16          This Court correctly dismissed Stevo's trademark claims, holding that the first sale rule applies

17  to the handicapping reports.  As the Court noted, Stevo's marks are the names[5] of its sports analysts,

18  and the service Stevo sells with these marks is "sports analysis."  *See* Ex. 1 to the SAC, ¶ 1 ("You are

19  purchasing pay-per-view sports analysis . . . ").  As with the FAC, drawing all inferences in Stevo's

20  favor, SBR users bought trademarked sports analysis from Stevo and then resold it (or gave it away) on

21  SBR's message board.  SBR users usually repeated the analysis verbatim.  Thus, the complaint

22  identifies predicate acts of infringement in which SBR users resold a lawfully acquired trademarked

23  service without material alteration. The first sale doctrine teaches that such acts are not infringement at

24  all.

25  / / /

26  _____

27  [5] The SAC now alleges that, with the exception of the Steve Budin mark, all of these names are
    pseudonyms.  This is a distinction without difference.  Whether the names are proper names or

28  pseudonyms is of no moment, as the names simply identify the specific sports analyst from which the
    report originated.

1    In a transparent and desperate move to overcome this Court's ruling, Stevo inserts legal

2    conclusions, rather than facts, into the SAC in an attempt to show that SBR, by publishing the

3    allegedly infringing posts, creates initial interest confusion as to the legitimate source of the

4    handicapping reports.  In addition to the allegations that this Court already ruled are insufficient to

5    show initial interest confusion, i.e., that a Google search for Stevo's marks plus the word "picks" (i.e.,

6    "Steve Budin picks") returns results in which SBR's website is ranked higher than any of Stevo's,

7    Stevo now claims, without any factual support, that:

8        When SBR Marketing republishes infringed Handicapper Reports in conjunction with
         the Infringing Registered Marks, SBR Marketing thereby leads users to believe that
9        SBR Marketing is, or is affiliated with, the source of the infringed Handicapper Reports
         and the Infringing Registered Marks… [and that] SBR Marketing has permission to
10       republish the Infringing Registered Marks in conjunction with the infringed
         Handicapper Reports.  (SAC, ¶¶ 218, 219).
11

12    These conclusory allegations are not facts, they are simply Stevo's self-serving interpretation of

13    the facts already found lacking in the FAC.  Just as with the FAC, the SAC does not allege that SBR

14    used Stevo's marks in any advertisements or that SBR held itself out as knowledgeable as to Stevo's

15    workings.  The SAC also still identifies comments critical of Stevo's analysts on the SBR message

16    board, a fact which renders Stevo's allegations of confusion incredible.  (SAC #7, ¶¶ 206-211.); *see*

17    *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770, *4 (N.D. Cal. Dec. 18, 1997)

18    (Finding allegations of confusion as to authorization or sponsorship "incredible" where a website

19    included comments critical of the mark owner).

20    Stevo now inserts the conclusory allegation that SBR "knowingly uses" Stevo's marks "in

21    connection with published infringements of  Stevo's Handicapper Reports, in order to gain higher

22    placement in Internet search engine results with respect to the Marks and thereby illegitimately drive

23    commercial traffic from Stevo for [SBR's] financial gain."  (SAC, ¶ 154).  First, this allegation is not

24    factual and adds nothing to the FAC's deficient allegations.  It is simply another way of saying what

25    Stevo already unsuccessfully alleged in the FAC – that SBR knowingly encourages its users to publish

26    Stevo's Marks in an effort to improve its Google search rankings for financial gain.  (*See* FAC, ¶ 130,

27    155-178, 75-77).  Stevo still does not allege that SBR manipulated Google's search results by

28    purchasing search engine keywords incorporating Stevo's marks, or using website metadata

1   incorporating Stevo's marks – conduct at the heart of initial interest confusion on the internet.  *See*

2   *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1065 (9th Cir.

3   1999); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 69 U.S.P.Q.2d

4   1417 (9th Cir. 2004).

5        Therefore, Stevo has still failed to allege anything to show that SBR created the type of

6   confusion needed to defeat application of the first sale doctrine and this Court should dismiss Stevo's

7   trademark claims against SBR with prejudice.

8            **2.      Stevo's Amendments to the SAC fail to overcome the nominative fair use**
                **doctrine.**

9

10       As this Court correctly held, the FAC failed to allege anything beyond SBR's nominative fair

11   use of Stevo's marks.  The SAC fairs no better.  Once again, Stevo simply inserts conclusory language

12   that merely restates the allegations of the FAC in a slightly different way.  These insertions do nothing

13   to overcome nominative fair use and this Court should dismiss Stevo's trademark infringement claims

14   against SBR with prejudice.

15       To use a mark – a "trademark use"– the defendant must attempt to identify the source of the

16   mark with the defendant itself.  *See Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 128-31 (2d Cir.

17   2009) (contrasting trademark use with "use in commerce").  "Trademark mention" is any other use of a

18   mark; it is "to refer to a particular product for purposes of comparison, criticism, point of reference or

19   any other such purpose."  *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 306

20   (9th Cir. 1992).  Thus, nominative fair use denotes trademark mention.  The Ninth Circuit identified

21   three factors in attempting to carve out trademark mention from trademark use.  First, the product or

22   service in question must not be readily identifiable without the trademark.  Second, the mark may only

23   be used to identify the product or service.  Third, the mark user must do nothing to imply "sponsorship

24   or endorsement" by the trademark holder.  *See New Kids on the Block*, 971 F.2d at 308.

25       If the pleading fails to allege a trademark use beyond nominative fair use, then the plaintiff has

26   failed to allege likelihood of confusion and, therefore, failed to state a claim for which relief may be

27   granted.  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 (2004)

28   (noting that plaintiffs carry the burden on likelihood of confusion).

1    The first two elements of nominative fair use are again clearly met.  As alleged in the SAC, the

2    only way for SBR, its users, or anyone else to describe Stevo's products is by referring to the

3    handicappers by name – which also happens to be their registered service marks.  When a person's

4    name is also his registered trademark or service mark there is simply no other way to identify that

5    person's goods and services without using his name (or pseudonym).  Perhaps the best example of this

6    is the caption in the instant case.  Steve Budin is identified as a plaintiff in this action.  According to

7    the SAC, STEVE BUDIN is also a registered service mark and the SAC alternatively refers to "Steve

8    Budin" as an individual and in connection with the publication of betting reports.  (SAC, ¶¶ 3, 33(e),

9    145, 205).  Such references are, by definition, nominative fair use.  Nominative use does not dilute the

10   mark, but actually strengthens Stevo's marks by accurately associating the marks with the authentic

11   services with which they are associated.  "Much useful social and commercial discourse would be all

12   but impossible if speakers were under threat of an infringement lawsuit every time they made reference

13   to a person, company or product by using its trademark."  *New Kids on the Block*, 971 F.2d at 306-307.

14   The third prong of the test is also easily met.  As alleged in the SAC, when the marks appeared

15   on SBR's website, they only identified Stevo's services.   For example, one SBR user identified as

16   "Pin Fish" posted handicapping reports under the subject line "redd, jordan, davis, nover, o'brien,

17   mancini???"  (SAC at ¶ 103.)  The subject line identifies Stevo's analysts Redd, Jordan, Davis, Nover,

18   O'Brien, and Mancini, and the body of the posting contained these analysts' reports. Furthermore, user

19   generated content on SBR Forum is often critical of Stevo's service marks.  (SAC, ¶¶ 206 - 211).

20   Finally, the various screen names under which Stevo's reports were posted ("Pin Fish,"

21   "PepperMillRick," "goldengreek," etc.) do not suggest to a visitor that either the posting user or SBR

22   itself is the ultimate source of the report.  These allegations, and the associated negative commentary,

23   provide an additional basis to defeat any suggestion or finding of sponsorship or endorsement of Stevo

24   by SBR.

25   Stevo has now inserted conclusory allegations that "[t]he SBR Marketing Infringing Registered

26   Mark Use constitutes more than a nominative use of the Infringing Registered Marks" because:

27   SBR Marketing engages in the SBR Marketing Infringing Registered Mark Use
     specifically to denote the source of the infringed content appearing on the SBR Website
28   that was originally licensed by Stevo under the Registered Marks … [and] to

illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain … [and] [b]y engaging in the SBR Marketing Infringing Registered Mark Use, rather than merely republishing infringed Handicapper Reports without use of the Infringing Registered Marks, SBR Marketing republishes the source indicators with respect to the Handicapper Reports, which source indicators are not an integral or incorporated part of the Handicapper Reports.  (SAC, ¶¶ 217, 220-221).

Once again, these conclusory allegations are simply a repackaging, without any new facts, of the allegations that this Court found insufficient to overcome nominative fair use in the FAC. Specifically, that SBR solicits users to post handicapper reports using the handicapper's name in an effort to drive traffic to the SBR Forum.

Stevo may once again argue that SBR created initial interest confusion by publishing Stevo's marks and, therefore, the doctrine of nominative fair use is not applicable.  Stevo will once again lose, as it has not added any facts to overcome this Court's ruling.  As this Court noted, cases decided under the nominative fair use doctrine similarly require more indicia of endorsement than Stevo has alleged. Stevo has still failed to allege any facts to show that there is a "custom" of sports analysts endorsing SBR's message boards.  *See Abdul-Jabar v. General Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996). Nor has Stevo alleged that SBR's users (or SBR itself) use Stevo's marks to describe their own products or services rather than Stevo's.  *See Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1009 (9th Cir. 2001).  Therefore, this Court should dismiss Stevo's trademark claims against SBR with prejudice.

> ### 3.       Stevo's dilution and contributory infringement claims once again fail.

Stevo seeks to skirt the lack of a legal basis for false designation, direct infringement and contributory infringement by alleging that user content on SBR Forum results in the dilution of Stevo's service marks.  These theories, however, are also barred by the nominative fair use of Stevo's service marks.  Section 1125(c)(3) of the Lanham Act expressly precludes these causes of action:

The following *shall not be actionable as dilution by blurring or dilution by tarnishment* under this subsection:

(A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with--

(i) advertising or promotion that permits consumers to compare goods or services; or

(ii) *identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.* (Emphasis added.)

The inapplicability of Stevo's dilution theories is demonstrated by the Ninth Circuit decision in *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002).  In *Playboy Enterprises*, Playboy asserted that the defendant's uses of its marks (PLAYBOY, PLAYMATE, and PLAYMATE OF THE YEAR 1981) to describe a former Playboy model, constituted trademark dilution.  In finding that the defendant had engaged in nominative fair use, the court explained that there could be no dilution because nominative fair use "by definition, do[es] not dilute trademarks."  *Id.* at 805 (emphasis added). The court went on to write:

> Uses that do not create an improper association between a mark and a new product but merely identify the trademark holder's products should be excepted from the reach of the anti-dilution statute.  Such uses cause no harm . . . [W]e conclude that nominative uses are also excepted [from anti-dilution law]. A nominative use, by definition, refers to the trademark holder's product. It does not create an improper association in consumers' minds between a new product and the trademark holder's mark . . . **So long as a use is nominative … trademark law is unavailing.**  (*Id.* at 806 (emphasis added)).

In addition, since Stevo has not successfully alleged any predicate acts of trademark infringement by SBR users, SBR may not be liable for contributory infringement.  *See Perfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788, 807 (9th Cir. 2007) (*quoting Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)) (holding that contributory trademark infringement requires some predicate act of infringement).

Therefore, under the nominative fair use doctrine and pertinent case law, Stevo has no cognizable claim for trademark infringement or dilution and this Court should dismiss Stevo's trademark claims against SBR with prejudice.

> **E.      The Communications Decency Act Continues To Immunize SBR From Stevo's State Law Claims.**

This Court correctly dismissed Stevo's state law claims against SBR in the FAC, holding that such claims were barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA") because SBR's practice of awarding loyalty points for posts does not make SBR a "developer" under the CDA and because Stevo's state law claims attempted to treat SBR as a "publisher or speaker" of user-

1  generated content.  The SAC fails to insert any facts that would overcome this Court's analysis, relying

2  instead on conclusory allegations that, consistent with the theme of the SAC, simply repackage the

3  FAC's insufficient allegations.  Therefore, Stevo's remaining claims for Misappropriation of Trade

4  Secrets, Misappropriation of Licensable Commercial Property and Contributory Misappropriation of

5  Licensable Commercial Property under Florida state law remain barred by the CDA.

6  "Section 230 of the CDA immunizes providers of interactive computer services against liability

7  arising from content created by third parties: 'No provider . . . of an interactive computer service shall

8  be treated as the publisher or speaker of any information provided by another information content

9  provider.'"  *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,

10  1162 (9th Cir. 2008) (quoting 47 U.S.C. § 230(c); footnotes omitted).  "Passive" message boards with

11  only occasional curation by message board moderators warrant immunity under section 230.  *See, e.g.,*

12  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (discussing a dating website

13  profile).

14  In *Roommates.com*, the Ninth Circuit held that a roommate-matching website's practice of

15  "encouraging" users to add whatever information they saw fit to an Additional Comments section

16  qualified for immunity under the CDA.  The *Roommates.com* court found that the website's Additional

17  Comments section qualified for immunity because it did not "provide any specific guidance as to what

18  the [comments] should contain, nor did it encourage [unlawful comments]."  *Id.* at 1173-74.  The

19  content of the Additional Comments came "entirely from subscribers and is passively displayed by

20  Roommate."  *Id.* at 1174.  In contrast, the *Roommates.com* court held that the website's section that

21  required users to answer questions about age, race, sexual orientation, and other topics from a drop

22  down menu that was formulated by the website itself contributed "materially to the alleged illegality of

23  the conduct" (discriminatory housing practices) and thus fell outside of an interactive computer service

24  and, consequently, outside section 230's immunity.  *See Id.* at 1165, 1168.

25  As this Court correctly held, SBR's message board is closer to the *Roommates.com* Additional

26  Comments section than to the required questions and SBR's practice of awarding loyalty points for

27  posts does not make SBR a "developer" under the CDA pursuant to *Roommates.com* because 1) SBR's

28  encouragement of posting through loyalty points is not specifically directed at illegal publications; 2)

1  the fact that SBR users may contribute loyalty points to each other further attenuates SBR's

2  information-creating role; 3) SBR's policy favoring original content also distinguishes SBR from a

3  developer; and 4) SBR's "sporadic" attempts to eliminate infringing content are precisely the type of

4  thing that the CDA promotes.

5        Knowing that it has no additional facts to allege, Stevo is now attempting to make the patently

6  absurd and completely unsupported argument that by virtue of accepting SBR loyalty points for posts

7  from other SBR Forum users, those SBR Forum's users are somehow now in a principal – agent

8  relationship with SBR.  Stevo has pleaded no additional facts to support this conclusion, only shifted

9  from calling SBR's users "SBR Contributors" in the FAC to calling them "Marketing Contributor-

10  Agents" in the SAC.  There is no basis in law or fact for this conclusion.  It represents nothing more

11  than a desperate attempt to get around SBR's CDA immunity.

12        Stevo has not changed the facts in the SAC, only the wording.  For example, the FAC alleged

13  that:

14        SBR Marketing awards loyalty points, which SBR Marketing describes as "our
          currency here" (emphasis in original) (the "SBR Currency"), to registered users of the
15        SBR Website **("SBR Contributors")** whenever those **SBR Contributors** engage in
          certain activities on the SBR Website, including merely logging on to the SBR Website,
16        contributing content to the SBR Website, or reporting other users' infractions of the
          SBR Website's terms of use to SBR Marketing … SBR Marketing's **incentivization** of
17        **contributions** from **SBR Contributors** by means including, without limitation,
          payment of SBR Currency to **SBR Contributors** creates privity of **publishing**
18        relationship between SBR Marketing and each **so-incentivized SBR Contributor**.
          (FAC, ¶¶ 37-38) (emphasis added).
19

20        Those same paragraphs in the SAC now read:

21        SBR Marketing awards loyalty points, which SBR Marketing describes as "our
          currency here" (emphasis in original) (the "SBR Currency"), to registered users of the
22        SBR Website **("SBR Marketing Contributor-Agents")** whenever those **SBR
          Marketing Contributor-Agents** engage in certain activities on the SBR Website,
23        including merely logging on to the SBR Website, contributing content to the SBR
          Website, or reporting other users' infractions of the SBR Website's terms of use to
24        SBR Marketing … SBR Marketing's **solicitation of and payment for content** from
          **SBR Marketing Contributor-Agents** by means including, without limitation,
25        payment of SBR Currency to **SBR Marketing Contributor-Agents** creates privity of
          **business relationships** between SBR Marketing and each **so-compensated SBR
26        Marketing Contributor-Agent**.  (SAC, ¶¶ 53 – 54) (emphasis added).

27

28

1    Stevo goes on to label SBR's forum members Marketing Contributor-Agents throughout the

2    SAC.  Again, Stevo has not alleged any new facts – it has only changed the wording by calling the

3    SBR loyalty points compensation rather than incentivization.  Calling the loyalty points compensation

4    does not change the analysis one iota.  The FAC already referred to the awarding of loyalty points as

5    "payment" and alleged that SBR awarded those points in an effort to solicit trademark infringements

6    from its members.  This Court held that those allegations did not make SBR a publisher or developer

7    and the result should be no different here.

8    Finally, as this Court correctly held, the CDA immunized SBR from Stevo's state law claims in

9    the FAC because those claims attempted to treat SBR as a "publisher or speaker" of user-generated

10   content.  Stevo's meager additions to the SAC do not change that analysis.  Stevo's Misappropriation

11   of Trade Secrets, Misappropriation of Licensable Commercial Property and Contributory

12   Misappropriation of Licensable Commercial Property all attempt to impose liability upon SBR for

13   content and posting specifically alleged to have been posted on SBR Forum by third parties to this suit.

14   This is precisely the type of claim the CDA was designed to protect against.  The failure to apply CDA

15   immunity in this case would be a blow to the critical policy of protecting "freedom of speech in the in

16   new and burgeoning Internet medium."  *Zeran v. Am. Online, Inc*., 129 F.3d 327, 330 (4th Cir. 1997);

17   *see also Batzel*, 333 F.3d at 1027.  Accordingly, Defendant is immune from liability under the CDA

18   and this Court should dismiss Stevo's state law claims against SBR with prejudice.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1  **V.     CONCLUSION**

2      Stevo's additions to the SAC are nothing more than a repackaging of the allegations of the FAC

3  sprinkled with legal conclusions.  Stevo has had four attempts to allege a plausible claim for relief

4  against SBR and has failed all four times.  It is abundantly clear that Stevo does not have, and never

5  will have facts sufficient to state a claim for relief.  Therefore, SBR respectfully requests that this

6  Court dismiss the SAC with prejudice pursuant to Rule 12(b)(6).

7

8                                      Respectfully submitted,

9  DATED:  March 15, 2013                THE KAUFMAN LAW GROUP

10

11                              By: /s/ Gary Jay Kaufman
                                      GARY JAY KAUFMAN
12                                    COLIN HARDACRE
                                      1901 Avenue of the Stars, Suite 1010
13                                    Los Angeles, California 90067
                                      *Counsel for Defendant SBR Marketing, Inc.*
14                                    *Admitted Pro Hac Vice*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTICATE OF SERVICE</u>**

  Pursuant to Local Rule 5-1 of this Court, I hereby certify that on March 15, 2013, I

electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further

certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the

following non-CM/ECF participants:

Brian Daniele
7002 Braddock Mews Place
Springfield, Virginia 22151

           s/Gary Jay Kaufman