Gary Jay Kaufman, Esq. (*Pro Hac Vice*)
gary@kaufmanlawgroupla.com
Colin Hardacre, Esq.     (*Pro Hac Vice*)
colin@kaufmanlawgroupla.com
THE KAUFMAN LAW GROUP
1901 Avenue of the Stars, Suite 1010
Los Angeles, California 90067
Telephone:  (310) 286-2202
Facsimile:   (310) 712-0023

Chad Bowers (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys for Defendant,
SBR Marketing, Ltd.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEVO DESIGN, INC., a Florida corporation; STEVEN BUDIN, an individual; and ALAN ROLLI, an individual,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>SBR MARKETING LTD., a foreign corporation; and BRIAN DANIELE, an individual,<br><br>　　　　　Defendants. | Case No. 2:11-cv-00304<br><br>**SBR MARKETING, LTD.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

For nearly three years, plaintiff Stevo Design, Inc. ("Stevo") has fought a losing battle to state claims for relief against defendant SBR Marketing, Ltd. ("SBR").  From dismissal of its claims in an ill-conceived Florida State Court action, to entry of judgment in SBR's favor based on lack of subject matter jurisdiction, to dismissal for failure to state a claim, Stevo has consistently failed to demonstrate that its claims have merit.  Now, in a desperate move to avoid yet another defeat, Stevo is grasping at straws, rehashing tired arguments and attempting to avoid its own judicial admissions.  Yet, no matter how much Stevo throws at the wall, it cannot obscure the fact that the Second Amended Complaint ("SAC") remains fatally flawed and should be dismissed with prejudice.

## II.    ARGUMENT

### A.     Stevo Has Failed To Plead That It Owned The Copyrights At The Time Of The Alleged Infringement.

Stevo vehemently argues that a one sentence addition to the SAC now establishes that it has standing to sue for copyright infringement and thus cures the fatal defects present in the First Amended Complaint ("FAC").  However, that one sentence is clearly contradicted by Stevo's own allegations in the previously filed and dismissed Florida lawsuit against SBR, of which this Court may take judicial notice.  (*See* SBR's Request for Judicial Notice ("RJN"), Docket #60).  Worse yet, it now appears that Stevo is ignoring its own judicial admissions.

This Court need not accept as true allegations that contradict facts which may be judicially noticed by the court.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).  For example, this Court may properly consider matters of public record (e.g., pleadings, orders and other papers on file in another action pending in the court; records and reports of administrative bodies; or the legislative history of laws, rules or ordinances) . . . as long as the facts noticed are not subject to reasonable dispute.  *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

In the opposition, Stevo once again argues that the reference to "this website" (rather than Stevo) owning the copyrights in the User Contract attached as Exhibit 1 to the SAC is simply "inartful

1  language" and that the "website" is actually an oblique reference to Stevo. Stevo also now relies on a
2  one-sentence addition to the SAC in arguing that this Court may make a "reasonable inference" that
3  Stevo owned the purported copyrights at the time of the alleged infringement and, thus, has standing to
4  sue: "[t]he Stevo Websites are not independent entities or subsidiaries of Stevo." (SAC, ¶ 40).

However, it appears that the reference to "this website" in the User Contract is not simply inartful language, but rather obfuscation designed to create standing to sue for copyright infringement.

In the Florida lawsuit against SBR, filed and dismissed by Stevo prior to the institution of the instant action, Stevo included a copy of a "Buyers Agreement" as an "example" of the terms and conditions to which users must agree to prior to purchasing pay-per-view sports analysis. That "example" contract, which appeared to be scanned from an original paper copy, specifically stated that another entity, *not Stevo*, is the owner of all copyrights:

**BUYERS AGREEMENT**
**TERMS AND CONDITIONS**

You are purchasing pay-per-view sports analysis which is not subject to any return policy. All sales are final. In order to complete your order with www.whowillcover.com, Inc. ("www.whowillcover.com"), you must click in the space provided below that you accept and agree to these terms and conditions.

4. *Ownership of Intellectual Property.* You acknowledge and agree that www.whowillcover.com is and shall remain the owner of all rights, title and interest in and to the www.whowillcover.com website (and all affiliated websites) and its content, including without limitation all designs, copyrightable material (regardless of whether such material is copyrightable under the United States Copyright Act, the Berne Union for the Protection of Literary and Artistic Property, the Universal Copyright Convention, and/or any of the laws of any other nation), patentable material (regardless of whether such material is patentable under the laws of the United States and/or any other nation), trademarks and trade dress, *droit moral*, and confidential and trade secret information (collectively, the "Intellectual Property Rights"), including without limitation all derivatives, improvements, modifications and enhancements thereto, and all Intellectual Property Rights associated therewith. You also acknowledge that all of the personalities (including their names and biographies) depicted on the www.whowillcover.com website (and any affiliated websites) were created and are owned by www.whowillcover.com.

The above is taken from Stevo's own pleadings and demonstrates that Stevo did not own the copyrights at issue. (*See* RJN, Ex. A, pp. 20-22 of 73).

In stark contrast to the above, the "example" User Contract attached to the SAC, appears heavily edited and printed directly from word processing software to PDF. (SAC, Ex. 1). More importantly, the User Contract specifically omits any reference to a separate business entity and instead inserts the word "website" in its place:

> BUYERS AGREEMENT
>
> TERMS AND CONDITIONS
>
> You are purchasing pay-per-view sports analysis which is not subject to any return policy.
>
> All sales are final.
>
> In order to complete your order with ==this website==, you must click in the space provided in the shopping cart where noted that you accept and agree to these terms and conditions.
>
> ==website== is and shall remain the owner of all rights, title and interest in and to this website (and all affiliated websites) and its content, including without limitation all designs, copyrightable material (regardless of whether such material is copyrightable under the United States Copyright Act, the Berne Union for the Protection of Literary and Artistic Property, the Universal Copyright Convention, and/or any of the laws of any other nation), patentable material (regardless of whether such material is patentable under the laws of the United States and/or any other nation), trademarks and trade dress, droit moral, and confidential and trade secret information (collectively, the "Intellectual Property Rights"), including without limitation all derivatives, improvements, modifications and enhancements thereto, and all Intellectual Property Rights associated therewith. You also acknowledge that all of the personalities (including their names and biographies) depicted on ==this website== (and any affiliated websites) ==were created and are owned by this website.==

Significantly, the Florida complaint did not include copyright infringement claims, despite the fact that Stevo had threatened to bring such claims prior to filing the Florida complaint. (*See* RJN, pp. 60-62 of 73).

Given the contradictory allegations contained in the SAC and in the Florida complaint, this Court should disregard Stevo's new allegation that the websites are not independent entities or subsidiaries of Stevo. Thus, the only reasonable inference, to borrow Stevo's refrain, is that Stevo did not own the copyrights at the time of the infringement and has submitted inaccurate documents in an attempt to create standing to sue.

It is important to note that the issue of copyright ownership is a preliminary matter affecting the right to file suit in the first instance. "[O]nly the owner of an exclusive right under the copyright act is

1  entitled to sue for infringement." *Silvers v. Sony Pictures Entm't Inc.,* 402 F.3d 881, 889 (9th Cir.
2  2005). Stevo has the burden of establishing, through adequate pleadings, that this case is properly
3  before this Court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt*
4  *v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Harris v. Provident Life & Accident*
5  *Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994). Based on the foregoing, this Court should find, as it did
6  with the FAC, that due to the massive contradictions that create a material inconsistency as to
7  ownership of the allegedly infringed copyrights, Stevo has failed to carry its burden to allege standing
8  to sue. Because Stevo has already tried and failed to plead standing in three separate pleadings, it is
9  apparent that amendment would be futile. Therefore, this Court should dismiss Stevo's copyright
10 claims against SBR with prejudice.

**B.     The SAC Fails To Allege Anything More Than Trademark Mention.**

Stevo fails to rebut in any meaningful way SBR's argument that the SAC satisfies all three factors of the Ninth Circuit's test for nominative fair use. (*See New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (The three factors necessary to carve out trademark mention from trademark use are: 1) the product or service in question must not be readily identifiable without the trademark; 2) the mark may only be used to identify the product or service; and 3) the mark user must do nothing to imply "sponsorship or endorsement" by the trademark holder).

Stevo does not dispute that the only way for SBR, its users, or anyone else to describe Stevo's products is by referring to the handicappers by name – which also happens to be their purported registered service marks. When a person's name is also his registered trademark or service mark there is simply no other way to identify that person's goods and services without using his name (or pseudonym).

Nor does Stevo adequately address the fact that when the purported marks appeared on SBR's website, they only identified Stevo's services. For example, one SBR user identified as "Pin Fish" posted handicapping reports under the subject line "redd, jordan, davis, nover, o'brien, mancini???" (SAC at ¶ 103.) The subject line identifies Stevo's analysts Redd, Jordan, Davis, Nover, O'Brien, and Mancini, and the body of the posting contained these analysts' reports. Furthermore, user generated content on SBR Forum is often critical of Stevo's service marks. (SAC, ¶¶ 206 - 211).

Finally, Stevo also fails to meaningfully address this Court's finding that the various screen names under which Stevo's reports were posted ("Pin Fish," "PepperMillRick," "goldengreek," etc.) do not suggest to a visitor that either the posting user or SBR itself is the ultimate source of the report and that these allegations, and the associated negative commentary, provide an additional basis to defeat any suggestion or finding of sponsorship or endorsement of Stevo by SBR.

Indeed, rather than address these dispositive factors, Stevo again goes to the well of arguing initial interest confusion. Stevo claims that it has demonstrated initial interest confusion because "there may be other ways to manipulate search engine results beyond those recognized in [*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999)]."

Stevo does not cite to any case law or support for this suggestion, but simply argues, as it did in its opposition to SBR's Motion to Dismiss the FAC, that SBR attempted to capitalize on consumer confusion and to "appropriate the cachet" of Stevo's handicappers and that SBR Forum users will not purchase Stevo products because they will find them for free after a Google Search. But, the SAC does not contain any new or different factual allegations to support a finding of initial interest confusion, only a repackaging of the allegations that this Court found insufficient in the FAC.

Stevo now alleges that "[t]he SBR Marketing Infringing Registered Mark Use constitutes more than a nominative use of the Infringing Registered Marks" because:

> SBR Marketing engages in the SBR Marketing Infringing Registered Mark Use specifically to denote the source of the infringed content appearing on the SBR Website that was originally licensed by Stevo under the Registered Marks … [and] to illegitimately divert commercial traffic from Stevo for SBR Marketing's financial gain … [and] [b]y engaging in the SBR Marketing Infringing Registered Mark Use, rather than merely republishing infringed Handicapper Reports without use of the Infringing Registered Marks, SBR Marketing republishes the source indicators with respect to the Handicapper Reports, which source indicators are not an integral or incorporated part of the Handicapper Reports. (SAC, ¶¶ 217, 220-221).

This is essentially the same allegation as in the FAC, just worded differently. In addition, Stevo once again refers to a "privity" relationship between the co-called "SBR Marketing Contributor Agents" (a made-up and ultimately meaningless title) and SBR. However, Stevo made the same arguments in its opposition to SBR's Motion to Dismiss the FAC. Those arguments failed then and they should fail now, as Stevo has added nothing of substance to support these claims.

1     Stevo still does not allege that SBR manipulated Google's search results by purchasing search
2 engine keywords incorporating Stevo's marks, or using website metadata incorporating Stevo's marks
3 – conduct at the heart of initial interest confusion on the internet.  *See Brookfield Communications,*
4 *Inc.*, 174 F.3d at 1065 (9th Cir. 1999); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
5 354 F.3d 1020, 69 U.S.P.Q.2d 1417 (9th Cir. 2004).
6     Stevo grasps at straws in arguing that SBR's alleged mention of Stevo's purported trademarks
7 is similar to the hypothetical "off-brand purveyor" mentioned in *Rescuecom Corp. v. Google Inc.*, 562
8 F.3d 123, 128-31 (2d Cir. 2009).  Unlike the "off-brand purveyor" who seeks to trick a consumer into
9 believing that they are purchasing a famous brand when they are actually purchasing a competitor's
10 product, Stevo has still failed to allege any facts to show that SBR competes with Stevo or that there is
11 a "custom" of sports analysts endorsing SBR's message boards.  See *Abdul-Jabar v. General Motors*
12 *Corp.*, 85 F.3d 407, 413 (9th Cir. 1996).  Nor has Stevo alleged that SBR's users (or SBR itself) use
13 Stevo's marks to describe their own products or services rather than Stevo's.  *See Downing v.*
14 *Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001).
15     Finally, Stevo's suggestion that this Court should allow Stevo to conduct discovery to augment
16 its pleadings in the event that this Court rules in SBR's favor is inappropriate and not supported by
17 law.  A plaintiff cannot avoid or delay a dismissal under Rule 12(b)(6) by arguing that his or her failure
18 to state a claim for relief is based on lack of even limited discovery directed at facts needed to plead a
19 cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); *Schatz v. Republican State Leadership*
20 *Comm.*, 669 F3d 50, 56 (1st Cir. 2012) ("to access discovery mechanisms, a plaintiff must first
21 produce a complaint that passes the plausibility test").  SBR's knowledge and intent are not relevant,
22 where Stevo has failed to allege anything other than nominative fair use.  If Stevo had facts sufficient
23 to demonstrate likelihood of confusion, it would have alleged them by now.  The bottom line is that,
24 construing the SAC in the light most favorable to Stevo, Stevo has alleged nothing more than
25 nominative fair use by SBR.  Therefore, this Court should dismiss Stevo's trademark claims against
26 SBR with prejudice.
27 / / /
28 / / /

### 1. Stevo's allegation that SBR pays its users to post infringing material is without any factual support and is unavailing.

As argued in SBR's moving papers, Stevo's suggestion that by virtue of accepting SBR loyalty points for posts from other SBR Forum users, those SBR Forum's users are somehow now in a principal – agent relationship with SBR is a patently absurd and completely unsupported argument. Stevo has pleaded no additional facts to support this conclusion, only shifted from calling SBR's users "SBR Contributors" in the FAC to calling them "Marketing Contributor-Agents" in the SAC. There is no basis in law or fact for this conclusion.

Stevo has not alleged any new facts – it has only changed the wording by calling the SBR loyalty points compensation rather than incentivization. Calling the loyalty points compensation does not change the analysis one iota. The FAC already referred to the awarding of loyalty points as "payment" and alleged that SBR awarded those points in an effort to solicit trademark infringements from its members. Those allegations were previously held insufficient and the result should be no different here.

### 2. Stevo's citation to *Estate of Fuller* only highlights the SAC's deficiencies.

Stevo cites to a Northern District of California court's holding in *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, WL 5392626 (N.D. Cal., 2012) for the proposition that Stevo's conclusory allegation that SBR's use of Stevo's purported service marks "is likely to cause confusion and mistake, or deceive consumers and the public with respect to the goods and services offered in commerce by SBR Marketing" is enough to overcome nominative fair use. Far from defeating SBR's nominative fair use, *Estate of Fuller* only highlights just how deficient Stevo's allegations are.

In *Estate of Fuller* the defendant produced and marketed numerous products that used different variations of renowned 20th century inventor, Buckminster Fuller's name, including "Buckyballs" and "BuckyBars." *Id.* at *1. The defendant marketed the products in numerous iterations using specific references to Buckminster "Bucky" Fuller being the inspiration for the defendant's products. *Id.* The defendant even went so far as to publish a book containing a portion that stated "Buckyballs were named for Buckminster Fuller," and then describing a few of Mr. Fuller's accomplishments, and concluding by stating "[h]e was smart. He was crazy. He was fun. Remind you of anything?" *Id.* The

defendant's website "also at one point contained a Frequently Asked Questions page that stated '[t]he name Buckyballs is a nod to Buckminster 'Bucky' Fuller, a famous architectural-type best known for the geodesic dome (a sphere made of triangles). It's a fun shape to make with Buckyballs. FUN FACT: The Carbon–60, one of the strongest atomic structures known to man, are sometimes called Fullerenes. They too were named after Fuller for their similarity to geodesic domes.'" *Id.*

Based on these facts, the *Estate of Fuller* court held that the third element of the nominative fair use defense, that the mark user must do nothing to imply "sponsorship or endorsement" by the trademark holder, was not satisfied; the defendant's conduct did in fact suggest sponsorship or endorsement by Mr. Fuller. *Id.* at *11.

Here, unlike in *Estate of Fuller*, Stevo has not alleged any facts that would suggest that SBR's "use" of Stevo's purported marks suggested sponsorship or endorsement by Stevo. Stevo has not alleged that SBR is marketing Stevo's products as though they were SBR's products. Furthermore, as argued above, the various fanciful screen names under which Stevo's reports were posted, along with the associated negative commentary from SBR Forum users about Stevo, provide an additional basis to defeat any suggestion or finding of sponsorship or endorsement of Stevo by SBR.

Based on the above, under the nominative fair use doctrine and pertinent case law, Stevo has no cognizable claim for trademark infringement or dilution and this Court should dismiss Stevo's trademark claims against SBR with prejudice.

**C.    This Court Should Dismiss Stevo's Claims Pursuant To The First Sale Doctrine.**

Assuming *arguendo*, but incorrectly, that 1) Stevo is the owner of any trademarks as alleged in the SAC[1] and 2) this Court were to find that SBR engaged in any use of Stevo's purported trademarks beyond nominative fair use, such use is protected under the first sale doctrine because, as the Court previously held, Stevo's marks are the names of its sports analysts, and the service Stevo sells with

---

[1] As demonstrated above in the section regarding copyright, there is a question as to whether or not Stevo owns any of the purported trademarks alleged in the SAC. The Buyers Agreement attached to the Florida complaint states that a separate entity, www.whowillcover.com, Inc. is and shall remain the owner of all right, title and interest to any intellectual property, including trademarks. (*See* RJN, Ex. A, pp. 20-21 of 73). Therefore, it is entirely possible that Stevo has pleaded that it does not own the trademarks at issue.

1  these marks is "sports analysis."  (*See* Ex. 1 to the SAC, ¶ 1) ("You are purchasing pay-per-view sports
2  analysis . . . ").  As with the FAC, drawing all inferences in Stevo's favor, SBR Forum users bought
3  trademarked sports analysis from Stevo and then resold it (or gave it away) on SBR Forum.  SBR
4  Forum users usually repeated the analysis verbatim.  Thus, the SAC identifies predicate acts of
5  infringement in which SBR Forum users resold a lawfully acquired trademarked service without
6  material alteration. The first sale doctrine teaches that such acts are not infringement at all.

7         Stevo is now, for the first time, arguing that the first sale doctrine does not apply in this case
8  because Stevo did not sell its purported trademarked sports analysis, but instead granted users a
9  license.  First, the cases that Stevo cites for this proposition are inapposite, as they all involve
10 copyrighted material, predominately software programs, *not* trademarked sports analysis.  *American
11 Int'l Pictures, Inc. v. Foreman,* 576 F.2d 661, 664 (5th Cir. 1978); *UMG Recordings, Inc. v. Augusto*,
12 628 F.3d 1175, 1179 (9th Cir. 2011); *Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846
13 F. Supp. 208, 213 (E.D.N.Y. 1994); *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1331
14 (N.D. Ill. 1990).

15        Second, even if the cited authority applied to the instant case, the SAC's allegations make clear
16 that the individual websites with whom users contracted did, in fact, *sell* sports analysis, rather than
17 licensing such information.  The Buyers Agreement attached to Stevo's Florida complaint and the User
18 Contract attached to the SAC both explicitly state that the user is "**purchasing pay-per-view sports**
19 **analysis** which is not subject to any return policy … All **sales** are final.  (RJN, Ex. 2, p. 20 of 73; SAC,
20 Ex. 1) (emphasis added).  While the agreements do attempt to restrict the user's ability to disclose the
21 information received and state that the contract does not transfer rights, that does not by itself establish
22 that the agreements are licenses.  *See American Intern. Pictures, Inc. v. Foreman*, 576 F.2d 661, 664
23 (C.A.Ala.,1978) (Even if the copyright holder places restrictions on the purchaser in a first sale (such
24 as specifying the permissible uses of the article), the buyer's disregard of the restrictions on resale does
25 not make the buyer or the person who buys in the secondary market liable for infringement).  Indeed, it
26 would not make sense to treat a contract for the purchase of sports analysis the same as a contract for a
27 license to use a computer program.  The sports analysis sold under Stevo's purported trademarks is not
28 evergreen and becomes useless at the conclusion of the sporting event to which the analysis pertained.

1  A software program on the other hand can be used multiple times and thus its distribution must be
2  restricted to retain its value.  Accordingly, construing the SAC in the light most favorable to Stevo,
3  Stevo did not grant licenses to view its sports analysis, but sold such analysis on a pay-per-view basis.
4        Thus, the first sale doctrine applies to any purported use of Stevo's purported trademarks
5  beyond nominative fair use and this Court should dismiss Stevo's trademark claims against SBR with
6  prejudice.

      **D.**      **Stevo's Opposition Fails To Point To Any New Or Different Allegations To Overcome SBR's Immunity To Stevo's State Law Claims.**

      Stevo makes a last ditch effort to save its state law claims by arguing that SBR is not entitled to the board grant of immunity under the Communications Decency Act ("CDA") because SBR materially encouraged illegal content.  Stevo's argument is not supported by any factual allegations and is based on mere speculation and innuendo.  Stevo, somewhat unbelievably, compares the allegations in the SAC to the facts in *Federal Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009), where a website specifically solicited requests for confidential information, including private phone records and then paid people to obtain it.  *Id.* at 1192.  The *Accusearch Inc.* court found that the defendant "knowingly sought to transform virtually unknown information into a publicly available commodity … [and the defendant] knew that its researchers were obtaining the information through fraud or other illegality."  *Id.* at 1199.

      First, *Accusearch, Inc.* is not binding precedent in this jurisdiction.  Second, even if it were, the allegations in the SAC are completely distinguishable as the SAC fails to allege that SBR encouraged any illegal activity whatsoever.  This Court already correctly held that SBR's practice of awarding loyalty points for posts does not make SBR a "developer" under the CDA pursuant to *Roommates.com* because 1) SBR's encouragement of posting through loyalty points is not specifically directed at illegal publications; 2) the fact that SBR Forum users may contribute loyalty points to each other further attenuates SBR's information-creating role; 3) SBR's policy favoring original content also distinguishes SBR from a developer; and 4) SBR's "sporadic" attempts to eliminate infringing content are precisely the type of thing that the CDA promotes.

/ / /

1   Stevo failed to allege any new facts in the SAC to overcome this Court's ruling, and as argued
2   in the moving papers, simply resorted to the unsupported argument that by virtue of accepting SBR
3   loyalty points for posts from other SBR Forum users, those SBR Forum's users are somehow now in a
4   principal – agent relationship with SBR.  Again, Stevo has pleaded no additional facts to support this
5   conclusion, only shifted from calling SBR's users "SBR Contributors" in the FAC to calling them
6   "Marketing Contributor-Agents" in the SAC.  There is no basis in law or fact for this conclusion and it
7   represents nothing more than a desperate attempt to get around SBR's CDA immunity.
8   Finally, as this Court correctly held, the CDA immunized SBR from Stevo's state law claims in
9   the FAC because those claims attempted to treat SBR as a "publisher or speaker" of user-generated
10  content.  Stevo's meager additions to the SAC do not change that analysis.  Stevo's Misappropriation
11  of Trade Secrets, Misappropriation of Licensable Commercial Property and Contributory
12  Misappropriation of Licensable Commercial Property all attempt to impose liability upon SBR for
13  content and posting specifically alleged to have been posted on SBR Forum by third parties to this suit.
14  This is precisely the type of claim the CDA was designed to protect against.  The failure to apply CDA
15  immunity in this case would be a blow to the critical policy of protecting "freedom of speech in the in
16  new and burgeoning Internet medium."  *Zeran v. Am. Online, Inc*., 129 F.3d 327, 330 (4th Cir. 1997);
17  *see also Batzel*, 333 F.3d at 1027.  Accordingly, SBR is immune from liability under the CDA and this
18  Court should dismiss Stevo's state law claims against SBR with prejudice.

19  **E.     The SAC Was Not Timely Filed.**

20  Stevo failed to follow this Court's order and is now relying on inapplicable rules to escape the
21  expiration of that deadline.  Stevo's reliance on Local Rule 15-1(b) is unavailing as that rule does not
22  address the situation present here, where this Court clearly granted Stevo permission to file an
23  amended pleading within twenty (20) days of ***the date of the order***, not the date of the filing, or the
24  date listed on the docket.  Rule 15-1(b) simply sets forth the simple standard that a party may only file
25  their amended pleading after the court has granted permission to do so.  The rule has nothing to do
26  with time limits for such filings or the interpretation of a court order.  Here, the Court very specifically
27  granted Stevo permission to file its amended pleading within 20 days of the date of the order (January
28  24, 2013) and Stevo chose to wait until 21 days after that date to file.  Contrary to Stevo's assertion,

1  SBR will suffer prejudice if the SAC is permitted to stand despite being late.  SBR has already
2  expended great time and expense to defend this meritless action and should not have to continue to do
3  so after Stevo failed to follow this Court's express order.  The SAC should be dismissed and judgment
4  once again entered in SBR's favor.

## III.   CONCLUSION

For the reasons set forth above, and those more fully set forth in SBR's moving papers, SBR respectfully requests that this Court dismiss the SAC with prejudice, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

Respectfully submitted,

DATED:  April 22, 2013                THE KAUFMAN LAW GROUP


By: /s/ Colin Hardacre
    GARY JAY KAUFMAN
    COLIN HARDACRE
    1901 Avenue of the Stars, Suite 1010
    Los Angeles, California 90067
    *Counsel for Defendant SBR Marketing, Ltd.*
    *Admitted Pro Hac Vice*

**CERTICATE OF SERVICE**

Pursuant to Local Rule 5-1 of this Court, I hereby certify that on April 22, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Brian Daniele
7002 Braddock Mews Place
Springfield, Virginia 22151

s/Colin Hardacre