UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVO DESIGN, INC., a Florida corporation; STEVEN BUDIN, an individual; and ALAN ROLLI, an individual,<br><br>            Plaintiffs,<br><br>    v.<br><br>SBR MARKETING LTD., a foreign corporation; and BRIAN DANIELE, an individual,<br><br>            Defendants. | 2:11-CV-00304-LRH-CWH<br><br>ORDER |

This is an intellectual property dispute. Before the court is defendant SBR Marketing Ltd.'s ("SBR") Motion to Dismiss (#59[1]). Plaintiffs Stevo Design, Inc. ("Stevo"), Steven Budin, and Alan Rolli have responded (#65), and SBR has replied (#69). Also before the court is Plaintiffs' Motion for Entry of Default (#58).

**I.    Facts and Procedural History**

Plaintiff Stevo is a Florida corporation with its principal place of business in Florida. Stevo is in the business of selling, on pay-per-view and subscription bases, licenses to access electronically-distributed sports betting reports, including compiled sports handicapping information. Plaintiffs Budin and Rolli are Stevo officers, and neither are Nevada residents.

---

[1] Refers to the court's docket entry number.

Defendant SBR is a foreign corporation with its principal place of business in Costa Rica. SBR operates a website, www.sbrforum.com, which publishes sports betting and handicapping information. SBR also operates a message board allowing users to post messages related to sports betting and handicapping and to send messages to other users.[2] Pro se defendant Brian Daniele, a Virginia resident, is an SBR user.

SBR encourages users to frequent its website through the award of "loyalty points." For instance, a user receives two loyalty points for logging on to the website, and a user receives four loyalty points for contributing content to the message board. SBR awards more than four loyalty points for well thought-out "original" content. Users can also give each other loyalty points. These loyalty points may be turned in for "credits" at off-shore gambling websites, and these credits are redeemable for cash as long as they are gambled with first.

Plaintiff Stevo originally filed its complaint against SBR on February 24, 2011 (#1). Stevo then amended its complaint to add the individual plaintiffs and defendant Daniele, as well as several claims against Daniele (#7). Plaintiffs' claims collectively alleged—in over 1000 paragraphs and 65 claims—that SBR and its users unlawfully published Plaintiffs' protected works on SBR's website. For example, Plaintiffs alleged that Daniele purchased sports analysis from Stevo and unlawfully posted this analysis on SBR's message board. The court dismissed the amended complaint (#52), finding (1) the court did not have personal jurisdiction over Daniele; (2) Plaintiffs had failed to properly allege ownership of the relevant copyrights; (3) Plaintiffs' trademark claims hit the legal barrier of nominative fair use; and (4) SBR was immunized from Plaintiffs' state law claims by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). The court granted Plaintiffs an opportunity to amend, and they have taken it.

---

[2] "A 'message board' is a system of online discussion allowing users to 'post' messages. Messages are organized by topic . . . and the system generally allows users to read and reply to messages posted by others." *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 n.10 (9th Cir. 2008).

**II. Discussion**

In their Second Amended Complaint ("SAC"), Plaintiffs have again alleged—this time in over 900 paragraphs and 55 claims—that SBR and its users unlawfully published Plaintiffs' protected works on SBR's website. The SAC meets with mixed success: while Plaintiffs still fail to establish personal jurisdiction over Daniele or the plausibility of their trademark claims, they successfully allege state law and copyright claims against SBR.

**A. Timeliness**

SBR first argues the SAC was untimely. In the order dismissing Plaintiffs' First Amended Complaint, the court granted Plaintiffs twenty days from the order's date to file their SAC. The order was signed on January 24, 2013, but was not entered until January 25. Defendants argue Plaintiffs had until February 13, twenty days after the order was signed, to file their SAC, so their February 14 filing was untimely. However, a court order is not effective until it is entered in the civil docket. Fed. R. Civ. P. 58(c). Since Plaintiffs filed their SAC on February 14, within twenty days of the order's entry, it was timely filed.

**B. Personal Jurisdiction over Defendant Daniele**

Defendant Daniele initially objected that the court lacks personal jurisdiction over him. (Daniele's Answer #12, ¶ 12.) However, Daniele has not responded to the SAC, and Plaintiffs move for entry of Clerk's default under Federal Rule of Civil Procedure 55(a).

Entry of default is inappropriate, as is this court's exercise of personal jurisdiction over Daniele. First, Rule 55(a) authorizes entry of default against a party only when that party "has failed to plead or otherwise defend." Thus, no default may be entered if the party has filed a response indicating his intent to defend the action. *See* Fed. R. Civ. P. 55(a) advisory committee's note. Here, Daniele has indicated his intent to defend this action by filing an answer to Plaintiffs' First Amended Complaint. Entry of default is not warranted.

Moreover, Daniele's failure to respond to the SAC should not be surprising: Plaintiffs have included no allegations distinct from those in the First Amended Complaint establishing personal

3

jurisdiction over him. Where a defendant challenges the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Whether a court has jurisdiction over a non-resident defendant depends on the "nature and quality" of the defendant's contacts with the forum state. William Schwarzer et al., *California Practice Guide: Federal Civil Procedure before Trial* § 3:101 (2011). When these contacts are "substantial, continuous, and systematic," the court may exercise jurisdiction over the defendant to the extent consistent with state law. *See Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445 (1952). When these contacts are less substantial, the court may still exercise jurisdiction over the defendant on claims relating to his contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *Schwarzenegger*, 374 F.3d at 802. In the latter case, the defendant must have purposefully directed his activities toward the forum state, the claim must have arisen out of these activities, and the exercise of jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802.

Here, despite newly salting their jurisdictional allegations with references to a "business relationship" between SBR and Daniele, Plaintiffs have failed to establish the court's personal jurisdiction over Daniele. Plaintiffs (still) assert only three distinct bases of jurisdiction: that SBR engaged Daniele as some sort of copyright-infringing employee (that is the "business relationship"),[3] that Daniele's publications relate to the "sports wagering" industry in Nevada, and that Daniele's publications were accessible in Nevada through the internet. Even accepting these allegations as true, these are not the type of contacts that give rise to personal jurisdiction. *See id*. at 800 (noting that, in circumstances like these, the plaintiff need only make a prima facie showing through its pleadings and affidavits that the exercise of personal jurisdiction over the defendant is proper).

---

[3] Though this attempt to establish jurisdiction fails for independent reasons, it's worth noting that the SAC does not allege that Daniele's relationship to SBR was distinct from that of any other message board poster.

4

The court discussed the failures of these jurisdictional theories in its earlier order, and it won't belabor the point anew. Briefly: Daniele's status as SBR's paid agent does not establish this court's jurisdiction over him. Plaintiffs appear to erroneously believe that the court's jurisdiction over SBR as a foreign entity extends to its jurisdiction over Daniele. Yet while an agent's contacts (or lack of contacts) may be imputed to the principal for purposes of personal jurisdiction, the converse is not true. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002) (imputing an agent's contacts to the principal); *Holland America Line, Inc. v. Wärtsilä North America, Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (holding that a parent corporation's contacts may not be imputed to its subsidiary). And, of course, the fact that Daniele's publications related to sports wagering does not establish jurisdictional contacts with Nevada, *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997), nor does the fact that Daniele's posts could be viewed by Nevada-based internet users, *see Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). Thus, Plaintiffs have failed to establish a prima facie showing that jurisdiction over Daniele is appropriate.

### C. Trademark, State Law, and Copyright Claims

SBR has moved to dismiss Plaintiffs' remaining claims under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' trademark claims fail for largely the same reasons they failed when alleged in the First Amended Complaint. However, Plaintiffs have cured the defects in their state law and copyright claims.

#### 1. Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Rule 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hospital Medical Center*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 680) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### 2. Trademark Claims

In the court's earlier order, Plaintiffs' trademark claims ran into the legal barrier known as nominative fair use. Plaintiffs now attempt to avoid this barrier with a number of unsuccessful feints. As in the First Amended Complaint, the marks at issue are the proper names or pseudonyms (*noms de jeu*) of Stevo's handicapping analysts. Some of these marks are registered with the United States Patent and Trademark Office; most are not.

To prevail on a claim of trademark infringement under the Lanham Act, the owner of a federally registered mark must show that the defendant used the mark in interstate commerce in connection with the "sale, offering for sale, distribution, or advertising of any goods or services," and that such use is likely to cause consumer confusion. 15 U.S.C. § 1114(1); *see also Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144-45 (9th Cir. 2011). Similar elements inhere in claims under 15 U.S.C. 1125(a) (also alleged by Plaintiffs) for false designation of origin. *See New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979). "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical: is there a 'likelihood of confusion?'" *Id.*

The doctrine of nominative fair use bears on this question. To use a mark as a mark—a "trademark use"—the defendant must attempt to identify the source of the mark with the defendant itself. *See Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 128-31 (2d Cir. 2009) (contrasting trademark use with "use in commerce"). "Nominative fair use" is not a trademark use; it is "to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose." *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992). In *New Kids on the Block*, the Ninth Circuit identified three factors in attempting to carve out nominative fair use from trademark use. First, the product or service in question must not be readily identifiable without the trademark. Second, the mark may only be used to identify the product or service. And third, the mark user must do nothing to imply "sponsorship or endorsement" by the trademark holder. *See id.*, 971 F.2d at 308.[4]

Here, Plaintiffs have again failed to allege anything beyond nominative fair use. In an attempt to shoehorn their copyright claims into trademark claims, Plaintiffs allege that (1) SBR encouraged message board users to post to its message board, (2) SBR knew that these users would mention Plaintiffs' marks, (3) and that these mentions drove search engine results that favored

---

[4] In the court's earlier order, it held that nominative fair use identified a defect in the pleadings and was therefore appropriate to consider at the motion to dismiss stage.

7

SBR's site over Plaintiffs'. Thus, Plaintiffs' argument targets the third factor of the *New Kids on the Block* test, suggesting that SBR's conduct implied that Plaintiffs "sponsor[ed] or endors[ed]" SBR's website.[5]

The problem with this argument is its breadth. It may be, with some inferential heavy lifting by the court, that this sketch of SBR's conduct is compatible with infringing trademark use. However, this sketch is also compatible with non-infringing uses, and Plaintiffs' other allegations make clear that these are the uses they have in mind. For example, Plaintiffs identify posts critical of Plaintiffs' analysts. (*See* SAC # 53, ¶¶ 206-11.) As another court found, when a website includes comments critical of the mark owner, confusion as to the mark owner's authorization or sponsorship is "incredible." *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770, *4 (N.D. Cal. Dec. 18, 1997). Nor do the screennames under which the message board users posted their comments—names like "Pin Fish," "goldengreek," etc.—indicate Plaintiffs' sponsorship or endorsement. Nor do search engine results based on the users' posts' contents[6] constitute "initial interest confusion" with Plaintiffs' sites; indeed, Plaintiffs often allege that their own sites appeared before SBR's in the search results. (*See, e.g.*, SAC #52, ¶¶ 185, 188, 191, 194.)

Plaintiffs emphasize that SBR's users are "in a privity of relationship" with SBR, but Plaintiffs give little indication as to why this matters. A nominative use is a nominative use, regardless of whether the user is the defendant's agent or the defendant itself. And though Plaintiffs urge comparisons to cases in which the infringer used the plaintiff's mark to identify the infringer's own products, Plaintiffs have made no such allegations here. *See Rescuecom*, 562 F.3d at 130 (discussing a hypothetical in which "customers seeking to purchase a famous brand would receive the off-brand, believing they had gotten the brand they were seeking"); *Estate of Fuller v. Maxfield*

---

[5] In the court's earlier order, it found that the first two factors of the *New Kids on the Block* test had been met. Those findings remain unchanged.

[6] Plaintiffs allege that the search engines compiled their results on the basis of the users' chosen "subject lines" for their posts.

8

*& Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1011 (N.D. Cal. 2012) (discussing the use of plaintiff's proper-name-based mark to describe defendant's toy). Indeed, these comparisons illustrate the overbreadth of Plaintiffs' theory of infringement. Such a theory imperils any website that encourages user participation and features user-generated content discussing trademarked products (think ebay.com, facebook.com, and many others). Finally, Plaintiffs aver that their trademark claims should survive because they have alleged that SBR's conduct "is likely to cause confusion, cause mistake, or deceive consumers." (Plaintiffs' Opp. #65, p. 19:8-11.) Yet "a formulaic recitation of the elements of a cause of action" will not serve to clear Rule 12(b)(6)'s hurdles. *Iqbal*, 556 U.S. at 678.

Plaintiffs' failure to allege a trademark use beyond nominative fair use is fatal to all of their trademark claims. Plaintiffs' direct infringement and false-designation-of-origin claims fail, bringing with them Plaintiffs' contributory infringement claims. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (holding that contributory infringement requires some act of predicate infringement). And nominative fair use is not actionable as dilution. *See* 15 U.S.C. § 1125(c). Therefore, the court dismisses Plaintiffs' trademark claims.

### 3. State Law Claims

Plaintiffs allege three Florida state law claims against SBR for misappropriation of trade secrets, misappropriation of commercial property, and contributory misappropriation of commercial property. In its earlier order, the court held that § 230 of the CDA immunized SBR as an "interactive computer service" from similar claims. This holding stemmed from the fact that Plaintiffs did not allege that SBR was a "developer" of illegal content within the meaning of the CDA. *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008). Plaintiffs now hope to rectify this mistake. They have alleged that SBR created its "service plays" message board with the intent of "soliciting [users] to effectuate republication of paid content such as [Plaintiffs']." (SAC #53, ¶ 69.) In response, SBR relies once again on CDA immunity.

9

Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "interactive computer service" is "any information service . . . that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Today, the most common interactive service providers are websites. *Roommates.com,* 521 F.3d at 1162 n.6. However, the immunity provided by the CDA does not extend to laws "pertaining to intellectual property." 47 U.S.C. § 230(e)(2). (In this Circuit's interpretation of this provision, "'intellectual property' . . . mean[s] 'federal intellectual property.'" *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007)). Nor does CDA immunity extend to a website that is responsible "in whole or in part for the creation or development of information provided through the internet." 47 U.S.C. § 230(f)(3). A website is a "developer" under this section if it contributes "materially to the alleged illegality of the conduct"—here, the misappropriation of trade secrets and commercial property under Florida law. *See Roomates.com*, 521 F.3d at 1168.

Plaintiffs' new allegations successfully avoid the application of CDA immunity. In support of their claim that SBR intended the "service plays" message board to function as a copy-and-paste repository of protected sports analysis, Plaintiffs offer the following message posted by an SBR moderator on June 10, 2010:

> Hi guys, For legal reasons must [sic] update our Forum Policy for Service Plays. **What is allowed**: [Capper Name] + play & odds. **What is not allowed**. *amount, write ups, $ amount, unit amount, etc. You can rank the plays, or say so and so really likes this play or that play, but please do not repost copyrighted written material.

(SAC #53, ¶ 81 (emphasis in original).) The notion that SBR "updated" its message board policy to prohibit copyrighted material invites the inference that, prior to this update, SBR's policy allowed the posting of copyrighted material. Plaintiffs also point out that the title "service plays" refers uniquely to the recommendations of pay-per-view sports analysis services. Taking all inferences in favor of Plaintiffs, then, they have alleged that SBR acted as a "developer" within the meaning of the CDA by promoting the publication of protected "service plays" and thereby contributing to the

misappropriation of Plaintiffs' trade secrets and commercial property.[7] Since CDA immunity is SBR's only challenge to Plaintiffs' state law claims, these claims survive SBR's Motion to Dismiss.

### 4. Copyright Claims

In the court's prior order, Plaintiffs' copyright infringement claims failed because Plaintiffs did not properly allege that they owned the copyrights at issue. They have reformed these allegations to fairly allege ownership. SBR challenges the sufficiency of the copyright claims based in part on the continued failure of Plaintiffs' ownership allegations and in part on the extraterritoriality of the alleged infringement. Both challenges fail.

In order to state a claim for copyright infringement, Plaintiffs must allege ownership of a valid copyright and redressable infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). The latter element includes infringement within the territorial reach of the Copyright Act. *Litecubes, LLC v. N. Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008).

Here, Plaintiffs have successfully alleged ownership: "[Plaintiffs] own[] all copyrights to all Handicapper Reports." (SAC #53, ¶ 41.) While SBR argues that Plaintiffs' license agreements create ambiguity as to whether Plaintiffs or Plaintiffs' websites actually own the copyrights, Plaintiffs' allegations now sufficiently point to the former. (*Id*. at ¶ 40.)

In addition, SBR's argument that any infringement is beyond the reach of the Copyright Act fails. "[T]he United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994). However, United States copyright law applies where "at least one alleged infringement [is] completed entirely within the United States." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995). SBR implies that the alleged infringement took place entirely on its servers located in Costa Rica, beyond the reach of the Copyright Act, but Plaintiffs'

---

[7] Notably, Plaintiffs new allegations clash with their continued insistence that SBR favored original content from its posters. (SAC #53, ¶ 75.)

11

allegations give rise to a separate inference. In particular, Plaintiffs identify predicate acts of infringement—the copying of Plaintiffs' copyrighted material by SBR users—that took place entirely in the United States. *See* 17 U.S.C. § 106(1). Taking all inferences in Plaintiffs' favor, therefore, Plaintiffs have identified predicate acts of infringement taking place in the United States. Application of United States copyright law is appropriate.

### III.  Conclusion

IT IS THEREFORE ORDERED that SBR's Motion to Dismiss (#59) is GRANTED in part and DENIED in part. Plaintiffs' trademark claims against SBR are hereby DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs' claims against defendant Daniele are DISMISSED. Plaintiffs' Motion for Entry of Default (#58) is DENIED.

IT IS SO ORDERED.

DATED this 29th day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE